**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UTSTARCOM, INC. | ) | |
| | ) | Civil Action No. 07-CV-2582 |
| Plaintiff, | ) | Hon. George W. Lindberg |
| | ) | Magistrate Judge Nan R. Nolan |
| v. | ) | |
| | ) | |
| STARENT NETWORKS, CORP., | ) | |
| JOHN ("ANDY") CAPENER, | ) | |
| NOEL CHARATH, DALE ELIASON, | ) | |
| BRIAN ESPY, TROY GABEL, | ) | |
| MATTHEW HARPER, TODD KELLY, | ) | **Jury Trial Demanded** |
| NICK LOPEZ, SANIL PUTHIYANDYIL, | ) | |
| RAJESH RAMANKUTTY, CHARLES RYGULA, | ) | |
| PAUL SHIEH, GENNADY SIROTA, | ) | |
| AMIT TIWARI, JAMES ("JIM") WININGER, | ) | |
| AND MARK ZARICH | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT STARENT NETWORKS, CORP.'s
ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant Starent Networks, Corp. ("Starent") hereby answers and asserts affirmative

defenses and counterclaims to the Complaint filed by Plaintiff UTStarcom, Inc. ("UTStarcom")

on May 8, 2007, as follows:

**PARTIES**

*1.      Plaintiff UTSI is a corporation incorporated under the laws of the State of*

*Delaware in the early 1990s.  UTSI began its business in Alameda, California.*

1.      Starent is without sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 1 of the Complaint and, therefore, denies them.

*2.     UTSI acquired substantially all of the assets of 3Com Corporation's CommWorks business unit, which it continued (and continues) to operate (the "Business Unit"), located in Rolling Meadows, Illinois in approximately May 2003.*

2.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and, therefore, denies them.

*3.     With the acquisition of the Business Unit, UTSI acquired the personnel and facilities for the Business Unit, including, but not limited to, research and development, engineering sales, marketing, manufacturing and administration.  All of these personnel and facilities for the Business Unit, with the exception of certain sales personnel, were, and are still, located in Rolling Meadows, Illinois and surrounding areas.*

3.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint and, therefore, denies them.

*4.     Almost all of UTSI's operations related to the acquired Business Unit have operated and continue to operate today from UTSI's location in Rolling Meadows, Illinois. UTSI has several hundred employees and others involved in its Business Unit operations in Illinois.*

4.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and, therefore, denies them.

*5.     Upon information and belief, Starent is a corporation organized and existing under the laws of the State of Delaware.  Starent is doing business and has a place of business in Schaumburg, Illinois.  Starent is now unlawfully making, using and selling products and services that unlawfully compete with UTSI, as more fully described herein.*

5.     Starent admits that it is a corporation organized under Delaware law.  Starent further admits that it does business, and has a place of business, in Schaumburg, Illinois.  Starent denies the remaining allegations of Paragraph 5 of the Complaint.

*6.     Defendant Matthew Harper was a consulting (senior) engineer for the Business Unit, was an inventor and architect for the hardware and software platforms for the products of the Business Unit, and was completely versed in the relevant products and services of the Business Unit.  Upon information and belief, Mr. Harper left the Business Unit and is now is a software architect for Starent, engineering the Starent's products' hardware and software platforms.  Upon information and belief, Mr. Harper used to reside in Cook County and DuPage County, Illinois, and now resides on 22 Ticklefancy Lane in Salem, New Hampshire 03079.*

6.     Starent admits that Matthew Harper is currently employed by Starent as an Architect, engineering Starent's products' hardware and software platforms, and currently resides at 22 Ticklefancy Lane in Salem, NH, 03079.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint and, therefore, denies them.

*7.     Defendant Todd Kelly was first a network consultant and later a manager for global strategic technology for wireless products for the Business Unit.  Upon information and belief, Mr. Kelly left the Business Unit and is now Director of Network Consulting and Sales and Support at Starent.  Upon information and belief, Mr. Kelly resides in Cook County, Illinois.*

7.     Starent admits that Todd Kelly is currently employed by Starent as Vice President Network Consultants, NA, but denies that he currently resides in Cook County, IL.  Starent is

without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint and, therefore, denies them.

*8.    Defendant Nick Lopez was a senior product manager for the Business Unit. Upon information and belief, Mr. Lopez left the Business Unit and is now Vice President of Strategic Alliances at Starent.  Upon information and belief, Mr. Lopez resides in Cook County, Illinois.*

8.    Starent admits that Nick Lopez is currently employed by Starent as Vice President of Strategic Alliances, but denies that he currently resides in Cook County, IL.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 8 of the Complaint and, therefore, denies them.

*9.    Defendant Brian Espy was North American Director of Sales for Wireless Products for the Business Unit.  Upon information and belief, Mr. Espy became Vice President of Sales at Starent.  Upon information and belief, Mr. Espy resides at 5212 West 166th Street, Stilwell, Kansas 66085.*

9.    Starent admits that Brian Espy began employment at Starent as Sales Director, and was Vice President of Sales, North America, when he left Starent.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint and, therefore, denies them.

*10.    Defendant Paul Shieh was a principal architect and product manager for the products and services of the Business Unit.  Upon information and belief, Mr. Shieh left the Business Unit and became the General Manager of Greater China and Vice President of Technology Development for Starent.*

10.     Starent admits that Paul Shieh began employment at Starent as Director of Technology and is currently Vice President of Technology and General Manager for Greater China.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 10 of the Complaint and, therefore, denies them.

*11.     Defendant Gennady Sirota was Director of Wireless Product Management for the Business Unit.  Upon information and belief, Mr. Sirota left the Business Unit and became the Vice President of Product Management and Marketing for Starent.  Upon information and belief, Mr. Sirota resides in Lake County, Illinois.*

11.     Starent admits that Gennady Sirota began employment at Starent as Vice President of Marketing, is currently Vice President of Product Management, and currently resides in Lake County, IL.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 11 of the Complaint and, therefore, denies them.

*12.     Defendant Amit Tiwari was Director of Product Management for the Business Unit.  Upon information and belief, Mr. Tiwari left the Business Unit and became the Vice President Solutions Development for Starent.  Upon information and belief, Mr. Tiwari resides in Lake County, Illinois.*

12.     Starent admits that Amit Tiwari began employment at Starent as Director of Systems Engineering, is currently Vice President of Worldwide Customer Service.  Starent denies that Mr. Tiwari currently resides in Lake County, IL.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Complaint and, therefore, denies them.

*13.    Defendant John "Andy" Capener was a manager in marketing and public relations for the Business Unit.  Upon information and belief, Mr. Capener left the Business Unit and became the Director of Marketing for Starent.  Upon information and belief, Mr. Capener now resides in 84 Towne Hill Road, Haverhill, Massachusetts 01835.*

13.    Starent admits that John ("Andy") Capener began employment with Starent as Senior Marketing Manager, is presently Vice President of Marketing Communications, and currently resides at 84 Towne Hill Road, Haverhill, MA, 01835.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 13 of the Complaint and, therefore, denies them.

*14.    Defendant Noel Charath was a product manager for the wireless group of the Business Unit.  Upon information and belief, Mr. Charath left the Business Unit and is now a senior systems engineer for Starent.  Upon information and belief, Mr. Charath used to reside in Cook County, Illinois, and now resides at 139 Orchard Hill Road, Haverhill, Massachusetts 01835.*

14.    Starent admits that Noel Charath is currently employed by Starent as Director, Systems Engineering, and currently resides at 139 Orchard Hill Road, Haverhill, MA, 01835.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 14 of the Complaint and, therefore, denies them.

*15.    Defendant Dale Eliason was a product manager for the wireless group of the Business Unit.  Upon information and belief, Mr. Eliason left the Business Unit and became a product manager for Starent.  Upon information and belief, Mr. Eliason used to reside in Lake County, Illinois, and now resides at 1511 Deer Point Way, Reston, Virginia 20194.*

15.    Starent admits that Dale Eliason began employment at Starent as Product Manager.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint and, therefore, denies them.

*16.    Defendant James ("Jim") Wininger was the head of proposals for the Business Unit.  Upon information and belief, Mr. Wininger left the Business Unit and joined Starent to be responsible for responding to requests for proposals.  Upon information and belief, Mr. Wininger resides at 14223 Redmond Drive, Huntley, Illinois 60142.*

16.    Starent admits that James Wininger began employment at Starent as Manager of Professional Services and that he was responsible for responding to some requests for proposals.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint and, therefore, denies them.

*17.    Defendant Troy Gabel was a network consultant for the Business Unit.  Upon information and belief, Mr. Gabel left the Business Unit and joined the sales force at Starent.  Upon information and belief, Mr. Gabel resides at 14609 Windsor Street, Overland Park, Kansas 66224.*

17.    Starent admits that Troy Gabel began employment at Starent in sales as Network Consultant.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint and, therefore, denies them.

*18.    Defendant Sanil Puthiyandyil was a senior engineer for the Business Unit.  Upon information and belief, Mr. Puthiyandyil left the Business Unit and is now a manager of development for Starent.  Upon information and belief, Mr. Puthiyandyil used to reside in Mount Prospect, Illinois and now resides at 10 Georgetown Drive, Nashua, New Hampshire 03062.*

18.     Starent admits that Sanil Puthiyandyil is currently employed by Starent as Manager, Protocol Development, and currently resides at 10 Georgetown Drive, Nashua, NH, 03062.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint and, therefore, denies them.

*19.     Defendant Rajesh Ramankutty was a lead/senior software engineer for the Business Unit.  Upon information and belief, Mr. Ramankutty left the Business Unit and is now consulting software engineer for Starent.  Upon information and belief, Mr. Ramankutty used to reside in Mount Prospect, Illinois and now resides at 6 Newcastle Drive, # 6, Nashua, New Hampshire 03060.*

19.     Starent admits that Rajesh Ramankutty is currently employed by Starent as a Consulting Software Engineer, and currently resides at 6 Newcastle Drive, #6, Nashua, NH, 03060.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 19 of the Complaint and, therefore, denies them.

*20.     Defendant Charles Rygula was a technical writer and then became a product manager for the Business Unit.  Upon information and belief, Mr. Rygula left the Business Unit and is now a technical writer for Starent.  Upon information and belief, Mr. Rygula resides in Cook County, Illinois.*

20.     Starent admits that Charles Rygula is currently employed at Starent as Director, Technical Communications, but denies that he currently resides in Cook County, IL.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 20 of the Complaint and, therefore, denies them.

*21.     Defendant Mark Zarich was in sales for the Business Unit.  Upon information and belief, Mr. Zarich left the Business Unit and joined the sales force at Starent.  Upon*

*information and belief, Mr. Zarich resides at 232 South Duffers Court, Andover, Kansas 67211.*

21.     Starent admits that Mark Zarich began employment at Starent in sales as an Account Director.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint and, therefore, denies them.

*22.     Upon information and belief, in engaging in the acts alleged herein, each of the aforesaid defendants was the agent (or alter ego) of each of the other defendants and was acting in the course and scope of such agency and with the permission, consent and ratification of their co-defendants.*

22.     Starent denies the allegations of Paragraph 22 of the Complaint.

*23.     As a result of their prior relationships with the Business Unit, upon information and belief, each of the individual defendants and later Starent had access to and did acquire technical and non-technical information, data, formulas, patterns, programs, compilations, devices, methods, techniques, drawings, processes, concepts, implementations, financial data and/or customer and supplier lists belonging to the Business Unit, which is now owned by UTSI (the "Confidential and Proprietary Information").*

23.     Starent is without sufficient knowledge or information to form a belief as to whether, as a result of any prior relationship with the "Business Unit" (3Com Corporation's CommWorks business unit), any of the individual defendants named in the Complaint had access to and did acquire the alleged, but undefined, "Confidential and Proprietary Information" referred to in Paragraph 23 of the Complaint, and therefore denies those allegations.  Starent denies that it had access to or acquired any such "Confidential and Proprietary Information."

*24.     Upon information and belief, Starent transacts business and/or has transacted business within this judicial district and is subject to the jurisdiction of this Court, having made, operated, used, offered for sale, and/or sold in this judicial district and elsewhere in the United States its ST16 intelligent mobile gateway and the ST40 multimedia code platform ("the ST Products").*

24.     Starent admits that it has made, operated, used, offered for sale, and/or sold its ST16 Intelligent Mobile Gateway and ST40 Multimedia Code Platform in the United States, and that it has at least one customer in this judicial district.  Starent denies the remaining allegations in Paragraph 24 of the Complaint.

*25.     Upon information and belief, the individual defendants are subject to the jurisdiction of this Court, as they either reside in this judicial district and/or have committed acts which have injured UTSI within this judicial district.*

25.     Starent denies the allegation that "the individual defendants … reside in this judicial district and that this Court therefore has personal jurisdiction over them.  Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint and, therefore, denies them.

## JURISDICTION AND VENUE

*26.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.*

26.     Starent admits that the Complaint includes allegations of patent infringement (Counts 2 through 6) and, as such, is a patent infringement action arising under Title 35 of the United States Code.

*27.*     *This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has venue pursuant to 28 U.S.C. §§ 1391 and/or 1400(b).*

27.     Starent denies the allegations of Paragraph 27 of the Complaint.

*28.*     *This Court has supplemental jurisdiction over the non-federal question claims pursuant to 28 U.S.C. § 1367 because they arise out of the same facts and acts as those giving rise to the federal claims.*

28.     Starent admits that this Court has ruled that it has supplemental jurisdiction over UTStarcom's non-federal question claims pursuant to 28 U.S.C. § 1367(a) (*see* Docket No. 69), but respectfully disagrees with the ruling.

## FACTUAL BACKGROUND

*29.*     *UTSI specializes in data communications products, including networking products and wireless products.  UTSI acquired the Business Unit including the products and process, and intellectual property, and these products and services relate to telecommunications.  The product lines of the Business Unit consist of equipment (including computer hardware and software) that facilitates wireless transmission of data.  For example, products allowing a cellular telephone user to access the Internet or check e-mail through use of the user's cellular telephone.*

29.     Starent admits that part of UTStarcom's business relates to data communications products.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint and, therefore, denies them.

*30.*     *UTSI manufactures and sells its Business Unit's products and services.  Such products are purchased and used by cellular service providers (such as Verizon Wireless and Sprint Nextel) and their customers.  These companies provide products and services using*

*UTSI's products and services directly to cellular telephone customers.  The Business Unit (i.e., UTSI) has been a leading provider of these products and services for years.*

30.     Starent admits that some modern wireless networks operate according to the "3G" (third-generation) standard, and that 3G networks employ packet data technology.

*31.     Currently, many wireless access service providers use what is known in the industry as "3G" (third-generation) standard for wireless data transmission.  This technology is a packet based wireless data transmission system.*

31.     Starent admits that "3G" is an acronym used to refer to the third generation of wireless technology that is in use today.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*32.     The Business Unit's network products provide much of the infrastructure that transmits data from a cellular telephone (or other wireless device, such as a personal digital assistant) to the Internet or e-mail server.  These systems work with and through the Internet, using both simple Internet Protocols (IP) and mobile Internet Protocols (mobile IP).*

32.     Starent admits that wireless transmission of data can make use of both Internet Protocols ("IP") and mobile Internet Protocols ("mobile IP").  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 32 of the Complaint and, therefore, denies them.

*33.     The Business Unit (now UTSI) markets and sells products known as PDSNs (Packet Data Serving Nodes) and HA (Home Agent) server components, for use in both simple IP and mobile IP system, to the cellular telephone service providers.  UTSI also markets and sells AAA (authentication, accounting and administration) servers.*

33.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint and, therefore, denies them.

***34.     Evolution-Data Optimized ("EV-DO") is a wireless broadband data standard that has been deployed by several cellular telephone service providers.  EV-DO is typically used to provide broadband-speed Internet access to cellular telephone users.  EV-DO's recent version is often referred to as Ultra Mobile Broadband.***

34.     Starent admits that Evolution-Data Optimized ("EV-DO") refers to a wireless broadband data transmission standard, and that wireless broadband technology is also referred to as "Ultra Mobile Broadband."  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 34 of the Complaint and, therefore, denies them.

***35.     A virtual private network ("VPN") is a private communications network often used by companies to communicate over a public network, such as the Internet.  Secure VPN communication protocols include Internet Protocol security ("IPSec").***

35.     Starent admits that a virtual private network ("VPN") is a private communications network that can be used by a company to communicate over a public network, such as the Internet.  Starent further admits that "IPSec" is an acronym for "IP Security," which refers to protocols for securing IP communications.

***36.     UTSI markets and sells products which allow or enable EV-DO and VPN services.***

36.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and, therefore, denies them.

*37.     UTSI's PDSN and HA products for 3G networks were developed over a substantial period of time at a cost of many millions of dollars (to both the Business Unit and UTSI). These products include Confidential and Proprietary Information and technology and other features that UTSI (both itself and through 3Com Corp. assignments) originated.*

37.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint and, therefore, denies them.

*38.     The Business Unit took a number of active steps to ensure that access to its Confidential and Proprietary Information was limited and its confidentiality maintained.*

38.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and, therefore, denies them.

*39.     The Business Unit instituted Confidential and Proprietary Information and intellectual property protection policies setting forth steps to make its employees aware of these policies, including (1) providing brochures describing these policies to all new employees, (2) posting the contents of the brochure on an internal server viewable by all employees, and (3) providing copies of the confidential and proprietary information and intellectual property protection policies themselves to all employees. The Business Unit also affirmatively advised its employees to become familiar with the policies and to take necessary steps to enforce compliance within their areas of responsibility.*

39.     Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint and, therefore, denies them.

*40.     It was the Business Unit's customary practice to require all employees to sign an agreement containing non-disclosure and non-solicitation provisions. These agreements prohibit the employee from disclosing (and/or using) any Confidential and Proprietary*

*Information to any outside party, and from soliciting the Business Unit employees to leave for a set period of time after that employee leaves the Business Unit.*

40. Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint and, therefore, denies them.

*41. The Business Unit limited access to its Confidential and Proprietary Information. A password and username were typically required to access servers that contain confidential technical and other information. This applied, for example, to research and development servers that maintained the source code for the products, software applications and technical specifications, and to servers containing its technical database, which maintained (among other things) functional specifications for the Business Unit's products. Access is limited such that only persons with a need to work in a particular technological area have access to the servers for that area.*

41. Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint and, therefore, denies them.

*42. The Business Unit limited access to its facilities, including those containing the marketing, sales, engineering, manufacturing and administrative information as well as to its research and development laboratories. Access was and is only through the use of an electronic key-card access security system. Only employees with approved electronic key-cards could and can enter the facilities. A more restrictive level of approval was and is required to enter the research and development laboratories within those facilities.*

42. Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and, therefore, denies them.

*43.    The Business Unit has carefully kept its Confidential and Proprietary Information confidential, and has policed and enforced its rights in its Confidential and Proprietary Information.*

43.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint and, therefore, denies them.

*44.    Upon information and belief, Starent was founded in August 2000.*

44.    Starent admits the allegations of Paragraph 44 of the Complaint.

*45.    Upon information and belief, in or around mid to late 2003, Starent began offering PDSNs, HAs and other products for 3G wireless networks to cellular telephone service providers in the United States.  These products of Starent are designated as its "ST Products."*

45.    Starent denies the allegations of Paragraph 45 of the Complaint.

*46.    Upon information and belief, the defendants used the Confidential and Proprietary Information of the Business Unit to develop, manufacture and market the ST Products.*

46.    Starent denies the allegations of Paragraph 46 of the Complaint.

*47.    Upon information and belief, Starent's ST Products incorporate, use and/or are based in significant part on the Business Unit's Confidential and Proprietary Information. For example, upon information and belief, Starent's 3G ST Products include some of UTSI's proprietary VPN and EV-DO features.*

47.    Starent denies the allegations of Paragraph 47 of the Complaint.

*48.     Upon information and belief Starent is now directly competing with UTSI by offering to sell the ST Products to many of the same customers to whom UTSI is offering its 3G products and services.*

48.     Starent admits that it has competed with UTStarcom in the area of wireless transmission of data, and has offered its products and services to many of the same companies that UTStarcom has offered its products and services.

*49.     Upon information and belief, Starent's use of the Business Unit's Confidential and Proprietary Information directly harms UTSI's ability to sell its 3G wireless products.*

*Starent's Hiring of UTSI Employees*

49.     Starent denies that it has used any of the alleged, but undefined, "Confidential and Propriety Information" referred to in Paragraph 23 of the Complaint, and denies the allegations of Paragraph 49 of the Complaint.

*50.     Upon information and belief, since Starent was founded and thereafter, Starent has engaged in a pattern of hiring UTSI's employees in an effort to improperly hasten the development of the ST Products.*

50.     Starent denies the allegations of Paragraph 50 of the Complaint.

*51.     During their employment with the Business Unit, each of the individual defendants were privy and had access to and acquired valuable Confidential and Proprietary Information.   For example, upon information and belief, trade secret and confidential information pertaining to the Business Unit's 3G wireless technology, including the system architecture for its PDSN and HA products, was unlawfully acquired by Starent from the individual defendants.*

51.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint regarding the individual defendants and, therefore, denies them.  Starent denies the remaining allegations of Paragraph 51 of the Complaint.

52.    *All of the individual defendants had intimate knowledge concerning the Business Unit's proprietary business strategy with respect to 3G wireless products.  These proprietary business strategies were and are Confidential and Proprietary Information of the Business Unit (now owned by UTSI).*

52.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint regarding the individual defendants and, therefore, denies them.

53.    *On information and belief, the individual defendants that joined the Business Unit prior to December 1997 signed nondisclosure and/or non-solicitation agreements with the Business Unit's predecessor, U.S. Robotics (on December 31, 1997, U.S. Robotics merged into 3Com).  As a result of the merger, 3Com Corp. became the successor in interest to these agreements.  As a result of the acquisition of the Business Unit by UTSI, UTSI then became the successor in interest to these agreements.*

53.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint and, therefore, denies them.

54.    *Upon information and belief, Starent required the Business Unit's employees to enter into non-disclosure agreements with Starent prior to allowing such employees to interview for positions at Starent.*

54. Starent admits that its typical practice is to require potential employees to sign a non-disclosure agreement prior to interviewing them.

*55. Upon information and belief, Mr. David Aubin Jr. was a senior software engineer at the Business Unit and left in or around November 1999. Upon information and believe, Mr. Aubin Jr. joined Starent in or around April 2001 through July 2002. Upon information and belief, Mr. Aubin Jr. held the same or a similar position at both the Business Unit and Starent, as a principal software engineer. Upon information and belief, Mr. Aubin Jr. may have deconstructed UTSI software code for Starent, which software code was Confidential and Proprietary information.*

55. Starent admits that David Aubin began employment at Starent on April 9, 2001, as a Senior Software Engineer, and left Starent on July 30, 2002. Starent denies the allegation that David Aubin may have deconstructed UTStarcom software code that was "Confidential and Proprietary Information" as defined in Paragraph 23 of the Complaint for Starent. Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 55 of the Complaint and, therefore, denies them.

*56. Upon information and belief, Mr. Steve Batsford was technical writer, for the Business Unit and had access to and did acquire Confidential and Proprietary Information. Upon information and belief, Mr. Batsford joined Starent in or around February 2003 and holds the same or similar position as he did at the Business Unit, as a technical writer. Upon information and belief, Mr. Batsford is now Starent's senior technical writer.*

56. Starent admits that Steve Batsford began employment at Starent on October 4, 2004, as a Technical Writer and is currently employed by Starent as a senior technical writer.

Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 56 of the Complaint and, therefore, denies them.

57.     *Upon information and belief, Mr. Capener was a manager in marketing and public relations at the Business Unit.  While there, Mr. Capener had access to and did acquire Confidential and Proprietary Information, including all of the Business Unit's marketing materials and customer information and was familiar with the strengths, weaknesses, pricing, performance and features of its products.  Upon information and belief, Mr. Capener is the Director of Marketing for Starent, now selling Starent products to exactly the same customers that he did while he worked at the Business Unit.*

57.     Starent admits that John ("Andy") Capener is currently employed by Starent as Vice President of Marketing Communications.  Starent denies the allegation that Mr. Capener "[is] now selling Starent products to exactly the same customers that he did while he worked at the Business Unit."  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 57 of the Complaint and, therefore, denies them.

58.     *Upon information and belief, Mr. Charath was a product manager at the Business Unit.  Upon information and belief, Mr. Charath left the Business Unit in 2002 to become a senior systems engineer at Starent, which is the same or a similar position as his position at the Business Unit.  Upon information and belief, while at the Business Unit, Mr. Charath was a product manager for the remote access service ("RAS") group.  Upon information and belief, the technology of the RAS group included Confidential and Proprietary Information and is the same or similar to that used by Starent.*

58.    Starent admits that Noel Charath began employment at Starent on January 7, 2002, as Systems Engineer.   Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 58 of the Complaint and, therefore, denies them.

*59.    Upon information and belief, Mr. Eliason was a product manager for the wireless group at the Business Unit.   Upon information and belief, Mr. Eliason left the Business Unit in or around 2000 to become a product manager at Starent.   Upon information and belief, Mr. Eliason held the same or a similar position at both the Business Unit and Starent.   Upon information and belief, Mr. Eliason no longer works for Starent.   Upon information and belief, while at the Business Unit, Mr. Eliason had access to and did acquire Confidential and Proprietary Information, including the Business Unit's marketing materials and customer information and was familiar with the strengths, weaknesses, pricing, performance and features of its products.   Upon information and belief, while at the Business Unit, Mr. Eliason maintained the Business Unit's customer contacts with KDDI and Motorola and then used those same contacts for the benefit of Starent.*

59.    Starent admits that Dale Eliason began employment at Starent on November 27, 2000, as a Product Manager, and that he is no longer employed by Starent.   Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 59 of the Complaint and, therefore, denies them.

*60.    Upon information and belief, Mr. Espy was North American Director of Sales for Wireless Products for the Business Unit.   Upon information and belief, in or around January 2003, Mr. Espy left the Business Unit to become Vice President of Sales at Starent. Upon information and belief, Mr. Espy solicited and convinced several of his staff to join him*

*at Starent.  Upon information and belief, Mr. Espy held the same or a similar position at both the Business Unit and Starent.  Upon information and belief, while at the Business Unit, Mr. Espy worked on the Sprint and Verizon accounts and then worked on the same accounts for Starent.  Upon information and belief, while at the Business Unit, Mr. Espy had access to and did acquire Confidential and Proprietary Information, including all of the Business Unit's marketing materials and customer information and was familiar with the strengths, weaknesses, pricing, performance and features of its products.  Upon information and belief, Mr. Espy is no longer working for Starent.*

60.    Starent admits that Brian Espy began employment at Starent on January 6, 2003, as Sales Director, that while Mr. Espy was at Starent he worked on the Sprint and Verizon accounts, and that he is no longer employed by Starent.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 60 of the Complaint and, therefore, denies them.

*61.    Upon information and belief Mr. Gabel was a network consultant for the Business Unit.  Upon information and belief, Mr. Gabel left the Business Unit in or around November 2002 to work in sales for Starent.  Upon information and belief, Mr. Gabel left the Business Unit on the very same day with one of his co-workers, Mr. Zarich, who also left the Business Unit for Starent.  Upon information and belief, Mr. Gabel held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Gabel worked on the Sprint account and then worked on the same account for Starent.  Upon information and belief, while at the Business Unit, Mr. Gabel had access to and did acquire Confidential and Proprietary Information, including all of the Business Unit's marketing materials and customer information and was familiar with the detailed*

*technical aspects, strengths, weaknesses, pricing, performance and features of its products.*
*Upon information and belief, Mr. Gabel is no longer at Starent.  Upon information and belief,*
*Mr. Gabel destroyed incriminating evidence and Confidential and Proprietary Information,*
*and took the same with him when he destroyed his computer hard drive prior to leaving the*
*Business Unit, so that the full extent of his misappropriation and destruction could not be*
*discovered.*

61.     Starent admits that Troy Gabel began employment at Starent on December 9, 2002, in sales as Network Consultant, and that he is no longer employed by Starent.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 61 of the Complaint and, therefore, denies them.

*62.     Upon information and belief, Mr. Harper, was a consulting (senior) engineer*
*for the Business Unit who left in September 2000 to become Starent's platform architect,*
*including the hardware and software for the ST Products.  Upon information and belief, Mr.*
*Harper was an architect of at least one of the Business Unit's PDSN products and thus had*
*access to and did acquire Confidential and Proprietary Information, including everything*
*about the PDSN products of the Business Unit, as well as all source code.  Upon information*
*and belief, Mr. Harper took the knowledge of the Confidential and Proprietary Information he*
*gained while at the Business Unit and used it improperly and unlawfully to develop Starent's*
*ST Products.  Upon information and belief, Mr. Harper held the same or a similar position*
*both at the Business Unit and at Starent, and Mr. Harper was the architect of the platforms*
*for the products of both the Business Unit and Starent.*

62.     Starent admits that Matthew Harper began employment at Starent on October 16, 2000, as Principal Software Engineer, and is currently an Architect, engineering Starent's

products' hardware and software platforms.  Starent denies the allegation that Matthew Harper improperly and unlawfully used any knowledge of any of the "Confidential and Proprietary Information" referred to in the Complaint to develop Starent's ST Products.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 62 of the Complaint and, therefore, denies them.

*63.    Upon information and belief, Mr. Kelly was a network consultant and then a manager for global strategic technology in wireless at the Business Unit.  Upon information and belief, Mr. Kelly left the Business Unit in or around November 2002 to become Director of Network Consulting and Sales and Support for Starent.  Upon information and belief, Mr. Kelly sells Starent's products to the people who make the purchasing decisions.  Upon information and belief, Mr. Kelly held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Kelly worked on the Sprint account and then worked on the same account for Starent.  Upon information and belief, while at the Business Unit, Mr. Kelly had access to and did acquire Confidential and Proprietary Information, including all of the Business Unit's marketing materials and customer information and was familiar with the detailed technical aspects, strengths, weaknesses, pricing, performance and features of its products.  Upon information and belief, Mr. Kelly also destroyed his computer hard drive prior to leaving the Business Unit to prevent the full disclosure of his misappropriation and destruction of Confidential and Proprietary Information of the Business Unit.*

63.    Starent admits that Todd Kelly began employment at Starent on November 14, 2002, as Network Consultant, and that Todd Kelly sells Starent's products to companies.  Starent

is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 63 of the Complaint and, therefore, denies them.

***64.     Upon information and belief, Mr. Lopez was a senior product manager at the Business Unit.  In or around mid-2001, Mr. Lopez left the Business Unit for Starent to work in business development and is now Vice President of Business Alliances.  Upon information and belief, while the Business Unit, Mr. Lopez was a product manager for the PDSN products and other wireless products and thus had access to and did acquire Confidential and Proprietary Information, including everything about the PDSN products, as well as the source code, and was familiar with the strengths, weaknesses, pricing, performance and features of its products. Upon information and belief, Mr. Lopez held the same or a similar position both at the Business Unit and at Starent.***

64.     Starent admits that Nick Lopez began employment at Starent on February 19, 2001, as Senior Business Development and Strategy Manager, and is currently employed as Vice President of Strategic Alliances.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 64 of the Complaint and, therefore, denies them.

***65.     Upon information and belief, Mr. Tim Mortsolf was senior software engineer at the Business Unit.  Upon information and belief, Mr. Mortsolf left the Business Unit in or around 2001 for the same or a similar position.  Upon information and belief, while at the Business Unit, Mr. Mortsolf worked with the PDSN products and had access to and did acquire Confidential and Proprietary Information, including everything about the PDSN products, as well as the source code.***

25

65.    Starent admits that Tim Mortsolf began employment at Starent on April 2, 2001, as Principal Software Engineer.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 65 of the Complaint and, therefore, denies them.

*66.    Upon information and belief, Mr. Puthiyandyil was a senior engineer at the Business Unit.  Upon information and belief, Mr. Puthiyandyil left the Business Unit in or around spring 2001 to become a manager of development at Starent.  Upon information and belief, Mr. Puthiyandyil held the same or similar positions at both the Business Unit and Starent.  Upon information and belief, while at the Business Unit Mr. Puthiyandyil had access to and did acquire Confidential and Proprietary Information as a senior engineer in the RAS group.  Upon information and belief, the technology of the RAS group is the same or similar to that used by Starent..  Upon information and belief, Mr. Puthiyandyil was working on the PDSN products and it was anticipated, prior to him leaving for Starent, that based on his intimate knowledge and participation, he would be promoted to the position of an architect of one of the Business Unit's PDSN products.*

66.    Starent admits that Sanil Puthiyandyil began employment at Starent on April 23, 2001, as Principal Software Engineer, and is currently employed as Manager, Protocol Development.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 66 of the Complaint and, therefore, denies them.

*67.    Upon information and belief, Mr. Shaji Radhakrishnan was an engineer for the Business Unit and had access to and did acquire Confidential and Proprietary Information. Upon information and belief, Mr. Radhakrishnan left the Business Unit in or around April 2001 to become an engineer for Starent.  Upon information and belief, Mr. Radhakrishnan*

*held the same or similar positions at both the Business Unit and Starent.  Upon information and belief, while at the Business Unit, Mr. Radhakrishnan was an engineer in the RAS group. Upon information and belief, the technology of the RAS group is the same or similar to that used by Starent.*

67.     Starent admits that Shaji Radhakrishnan began employment at Starent on July 21, 2003, as Principal Software Engineer.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 67 of the Complaint and, therefore, denies them.

*68.     Upon information and belief, Mr. Ramankutty was a lead/senior software engineer at the Business Unit.  Upon information and belief, Mr. Ramankutty left the Business Unit in or around June 2001.  Upon information and belief, Mr. Ramankutty is a consulting (senior) software engineer for Starent.  Upon information and belief, Mr. Ramankutty held the same or similar positions at both the Business Unit and Starent.  Upon information and belief, while at the Business Unit, Mr. Ramankutty was an engineer in the RAS and wireless groups.  Upon information and belief, while at the Business Unit, Mr. Ramankutty worked with the PDSN products and had access to and did acquire Confidential and Proprietary Information, including detailed information about the PDSN products, as well as the source code.*

68.     Starent admits that Rajesh Ramankutty began employment at Starent on July 16, 2003, as Principal Software Engineer, and is currently employed by Starent as a Consulting Software Engineer.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 68 of the Complaint and, therefore, denies them.

*69.     Upon information and belief, Mr. Rygula was a product manager at the Business Unit.  Upon information and belief, Mr. Rygula started in the techcomm group writing technical documentation (how everything works, user manuals) then became a product manager.  Upon information and belief, Mr. Rygula left the Business Unit in or around 2002 to become a technical writer for Starent.  Upon information and belief, Mr. Rygula held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Rygula had access to and did acquire Confidential and Proprietary Information, including all of the Business Unit's marketing materials and was familiar with the detailed technical aspects, strengths, weaknesses, pricing, performance and features of its products.*

69.     Starent admits that Charles Rygula began employment at Starent on December 17, 2001, as Senior Technical Writer.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 69 of the Complaint and, therefore, denies them.

*70.     Upon information and belief, the co-founder of Starent, Mr. Anthony P. Schoener, was a former Director of Software Development for 3Com Corp.  Upon information and belief, Mr. Schoener left 3Com Corp. in or around June 2000 and helped form Starent shortly thereafter.  Upon information and belief, Mr. Schoener is Starent's Vice President of Engineering.*

70.     Starent admits the allegations of Paragraph 70 of the Complaint.

*71.     Upon information and belief, Mr. Janakiraman Senthilnathan had access to and did acquire Confidential and Proprietary Information, of the Business Unit and left the Business Unit in October 2000.  Mr. Senthilnathan was an engineer in RAS who worked with*

*Messrs. Puthiyandyil and Ramankutty. Upon information and belief, Mr. Senthilnathan held*

*the same or similar positions at both the Business Unit and Starent. Upon information and*

*belief, the technology of the Business Unit's RAS group is the same or similar to that used by*

*Starent.*

71.     Starent admits that Janakiraman Senthilnathan began employment at Starent on

October 27, 2000, as Principal Software Engineer. Starent is without sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in Paragraph 71 of the

Complaint and, therefore, denies them.

*72.     Upon information and belief, Mr. Shieh was a principal architect and product*

*manager for the Business Unit. Upon information and belief, Mr. Shieh left the Business*

*Unit in or around January 2001 to become General Manager of Greater China and Vice*

*President of Technology Development for Starent. Upon information and belief, Mr. Shieh*

*held the same or a similar position at both the Business Unit and Starent. Upon information*

*and belief, while at the Business Unit, Mr. Shieh had access to and did acquire Confidential*

*and Proprietary Information, including the Business Unit's marketing materials and customer*

*information and was familiar with the strengths, weaknesses, pricing, performance and*

*features of its products. Upon information and belief, while at the Business Unit, Mr. Shieh*

*maintained the Business Unit's confidential and proprietary customer contacts with China*

*Unicom and then used those same contacts for the benefit of Starent.*

72.     Starent admits that Paul Shieh began employment at Starent on August 28, 2000,

as Director of Technology. Starent denies the allegation that Paul Shieh used "the Business

Unit's confidential and proprietary customer contacts with China Unicom [for] the benefit of

Starent." Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 72 of the Complaint and, therefore, denies them.

*73.    Upon information and belief, Mr. Sirota, who was the Director of Wireless Product Management, left the Business Unit in or around November 2000 to become Starent's Vice President of Product Management.  Upon information and belief, Mr. Sirota held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Sirota worked with the PDSN products and had access to and did acquire Confidential and Proprietary Information, including detailed information about the PDSN products, as well as the source code.  Upon information and belief, while at the Business Unit, Mr. Sirota also had access to and did acquire additional Confidential and Proprietary Information including all of the Business Unit's marketing materials and customer information and was familiar with the detailed technical aspects, strengths, weaknesses, pricing, performance and features of its products.*

73.    Starent admits that Gennady Sirota began employment with Starent on November 13, 2000, as Vice President of Marketing, and is currently employed as Vice President of Product Management.  Starent further admits that from November 1999 to November 2000, Mr. Sirota was Director of Wireless Product Management for the Carrier Systems Group at 3Com Corporation.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 73 of the Complaint and, therefore, denies them.

*74.    Upon information and belief, Mr. Grant Taylor was a platform software engineer for the Business Unit and had access to and did acquire Confidential and Proprietary Information until October 2000 when he left to become a principal software engineer for Starent.  Upon information and belief, Mr. Taylor held the same or a similar*

*position at both the Business Unit and Starent.  Upon information and belief, while at Starent*

*Mr. Taylor has designed and implemented software for the ST Products.*

74.     Starent admits that Grant Taylor began employment at Starent on October 16, 2000, as Principal Software Engineer, and that, while employed by Starent, he has designed and implemented software for the ST16 Intelligent Mobile Gateway and the ST40 Multimedia Core Platform.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 74 of the Complaint and, therefore, denies them.

*75.     Upon information and belief, Mr. Tiwari was a director of product management for the Business Unit and had access to and did acquire Confidential and Proprietary Information.  Upon information and belief, Mr. Tiwari left the Business Unit in or around 2002 and is now Vice President Solutions Development for Starent.  Upon information and belief, Mr. Tiwari held the same or similar positions at both the Business Unit and Starent. Upon information and belief, while at the Business Unit, Mr. Tiwari was a director for the RAS group.  Upon information and belief, the technology of the RAS group is the same or similar to that used by Starent.*

75.     Starent admits that Amit Tiwari began employment with Starent on October 15, 2001, as Director of Systems Engineering, and is currently employed by Starent as Vice President of Worldwide Customer Service.   Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 75 of the Complaint and, therefore, denies them.

*76.     Upon information and belief, Mr. Wininger was the head of proposals at the Business Unit and had access to and did acquire Confidential and Proprietary Information. Upon information and belief, while at the Business Unit, Mr. Wininger wrote and responded*

*to all the requests for proposals ("RFPs").  Upon information and belief, Mr. Wininger left the Business Unit in or around 2001 to work on RFPs at Starent.  Upon information and belief, Mr. Wininger held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Wininger had access to and did acquire Confidential and Proprietary Information including all of the Business Unit's responses to RFPs, marketing materials and customer information and was familiar with the technical aspects, strengths, weaknesses, pricing, performance and features of its products. Upon information and belief, Mr. Wininger is no longer working for Starent.*

76.    Starent admits that James Wininger began employment with Starent on June 18, 2001, as Manager of Professional Services, and that he is no longer employed by Starent. Starent denies the allegation that Mr. Wininger came to Starent "to work on RFPs."  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 76 of the Complaint and, therefore, denies them.

*77.    Upon information and belief, Mr. Zarich worked in sales for the Business Unit. Upon information and belief, Mr. Zarich left the Business Unit in or around November 2002 to work in sales for Starent.  Upon information and belief, Mr. Zarich left the Business Unit on the very same day with one of his co-workers, Mr. Gabel, who also left the Business Unit for Starent.  Upon information and belief, Mr. Zarich held the same or a similar position both at the Business Unit and at Starent.  Upon information and belief, while at the Business Unit, Mr. Zarich worked on the Sprint account and then worked on the same account for Starent. Upon information and belief, while at the Business Unit, Mr. Zarich had access to and did acquire Confidential and Proprietary Information including all of the Business Unit's marketing materials and customer information and was familiar with the detailed technical*

*aspects, strengths, weaknesses, pricing, performance and features of its products.  Upon information and belief, Mr. Zarich no longer works for Starent.*

77.     Starent admits that Mark Zarich began employment with Starent on December 9, 2002, in sales as an Account Director, and that he is no longer employed by Starent.  Starent admits that while he was employed by Starent, Mr. Zarich worked on the Sprint account.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint and, therefore, denies them.

*78.     Upon information and belief, Starent has engaged in a pattern of improperly and unlawfully acquiring, copying and/or using UTSI's Confidential and proprietary Information and other intellectual property.*

78.     Starent denies the allegations of Paragraph 78 of the Complaint.

*79.     Upon information and belief, the invention disclosed in Starent's patent application entitled "Reduced data session establishment time in CDMA-2000 networks," document number 20050204043 is owned by UTSI.  It was invented by former employees Mr. Harper, Mr. Puthiyandyil and Mr. Senthilnathan while they were employees of the Business Unit and implemented by UTSI in its products more than one year prior to Starent's filing of this patent application.*

79.     Starent denies the allegations of Paragraph 79 of the Complaint.

*80.     Upon information and belief, the invention disclosed in Starent's patent application entitled "Method and system for traffic redirection for prepaid subscriber sessions in a wireless network," document number 20060276170 is owned by UTSI.  It was invented by former employee Mr. Radhakrishnan and another individual while Mr. Radhakrishnan was an employee of the Business Unit, and it is taught by UTSI's implementation of prepaid*

*subscriber services, already patented in UTSI's patent, United States Patent No. 6,829,473 and related patent applications.*

80.     Starent denies the allegations of Paragraph 80 of the Complaint.

*81.     Upon information and belief, the invention disclosed in Starent's patent application entitled "Managing resources for IP networks," document number 20040250159 is owned by UTSI.  It was invented by former employee Mr. Harper and two other individuals while Mr. Harper was an employee of the Business Unit. The invention, is taught by UTSI's implementation of software replication in UTSI's patent, United States patent No. 6,560, 217, which was also invented by former employee Mr. Harper and former employee Mr. Mortsolf, along with the other individuals.*

81.     Starent denies the allegations of Paragraph 81 of the Complaint.

*82.     Upon information and belief, the invention disclosed in Starent's patent, United States Patent No. 6,985,464, entitled "Managing packet data interconnections in mobile communications" is owned by UTSI.  It was invented by former employees Mr. Harper and Mr. Senthilnathan while employees of the Business Unit.  The invention is taught by UTSI's implementation of managing foreign agent selections that is already patented in UTSI's patent, United States Patent No. 7,193,985.  Starent filed its patent only approximately six weeks after UTSI.  Further, Mr. Sirota, now an employee of Starent, was the Business Unit employee that signed off on the invention disclosure (an internal Business Unit document) for the Business Unit.*

82.     Starent denies the allegations of Paragraph 82 of the Complaint.

***83.     On February 6, 2007, the United States Patent and Trademark Office (the "USPTO") duly and legally issued United States Patent No. 7,173,905 ("the '905 patent"), entitled "PDSN fast tunnel lookup." A copy of the '905 patent is attached hereto as Exhibit A.***

83.     Starent admits that a copy of U.S. Patent No. 7,173,905 ("the '905 patent"), titled "PDSN Fast Tunnel Lookup," was attached as Exhibit A to the Complaint. Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 83 of the Complaint and, therefore, denies them.

***84.     On December 20, 2005, the USPTO duly and legally issued United States Patent No. 6,978,128 ("the '128 patent"), entitled "System and method to allow simple IP mobile nodes to operate seamlessly in a mobile IP network with true roaming capabilities." A copy of the '128 patent is attached hereto as Exhibit B.***

84.     Starent admits that a copy of U.S. Patent No. 6,978,128 ("the '128 patent"), titled "System and Method to Allow Simple IP Mobile Nodes to Operate Seamlessly in a Mobile IP Network with True Roaming Capabilities," was attached as Exhibit B to the Complaint. Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 84 of the Complaint and, therefore, denies them.

***85.     On November 8, 2005, the USPTO duly and legally issued United States Patent No. 6,963,582 ("the '582 patent"), entitled "Applying modified mobile internet protocol (IP) in a wireless mobile data network interface." A copy of the '582 patent -is attached hereto as Exhibit C.***

85.     Starent admits that a copy of U.S. Patent No. 6,963,582 ("the '582 patent"), titled "Applying Modified Mobile Internet Protocol (IP) in a Wireless Mobile Data Network Interface," was attached as Exhibit C to the Complaint. Starent is without sufficient knowledge

or information to form a belief as to the truth of the remaining allegations in Paragraph 85 of the Complaint and, therefore, denies them.

86.     *On July 20, 2004, the USPTO duly and legally issued United States Patent No. 6,765,900 ("the '900 patent"), entitled "Virtual home agent service using software-replicated home agents."  Starent employees Mr. Harper and Mr. Mortsolf (along with here other individuals) are listed as the inventors of the '900 patent.  A copy of the '900 patent is attached hereto as Exhibit D.*

86.     Starent admits that a copy of U.S. Patent No. 6,765,900 ("the '900 patent"), titled "Virtual Home Agent Service Using Software-Replicated Home Agents," was attached as Exhibit D to the Complaint.  Starent further admits that Matthew Harper and Timothy Mortsolf are listed as two of the inventors of the '900 patent, and that Matthew Harper is currently employed by Starent.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 86 of the Complaint and, therefore, denies them.

87.     *On January 27, 2004, the USPTO duly and legally issued United States Patent No. 6,684,256 ("the '256 patent"), entitled "Routing method for mobile wireless nodes having overlapping internet protocol home addresses."  A copy of the '256 patent is attached hereto as Exhibit E.*

87.     Starent admits that a copy of U.S. Patent No. 6,684,256 ("the '256 patent"), titled "Routing Method for Mobile Wireless Nodes Having Overlapping Internet Protocol Home Addresses," was attached as Exhibit E to the Complaint.  Starent is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 87 of the Complaint and, therefore, denies them.

*88.    UTSI is the owner of and currently owns all right, title and interest in the '905, '128, '582,'900 and '256 patents, including the right to sue and collect damages for all prior, current and future infringements.*

88.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 88 of the Complaint and, therefore, denies them.

**COUNT 1**
**VIOLATION OF THE ILLINOIS TRADE SECRET ACT**
**(Against All Defendants)**

*89.    UTSI repeats and realleges Paragraphs 1 through 88 of this Complaint as if fully set forth herein.*

89.    Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 88 of this Answer.

*90.    The Confidential and Proprietary Information described herein constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. ("the Act").*

90.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint and, therefore, denies them.

*91.    The defendants removed, used and/or disclosed the trade secret information belonging to UTSI.  The defendants' actions, as alleged herein, constitute misappropriation of UTSI's trade secrets under the Act.  The defendants' actions, as alleged herein, also constitute a continuing threat of misappropriation.*

91.    As to Starent, it denies the allegations of Paragraph 91 of the Complaint.  As to the individual defendants, Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 91 of the Complaint and, therefore, denies them.

**92.** *Starent has used and/or is likely to use trade secret information belonging to UTSI. Starent's actions constitute a misappropriation of trade secrets under the act. Starent's actions, as alleged herein, also constitute a continuing threat of misappropriation.*

92.     Starent denies the allegations of Paragraph 92 of the Complaint.

**93.** *Section 3 of the Act authorizes the issuance of an injunction in the event of an actual or threatened misappropriation.*

93.     Starent admits the allegations in Paragraph 93 of the Complaint.

**94.** *the actions of Defendants, as alleged herein, in connection with UTSI's trade secrets have been and will continue to be willful.*

94.     As to Starent, it denies the allegations of Paragraph 94 of the Complaint.  As to the individual defendants, Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 94 of the Complaint and, therefore, denies them.

**95.** *Defendants' continued breaches of the Act have caused and will continue to cause UTSI to lose business, and the goodwill, reputation, and confidence of the 3G wireless industry, none of which could have been compensated by money damages, thereby causing UTSI to sustain irreparable harm.*

95.     As to Starent, it denies the allegations of Paragraph 95 of the Complaint.  As to the individual defendants, Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 95 of the Complaint and, therefore, denies them.

**COUNT 2**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 7,173,905**
**(Against Starent)**

**96.** *UTSI repeats and realleges Paragraphs 1 through 95 of this Complaint as if fully set forth herein.*

96.     Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 95 of this Answer.

**97.     *The '905 patent is entitled to a presumption of validity.***

97.     Starent admits the allegation of Paragraph 97 of the Complaint.

**98.     *Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '905 patent by marking, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '905 patent.***

98.     Starent denies the allegations of Paragraph 98 of the Complaint.

**99.     *Upon information and belief, Starent's infringement of the '905 patent has been and continues to be willful and deliberate and with the full knowledge of the '905 patent.***

99.     Starent denies the allegations of Paragraph 99 of the Complaint.

**100.     *Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.***

100.     Starent denies the allegations of Paragraph 100 of the Complaint.

**101.     *As a result of Starent's infringement, UTSI has suffered and continues to suffer damages in an amount to be proven at trial.***

101.     Starent denies the allegations of Paragraph 101 of the Complaint.

**COUNT 3**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,978,128**
**(Against Starent)**

**102.     *UTSI repeats and realleges Paragraphs l through 101 of this Complaint as if fully set forth herein.***

102.    Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 101 of this Answer.

*103.    The '128 patent is entitled to a presumption of validity.*

103.    Starent admits the allegation of Paragraph 103 of the Complaint.

*104.    Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '128 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '128 patent.*

104.    Starent denies the allegations of Paragraph 104 of the Complaint.

*105.    Upon information and belief, Starent's infringement of the '128 patent has been and continues to be willful and deliberate and with the full knowledge of the '128 patent.*

105.    Starent denies the allegations of Paragraph 105 of the Complaint.

*106.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the court.*

106.    Starent denies the allegations of Paragraph 106 of the Complaint.

*107.    As a result of Starent's infringement, UTSI has suffered and continues to suffer damages in an amount to be proven at trial.*

107.    Starent denies the allegations of Paragraph 107 of the Complaint.

**COUNT 4**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,963,582**
**(Against Starent)**

*108.    UTSI repeats and realleges Paragraphs 11 through 107 of this Complaint as if fully set forth herein.*

108.    Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 107 of this Answer.

*109.    The '582 patent is entitled to a presumption of validity.*

109.    Starent admits the allegation of Paragraph 109 of the Complaint.

*110.    Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '582 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '582 patent.*

110.    Starent denies the allegations of Paragraph 110 of the Complaint.

*111.    Upon information and belief, Starent's infringement of the '592 patent has been and continues to be willful and deliberate and with the full knowledge of the '582 patent.*

111.    Starent denies the allegations of Paragraph 111 of the Complaint.

*112.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

112.    Starent denies the allegations of Paragraph 112 of the Complaint.

*113.    As a result of Starent's infringement, UTSI has suffered and continues to suffer damages in amount to be proven at trial.*

113.    Starent denies the allegations of Paragraph 113 of the Complaint.

## COUNT 5
## PATENT INFRINGEMENT
## U.S. PATENT NO. 6,765,900
### (Against Starent)

*114.    UTSI repeats and realleges Paragraphs 1 through 113 of this Complaint as if fully set forth herein.*

114.     Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 113 of this Answer.

**115.     *The '900 patent is entitled to a presumption of validity.***

115.     Starent admits the allegation of Paragraph 115 of the Complaint.

**116.     *Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '900 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '900 patent.***

116.     Starent denies the allegations of Paragraph 116 of the Complaint.

**117.     *Upon information and belief, Starent's infringement of the '900 patent has been and continues to be willful and deliberate and with the full knowledge of the '900 patent.***

117.     Starent denies the allegations of Paragraph 117 of the Complaint.

**118.     *Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.***

118.     Starent denies the allegations of Paragraph 118 of the Complaint.

**119.     *As a result of Starent's infringement, UTSI has suffered and continues to suffer damages in an mount to be proven at trial.***

119.     Starent denies the allegations of Paragraph 119 of the Complaint.

**COUNT 6**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,684,256**
**(Against Starent)**

**120.     *UTSI repeats and realleges Paragraphs 1 through 119 of this Complaint as if fully set forth herein.***

120.    Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 119 of this Answer.

*121.    The '256 patent is entitled to a presumption of validity.*

121.    Starent admits the allegation of Paragraph 121 of the Complaint.

*122.    Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '256 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '256 patent.*

122.    Starent denies the allegations of Paragraph 122 of the Complaint.

*123.    Upon information and belief, Starent's infringement of the '256 patent has been and continues to be willful and deliberate and with the full knowledge of the '256 patent.*

123.    Starent denies the allegations of Paragraph 123 of the Complaint.

*124.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

124.    Starent denies the allegations of Paragraph 124 of the Complaint.

*125.    As a result of Starent's infringement, UTSI has suffered and continues to suffer damages in an amount to be proven at trial.*

125.    Starent denies the allegations of Paragraph 125 of the Complaint.

## COUNT 7
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

*126.    UTSI repeats and realleges Paragraphs 1 through 125 of this Complaint as if fully set forth herein.*

126.    Starent incorporates by reference the allegations set forth above in Paragraphs 1 through 125 of this Answer.

*127.    Based upon UTSI's well-established relationships with Sprint and Verizon and its prior dealings with Sprint and Verizon, UTSI had a reasonable expectancy of continuing its existing relationships with Sprint and Verizon and entering into additional agreements and business arrangements with Sprint and Verizon.*

127.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 127 of the Complaint and, therefore, denies them.

*128.    Defendants knew of UTSI's existing relationships with Sprint and Verizon and its other customers, and knew or should have known of UTSI's expectancy of entering into additional agreements and business arrangements with Sprint and Verizon and its other customers.  Defendants also knew or should have known of UTSI's prior dealing with Sprint and Verizon, knew that Sprint and Verizon had long-standing relationships with UTSI, and that UTSI had a reasonable expectancy of continuing its existing relationships with Sprint and Verizon and entering into additional agreements and business arrangements with Sprint and Verizon.*

128.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 128 of the Complaint and, therefore, denies those allegations.

*129.    By soliciting a relationship with Sprint and Verizon and competing against UTSI using Confidential and Proprietary Information, Defendants intentionally and without justification interfered with UTSI's expectancy of continuing its existing relationships with*

*Sprint and Verizon and entering into additional agreements and business arrangements with*

*Sprint and Verizon.*

129.    Starent denies the allegation in Paragraph 129 of the Complaint that it "compet[ed] against UTStarcom using Confidential and Proprietary Information" with respect to "Sprint and Verizon."  Starent further denies the remaining allegations of Paragraph 129 of the Complaint about Starent and, therefore, denies those remaining allegations.  Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 129 of the Complaint about the individual defendants and, therefore, denies those allegations.

*130.    Defendants' conduct was willful, wanton and reckless and undertaken with callous disregard and indifference to UTSI's relationships with Sprint and Verizon. Defendants calculated to harm UTSI's business and conceal their activities in order to increase the likelihood of damages to UTSI.*

130.    As to Starent and the individual defendants working on behalf of Starent, it denies the allegations of Paragraph 130 of the Complaint.  As to any one else, Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 130 of the Complaint and, therefore, denies them.

*131.    UTSI has been damaged by the defendants' intentional interference with its existing business relationships and prospective economic advantage from lost relationships. UTSI's business relationships with Sprint and Verizon have been serious and likely irretrievably harmed.*

131.    As to Starent and the individual defendants working on behalf of Starent, it denies the allegations of Paragraph 131 of the Complaint.  As to any one else, Starent is without

sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 131 of the Complaint and, therefore, denies them.

## COUNT 8
## DECLARATIONS OF OWNERSHIP
### (Against Starent)

*132.    UTSI repeats and realleges Paragraphs 1 through 131 of this Complaint as if fully set forth herein.*

132.    Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 131 of this Answer.

*133.    Starent's patent application document number 20050204043, invented by former employees Mr. Harper, Mr. Puthiyandyil and Mr. Senthilnathan, was implemented by UTSI in its products more than one year prior to Starent's filing of this application.*

133.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 133 of the Complaint (to the extent those allegations are understood) and, therefore, denies them.

*134.    Starent intentionally disclosed UTSI's valuable trade secrets by filing the 20050204043 patent application.*

134.    Starent denies the allegations of Paragraph 134 of the Complaint.

*135.    Continued prosecution of the 20050204043 patent application is likely to cause further disclosure of UTSI's trade secrets.*

135.    Starent denies the allegations of Paragraph 135 of the Complaint.

*136.    Accordingly, Starent should be enjoined from further prosecution of the 20050204043 patent application and all rights therein should be assigned to UTSI.*

136.    Starent denies the allegations of Paragraph 136 of the Complaint.

*137.    Starent's patent application document number 20060276170, invented by former employee Mr. Radhakrishnan and another individual, is taught by UTSI's implementation of prepaid subscriber services that is already patented by UTSI.*

137.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 137 of the Complaint (to the extent those allegations are understood) and, therefore, denies them.

*138.    To the extent that the 20060276170 patent application contains any patentable inventions, such inventions were conceived while Mr. Radhakrishnan was an employee of UTSI (the Business Unit).*

138.    Starent denies the allegations of Paragraph 138 of the Complaint.

*139.    Accordingly, all rights in the 20060276170 patent application should be assigned to UTSI.*

139.    Starent denies the allegations of Paragraph 139 of the Complaint.

*140.    Starent's patent application document number 20040250159, invented by former employee Mr. Harper and two other individuals, is taught by UTSI's implementation of software replication that is already patented by UTSI (through inventions also by former employee Mr. Harper and former employee Mr. Mortsolf, along with three other individuals).*

140.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 140 of the Complaint and, therefore, denies them.

*141.    To the extent that the 20040250159 patent application contains any patentable inventions, such inventions were conceived while Mr. Harper was an employee of UTSI (the Business Unit).*

141.    Starent denies the allegations of Paragraph 141 of the Complaint.

*142.    Accordingly, all rights in the 20040250159 patent application should be assigned to UTSI.*

142.    Starent denies the allegations of Paragraph 142 of the Complaint.

*143.    Starent's patent, United States Patent No. 6,985,464 ("the '464 patent"), invented by former employees Mr. Harper and Mr. Senthilnathan, is taught by UTSI's implementation of managing foreign agent selections that is already patented by UTSI.*

143.    Starent is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 143 of the Complaint (to the extent those allegations are understood) and, therefore, denies them.

*144.    To the extent that there are any patentable improvements in the '464 patent, such patentable improvements were conceived and known to Mr. Harper and Mr. Senthilnathan while they were still employees of UTSI (the Business Unit).*

144.    Starent denies the allegations of Paragraph 144 of the Complaint.

*145.    Accordingly, all rights in the '464 patent should be assigned to UTSI.*

145.    Starent denies the allegations of Paragraph 145 of the Complaint.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be plead as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to Starent's right to plead additional defenses as discovery into the facts of the matter warrant, Starent hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement of Asserted Patents)

146.    Starent has not infringed and is not infringing in any manner, for example directly, contributorily, or by inducement, any claim of the (i) '905 patent, (ii) '128 patent, (iii)

'582 patent, (iv) '900 patent, or (v) '256 patent, either literally or under the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity of Asserted Patents)

147.    The claims of the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, and (v) '256 patent are not valid because of failure to comply with one or more provisions of 35 U.S.C. §§ 102-112.

### THIRD AFFIRMATIVE DEFENSE
### (Unenforceability of Asserted Patents)

148.    The '256 patent is unenforceable due to inequitable conduct and unclean hands because, *inter alia*, individuals associated with the filing and/or prosecution of the patent applications that matured into those patents failed to disclose certain material, non-cumulative prior art to the USPTO.  For example, the applicants failed to cite to the USPTO an IETF draft that they knew or should have known about (Perkins et al., Private Addresses in Mobile IP, June 25, 1999 (10 pages).  Exhibit A.  This uncited reference discloses foreign agents that route communications with a mobile node by referring to a list containing the home IP address for the mobile node and a home agent IP address associated with the mobile node so that packets are correctly routed despite the presence of mobile nodes having identical home IP addresses (thus dealing with the situation where "two mobile nodes to show up with the same identical private IP address.").  Accordingly, this reference and the information contained therein were material to the subject matter of the '256 patent.

### FOURTH AFFIRMATIVE DEFENSE
### (Estoppel and Laches)

149.    One or more of Plaintiff's claims are barred by estoppel and laches.

## FIFTH AFFIRMATIVE DEFENSE
### (Preemption)

150.    UTStarcom's claims under Count 7 ("Intentional Interference with Business Relations and Prospective Economic Advantage") are preempted by the Illinois Trade Secret Act (765 ILSC 1065/1 *et seq*.).

## SIXTH AFFIRMATIVE DEFENSE
### (Trade Secret Claims Time-Barred (Statute of Limitations))

151.    One or more of UTStarcom's claims under Count 1 ("Violation of the Illinois Trade Secret Act") are time-barred by the five-year statute of limitations of the Illinois Trade Secret Act (765 ILCS 1065/7).

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Plead Violation of Illinois Trade Secret Act)

152.    UTStarcom failed to state a claim for misappropriation of trade secrets under the Illinois Trade Secret Act.  For example, UTStarcom failed to plead that any information allegedly taken by the defendants was sufficiently secret to derive economic value, actual or potential, from not being generally known to others persons who can obtain economic value from its disclosure or use, as required by the Act.

153.    Any allegations in the Complaint that are not answered above are denied.  Starent reserves the right to supplement or amend this Answer, if necessary, as more information becomes known regarding UTStarcom's claims.

## COUNTERCLAIMS

Starent asserts the following counterclaims against UTStarcom:

1.    Starent re-alleges and incorporates by reference its responses and allegations as set forth herein in Paragraphs 1-153, above.

2.      Starent is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Tewksbury, Massachusetts.

3.      UStarcom is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Alameda, California.

## JURISDICTION

4.      This Court has subject matter jurisdiction over these counterclaims for relief pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a), under the Patent Laws of the United States (35 U.S.C. § 1 *et seq.*).

5.      On May 8, 2007, UTStarcom filed a civil action alleging *inter alia* patent infringement and violation of the Trade Secret Act of the State of Illinois by filing a Complaint in this Court against Starent.  As a consequence, there is an actual, justifiable controversy between Starent and UTStarcom concerning whether Starent infringes any valid and enforceable claims of the asserted patents (*i.e.*, the '905 patent, the '128 patent, the '582 patent, the '900 patent, and the '256 patent).  This Court therefore also has subject matter jurisdiction over these counterclaims pursuant to the Federal Declaration Act (28 U.S.C. §§ 2201-2202).

6.      This Court also has personal jurisdiction over UTStarcom because UTStarcom has submitted itself to the jurisdiction of the Court.

## BACKGROUND

**UTStarcom's Prior Lawsuits Against Starent**

7.      This is the third lawsuit brought by UTStarcom against Starent since March 2004. In the first lawsuit, *UTStarcom, Inc. v. Starent Networks, Corp.*, C-04-01122 PVT (N.D. Cal., March 22, 2004) ("*UTStarcom I*"), UTStarcom sued Starent for patent infringement and brought a motion for a preliminary injunction in order to prevent "Starent's continued sale and use of its

competitive product." Exhibit B, p. 1. UTStarcom, which hoped to block Starent from doing business with Sprint and Verizon, attempted to justify that motion by arguing that its PDSN business "might not survive without having significant sales to at least one of the two 'Tier 1' carriers." *Id.*, p. 13. The court, however, denied UTStarcom's motion for preliminary injunction on almost every issue, including finding that UTStarcom was not likely to succeed on the merits of either infringement or validity.

8.     Notwithstanding that ruling, and after the district court rejected most of UTStarcom's claim construction positions, UTStarcom sent letters to Verizon and Sprint, falsely and misleadingly stating that UTStarcom was in a "strong position going forward." Exhibits C-D.

9.     At the time UTStarcom sent the letters, Starent had an existing business relationship with both Verizon and Sprint. Upon information and belief, UTStarcom knew of those relationships with Starent, and knew that Starent expected to continue to do business with those companies. Upon information and belief, UTStarcom's actions in sending those letters adversely affected the volume of Starent's actual and expected business with both Verizon and Sprint.

10.     In light of the district court's claim constructions, Starent sought summary judgment of noninfringement. The Court ruled in Starent's favor for *three* separate reasons, *i.e.*, that the accused ST16 product—one of the same products at issue in this suit—did not meet three separate claim limitations. UTStarcom appealed the adverse judgment to the United States Court of Appeals for the Federal Circuit, but failed even to argue error in all the district court's bases for its finding. The Federal Circuit promptly issued a "summary affirmance" on April 6, 2007, just four days after hearing oral argument. Exhibit E.

11.    While *UTStarcom I* was still pending, in February 2005, UTStarcom filed its second patent infringement lawsuit against Starent in the Northern District of California. *UTStarcom, Inc. v. Starent Networks, Corp.*, C-05-0710 (N.D. Cal. Feb. 16, 2005) ("*UTStarcom II*"). However, after nearly two years of litigation, and on the eve of the Court's claim construction hearing, on December 7, 2006, UTStarcom filed a reissue application in the U.S. Patent and Trademark Office ("Patent Office") in which it sought to correct various "errors in the original specification and drawings" that it admitted "confused the invention" and "render[ed] the patent indefinite because the written description conflict[ed] with the drawings." Exhibit F (pp. 1, 54, 70). UTStarcom also requested a stay of the litigation pending the outcome of the reissue proceedings in the Patent Office. The Court stayed *UTStarcom II* on January 29, 2007, and it remains stayed at this point in time. Exhibit G. Moreover, Plaintiff and the named inventors in *UTStarcom II* committed inequitable conduct in failing to disclose material prior art to the Patent Office with an intent to deceive the Patent Office when prosecuting the patent in suit, U.S. Patent No. 4,829,473. The Patent Office recently granted Starent's *inter partes* reexamination request based on this same prior art. Exhibit H. Thus, on information and belief, Plaintiff knowingly asserted an unenforceable and indefinite patent against Starent in *UTStarcom II*.

12.    *UTStarcom I and UTStarcom II* were objectively baseless lawsuits that, on information and belief, were filed with malicious intent and without probable cause. More specifically, on information and belief, those lawsuits were designed to intentionally and unjustifiably injure, and have so injured, Starent's reputation in the marketplace, and have intentionally and unjustifiably interfered directly with Starent's business by discouraging Starent's customers from doing business with Starent, including for example, UTSI's making

false and misleading statements to customers about the effect those lawsuits would have on Starent's business and customer relationships.

**Starent's Initial Public Offering**

13.     On March 6, 2007, Starent filed a registration statement with the U.S. Securities and Exchange Commission, announcing its proposed initial public offering ("IPO") of stock. Shortly after the filing, on May 8, 2007, UTStarcom filed the instant lawsuit against Starent ("*UTStarcom III*").

14.     On information and belief, UTStarcom filed the *UTStarcom III* Complaint with malicious intent.  More specifically, on information and belief, UTStarcom's goal in filing the *UTStarcom III* lawsuit was to intentionally and unjustifiably derail the IPO and damage Starent's reputation immediately before its IPO in order to adversely affect Starent's stock price and thereby directly injure its financial condition.

15.     *UTStarcom III* is an objectively baseless lawsuit that was, on information and belief, filed without probable cause and designed only to further injure and that has further injured Starent's reputation in the marketplace, and that has further interfered directly with Starent's business by discouraging Starent's customers from doing business with Starent.

16.     The complaint in *UTStarcom III*, for example, contains allegations of ownership of rights to Starent patent applications that are internally inconsistent with other allegations in the complaint.  For example, in Paragraphs 80-81, 137, and 140, UTStarcom alleges ownership on the basis of prior UTStarcom activities (applications and products) that allegedly contain the invention in those applications.  The ownership of a patent or application stems from ownership of the underlying invention, so UTStarcom's allegations, if true, would mean the applications do not include the UTStarcom activities as inventions.  If so, UTStarcom would have no basis of

owning the applications, since the activities that form the basis for ownership mean there is no invention to own.

## FIRST CLAIM FOR RELIEF
### (Non-Infringement of the Asserted Patents)

17.     Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 16 of the Counterclaims.

18.     Starent seeks a declaration that it has not infringed and does not infringe in any manner, for example contributorily, or by inducement, any claim of the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, or the (v) '256 patent, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF
### (Invalidity of the Asserted Patents)

19.     Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 16 of the Counterclaims.

20.     Starent seeks a declaration that the claims of the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, and the (v) '256 patent are not valid.

## THIRD CLAIM FOR RELIEF
### (Unenforceability of Asserted Patents)

21.     Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 6 of the Counterclaims.

22.     Starent seeks a declaration that the '256 patent is unenforceable for at least the reasons set forth in Paragraph 148 above.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage)

23.    Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 16 of the Counterclaims.

24.    UTStarcom has tortiously interfered with Starent's prospective economic advantage by, *inter alia*, (i) contacting companies that UTStarcom knew or should have known were both existing and prospective customers of Starent's and misrepresenting the posture of the *UTStarcom I* litigation and (ii) the filing, with malicious intent, of the *UTStarcom I*, *UTStarcom II*, and *UTStarcom III* litigations.

## FIFTH CLAIM FOR RELIEF
### (Malicious Prosecution)

25.    Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 16 of the Counterclaims.

26.    UTStarcom has engaged in malicious prosecution evidenced by the filing of at least the *UTStarcom I* litigation.

## REQUEST FOR RELIEF

WHEREFORE, Starent respectfully requests that the Court enter judgment for Starent:

A.    Dismissing UTStarcom's Complaint with prejudice;

B.    Declaring that Starent has not infringed and is not infringing, neither directly, contributorily, nor by inducement, any claim of the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, or the (v) '256 patent, either literally or under the doctrine of equivalents.

C.    Declaring that the claims of the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, and the (v) '256 patent are not valid for failing to comply with one or more provisions of 35 U.S.C. §§ 102-112.

D.     Declaring that the (i) '905 patent, (ii) '128 patent, (iii) '582 patent, (iv) '900 patent, and the (v) '256 patent are unenforceable;

E.     Declaring that this is an exceptional case under 35 U.S.C. § 285;

F.     Awarding Starent its costs, disbursements, and reasonable attorney fees (including expert fees) incurred in this action;

G.     Awarding Starent actual damages;

H.     Awarding Starent punitive damages for all causes of action allowing such an award;

I.     Granting any and all further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Starent hereby demands a trial by jury in this action on all claims and issues triable before a jury.

Dated: August 30, 2007                    Respectfully submitted,


                                          */s/ Arthur Gollwitzer III*
                                          Arthur Gollwitzer III (06225038)
                                          -Email:  agollwitzer@michaelbest.com
                                          MICHAEL BEST & FRIEDRICH L.L.P.
                                          Two Prudential Plaza
                                          180 N. Stetson Avenue, Suite 2000
                                          Chicago, Illinois 60601
                                          Telephone: (312) 222-0800

                                          *Of Counsel*:
                                          Lawrence R. Robins
                                          -Email:  larry.robins@finnegan.com
                                          Christopher S. Schultz
                                          -Email:  christopher.schultz@finnegan.com
                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                          55 Cambridge Parkway
                                          Cambridge, Massachusetts 02142
                                          Telephone:  (617) 452-1600
                                          Facsimile:  (617) 452-1666

                                          Scott A. Herbst
                                          -Email:   scott.herbst@finnegan.com
                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                          3300 Hillview Avenue
                                          Palo Alto, California 94304
                                          Telephone:  (650) 849-6600
                                          Facsimile:  (650) 849-6666

                                          E. Robert Yoches
                                          -Email:  bob.yoches@finnegan.com
                                          James T. Wilson
                                          -Email:  james.wilson@finnegan.com
                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                          901 New York Avenue, N.W.
                                          Washington, D.C.  20001-4413
                                          Telephone: (202) 408-4000
                                          Facsimile: (202) 408-440

                                          Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Arthur Gollwitzer, an attorney of record in this matter, certify that on August 30, 2007,

I caused a copy of the following document:

### ANSWER OF DEFENDANT STARENT NETWORKS, CORP.

to be filed by electronic filing (ECF), which provides service to the following counsel of

record by email:

> Joanna M. Esty
> VENABLE LLP
> 2049 Century Park East, Suite 2100
> Los Angeles, CA 90067
>
> Marina N. Saito
> LOEB & LOEB LLP
> 321 N. Clark Street, Suite 2300
> Chicago, IL 60610

> */s/ Arthur Gollwitzer III*
> Arthur Gollwitzer III (06225038)