**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UTSTARCOM, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 07 CV 2582 |
| | ) Hon. George W. Lindberg |
| vs. | ) Magistrate Judge Nan R. Nolan |
| | ) |
| | ) |
| STARENT NETWORKS, CORP., | ) |
| | ) **Jury Trial Demanded** |
| Defendant. | ) |
| | ) |

**DEFENDANT STARENT'S ANSWER AND COUNTERCLAIMS
TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendant Starent Networks, Corp. ("Starent" or "Defendant") hereby answers and asserts affirmative defenses and counterclaims to the Third Amended Complaint ("the Complaint") filed by Plaintiff UTStarcom, Inc. ("UTSI") on May 30, 2008, as follows:

**PARTIES**

*1.       On June 10, 1991, UTStarcom was incorporated under the laws of the State of Delaware.  UTStarcom began its business in Alameda, California.  Its corporate headquarters is located at 1275 Harbor Bay Parkway, Alameda, California 94502.*

1.       Defendant admits that UTSI regards its corporate headquarters as being located at 1275 Harbor Bay Parkway, Alameda, California 94502.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph, and therefore denies them.

1

*2.      On May 23, 2003, UTStarcom acquired substantially all of the assets of 3Com Corporation's ("3Com") CommWorks business unit (the "Business Unit").  UTStarcom continues to own and operate the Business Unit.*

2.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*3.      With the acquisition of the Business Unit, UTStarcom acquired the personnel and facilities for the Business Unit, including, but not limited to:  engineering; research and development; manufacturing; marketing; sales; and administration.  All of these personnel and facilities for the Business Unit, with the exception of certain personnel, were, and are still, located at 3800 Golf Road, Rolling Meadows, Illinois 60008, as well as other locations.  Until recently, UTStarcom operated one of its locations at 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210-1402 which, upon information and belief, was first opened and utilized by the Business Unit on or about September 27, 1996.*

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*4.      The majority of UTStarcom's operations that are related to the acquired Business Unit have operated and continue to operate today from UTStarcom's location in Rolling Meadows, Illinois, and at other locations.  UTStarcom has hundreds of employees and others involved in its Business Unit operations in Illinois and at other locations.*

4.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*5.	Upon information and belief, on or about August 21, 2000, Starent was incorporated under the laws of the State of Delaware.  Starent is doing business and has places of business located in Schaumburg, Illinois and at 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210-1402, the latter of which is a "shared" office space and the identical Overland Park, Kansas business address for UTStarcom (**i.e.,** each business rents an office(s) within the office space).  Starent is now unlawfully making, using and selling products and services that unlawfully compete with UTStarcom, as more fully described herein.*

5.	Defendant admits that Starent is a corporation organized and existing under the laws of the State of Delaware and that Starent is doing business and has places of business in Schaumburg, Illinois and at 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210-1402, which it shares with other tenants.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding UTStarcom's business address set forth in this Paragraph and, therefore, denies them.  Defendant denies the remaining allegations of this Paragraph.

*6.	Defendant John Capener was a manager in marketing for the Business Unit. On January 1, 2001, Mr. Capener left the employ of the Business Unit.  Upon information and belief, Mr. Capener became the Director of Marketing for Starent, and is now the Vice President of Marketing Communications for Starent.  Upon information and belief, Mr. Capener resides at 84 Towne Hill Road, Haverhill, Massachusetts 01835.*

6.	The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*7.* *Defendant Noel Charath was a product manager for the Business Unit. On January 2, 2002, Mr. Charath left the employ of the Business Unit. Upon information and belief, Mr. Charath immediately began his employment at Starent as a Systems Engineer, and subsequently became a Senior Systems Engineer for Starent. Upon information and belief, Mr. Charath is now the Director of Solutions Development at Starent. Upon information and belief, Mr. Charath previously resided in Cook County, Illinois, and presently resides at 139 Orchard Hill Road, Haverhill, Massachusetts 01835.*

7.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*8.* *Defendant Dale Eliason was a product manager for the wireless group of the Business Unit. On November 25, 2000, Mr. Eliason left the employ of the Business Unit. Upon information and belief, Mr. Eliason subsequently became a product manager for Starent. Upon information and belief, Mr. Eliason previously resided in Lake County, Illinois, and presently resides at 1511 Deer Point Way, Reston, Virginia 20194.*

8.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and threrefore denies the allegations of this Paragraph.

4

*9.      Defendant Brian Espy was North American Director of Sales for Wireless Products for the Business Unit, and was based in UTStarcom's Overland Park, Kansas sales office.  On January 2, 2003, Mr. Espy left the employ of the Business Unit.  Upon information and belief, on January 6, 2003, Mr. Espy began his employment at Starent and was based at Starent's Overland Park, Kansas sales office.  Upon information and belief, Mr. Espy was initially employed by Starent as a sales director and subsequently became the Vice President of Sales for Starent.  Upon information and belief, Mr. Espy left Starent and subsequently became Vice President of Sales at mFormation Technologies, Inc., which is located at 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210-1402.  Upon information and belief, Mr. Espy left mFormation Technologies, Inc. in the spring of 2008 and is now the Regional Vice President of Sales for Nexius, Inc.  Upon information and belief, Mr. Epsy resides at 5212 West 166th Street, Stilwell, Kansas 66085.*

9.      The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*10.      Defendant Troy Gabel was a network consultant for the Business Unit, and was based at UTStarcom's Overland Park, Kansas sales office.  On November 25, 2002, Mr. Gabel left the employ of the Business Unit.  Upon information and belief, on December 9, 2002, Mr. Gabel joined the sales force at Starent, and was based at Starent's Overland Park, Kansas sales office.  Upon information and belief, Mr. Gabel resides at 14609 Windsor Street, Overland Park, Kansas 66224.*

10.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*11.     Defendant Matthew Harper was a senior consulting engineer for the Business Unit, an inventor and architect for the hardware and software platforms for the products of the Business Unit, and was well-versed in the relevant products and services of the Business Unit.  On October 6, 2000, Mr. Harper left the employ of the Business Unit.  Upon information and belief, on October 16, 2000, Mr. Harper began his employment with Starent and is now a software architect for Starent, engineering the Starent's products' hardware and software platforms.  Upon information and belief, Mr. Harper previously resided in Cook County and DuPage County, Illinois.  Upon information and belief, Mr. Harper presently resides at 22 Ticklefancy Lane, Salem, New Hampshire 03079.*

11.     Defendant admits that Mr. Harper was an engineer for the Business Unit, that he began his employment with Starent on October 13, 2000, that he is a software architect for Starent and is involved in engineering Starent's products' hardware and software platforms, that he used to reside in Cook County and DuPage County, Illinois, and that he now resides at 22 Ticklefancy Lane in Salem, New Hampshire, 03079.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph, and therefore denies them.

*12.     Defendant Todd Kelly was first a network consultant and later a manager for global strategic technology for wireless products for the Business Unit.  On November 11,*

6

*2002, Mr. Kelly left the employ of the Business Unit. Upon information and belief, on*

*November 14, 2002, Mr. Kelly began his employment with Starent. Upon information and*

*belief, Mr. Kelly previously was the Director of Network Consulting and Sales and Support ,*

*and subsequently the Vice President of Network Consulting and Sales Support, North*

*America, for Starent. Upon information and belief, Mr. Kelly left Starent in the spring of*

*2008 and is now employed by Nexius, Inc. Upon information and belief, Mr. Kelly resides in*

*Cook County, Illinois.*

12.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*13.     Defendant Nick Lopez was a senior product manager for the Business Unit. On*

*February 16, 2001, Mr. Lopez left the employ of the Business Unit. Upon information and*

*belief, on February 19, 2001, Mr. Lopez began his employment with Starent. Upon*

*information and belief, Mr. Lopez previously was the Director of Business Development for*

*Starent and is presently the Vice President of Strategic Alliances for Starent. Upon*

*information and belief, Mr. Lopez resides in Cook County, Illinois.*

13.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

7

*14.      Defendant Sanil Puthiyandyil was a Principal Engineer for the Business Unit.*
*Upon information and belief, Mr. Puthiyandyil left the Business Unit and, on April 23, 2001,*
*began his employment with Starent.  Upon information and belief, Mr. Puthiyandyil is the*
*Director of the Protocol Development Group for Starent.  Upon information and belief, Mr.*
*Puthiyandyil previously resided in Mount Prospect, Illinois and presently resides at 10*
*Georgetown Drive, Nashua, New Hampshire 03062.*

14.      Defendant admits that Mr. Puthiyandyil was an engineer for the Business Unit,
that he left the Business Unit and began employment with Starent.  Defendant admits that he
previously resided in Mount Prospect, Illinois and presently resides at 10 Georgetown Drive,
Nashua, New Hampshire 03062.  Defendant is without knowledge or information sufficient to
form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore,
denies them.

*15.      Defendant Shaji Radhakrishnan was an engineer for the Business Unit, and*
*was part of the remote access server group.  Upon information and belief, Mr. Radhakrishnan*
*left the Business Unit in or around April 2001 to work for Starent. Upon information and*
*belief, Mr. Radhakrishnan is presently the Engineering Manager for Security*
*Protocol/Products at Starent.  Upon information and belief, Mr. Radhakrishnan resides in*
*Cook County, Illinois.*

15.      Defendant admits that Mr. Radhakrishnan was an engineer for the Business Unit,
and is employed by Starent as an engineer.  Defendant denies the remaining allegations set forth
in this Paragraph.

**16.** *Defendant Rajesh Ramankutty was a lead/senior software engineer for the Business Unit. Upon information and belief, Mr. Ramankutty left the Business Unit and, on July 16, 2003, began his employment with Starent. Upon information and belief, Mr. Ramankutty is presently employed by Starent as a Consulting Software Engineer. Upon information and belief, Mr. Ramankutty previously resided in Mount Prospect, Illinois and also at 6 Newcastle Drive, #6, Nashua, New Hampshire 03060.*

16.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**17.** *Defendant Charles Rygula was a technical writer and then became a product manager for the Business Unit. On February 7, 2001, Mr. Rygula left the employ of the Business Unit. Upon information and belief, on December 17, 2001, Mr. Rygula began his employment with Starent. Upon information and belief, Mr. Rygula is presently employed by Starent as the Director of Technical Communications. Upon information and belief, Mr. Rygula previously resided in Cook County, Illinois.*

17.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**18.** *Defendant Paul Shieh was a principal architect and product manager for the products and services of the Business Unit. On August 24, 2000, Mr. Shieh left the employ of*

9

*the Business Unit. Upon information and belief, on August 28, 2000, Mr. Shieh began his*

*employment with Starent. Upon information and belief, Mr. Shieh began his employment at*

*Starent as the Director of Technology and is presently the Vice President of Technology and*

*General Manager for Greater China.*

18.     The subject matter of this Paragraph is moot because it relates solely to Counts

that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is

required, and therefore denies the allegations of this Paragraph.

*19.     Defendant Gennady Sirota was Director of Wireless Product Management for*

*the Business Unit.  On November 9, 2000, Mr. Sirota left the employ of the Business Unit.*

*Upon information and belief, on November 13, 2000, Mr. Sirota began his employment with*

*Starent, and is presently the Vice President of Product Management for Starent.  Upon*

*information and belief, Mr. Sirota resides in Lake County, Illinois.*

19.     The subject matter of this Paragraph is moot because it relates solely to Counts

that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is

required, and therefore denies the allegations of this Paragraph.

*20.     Defendant Amit Tiwari was Director of Product Management for the Business*

*Unit.  On October 12, 2000, Mr. Tiwari left the employ of the Business Unit.  Upon*

*information and belief, Mr. Tiwari immediately began working for Starent, where he first was*

*the Director of Systems Engineering for Worldwide Accounts.  Upon information and belief,*

*Mr. Tiwari is presently the Vice President of Solutions Development for Starent. Upon information and belief, Mr. Tiwari resides in Lake County, Illinois.*

20.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*21.     Defendant James Wininger was the head of proposals for the Business Unit. On June 12, 2001, Mr. Wininger left the employ of the Business Unit. Upon information and belief, on June 18, 2001, Mr. Wininger began his employment with Starent as Manager of Professional Services, where he was responsible for responding to requests for proposals. Upon information and belief, Mr. Wininger resides at 14223 Redmond Drive, Huntly, Illinois 60142.*

21.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*22.     Defendant Mark Zarich worked as a sales representative for the Business Unit, and was based at UTStarcom's Overland Park, Kansas sales office. On November 25, 2002, Mr. Zarich left the employ of the Business Unit. Upon information and belief, on December 9, 2002, Mr. Zarich joined the sales force at Starent, and was based at Starent's Overland Park, Kansas sales office. Upon information and belief, Mr. Zarich is now Director of Sales*

11

*at Vornado Air LLC, located at 415 E. 13th Street, Andover, Kansas 67002. Upon information*

*and belief, Mr. Zarich resides at 232 South Duffers Court, Andover, Kansas 67211.*

22.     The subject matter of this Paragraph is moot because it relates solely to Counts

that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is

required, and therefore denies the allegations of this Paragraph.

*23.     Upon information and belief, each of the above-named defendants, in engaging*

*in the acts alleged herein, was the agent or alter ego of each of the other defendants and was*

*acting in the course and scope of such agency and with the permission, consent and*

*ratification of their co-defendants.*

23.     Defendant denies the allegations set forth in this Paragraph as they apply to

Starent. The remaining subject matter of this Paragraph is moot because it relates solely to

Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).

Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the

reaminder of this Paragraph is required, and therefore denies the allegations set forth in the

reaminder of this Paragraph.

*24.     Upon information and belief, each of the Former Employee Defendants, as a*

*result of their prior relationships with the Business Unit, had access to and did acquire*

*technical and non-technical information, computer code and architecture, data, formulas,*

*patterns, programs, compilations, devices, methods, techniques, drawings, processes, concepts,*

*implementations, financial data, copyright material, sales and marketing data, documents and*

12

*files, customer and supplier lists, and other trade secret information, as further defined and*

*explained within this Complaint, that belongs to the Business Unit.*

24.     The subject matter of this Paragraph is moot because it relates solely to Counts

that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is

required, and therefore denies the allegations of this Paragraph.

## JURISDICTION AND VENUE

*25.     This is an action for patent infringement arising under the patent laws of the*

*United States, 35 U.S.C. §§ 1, et seq., and copyright infringement arising under the copyright*

*laws of the United States, 17 U.S.C. §§ 101, et seq.*

25.     Defendant admits that, with respect to Counts II-V, the Complaint includes

allegations of patent infringement and, as such, is an action for patent infringement arising under

Title 35 of the United States Code.  Defendant denies that Count VII arises under the patent laws.

The subject matter of the remaining allegations of this Paragraph is moot because it relates solely

to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).

Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the

remainder of this Paragraph is required, and therefore denies the allegations set forth in the

remainder of this Paragraph.

*26.     This Court has jurisdiction over the subject matter of this action pursuant to 28*

*U.S.C. §§ 1331 and 1338(a).  Upon information and belief, Starent is subject to the*

*jurisdiction of this Court because is transacts business and/or has transacted business within*

*this judicial district and is subject to the jurisdiction of this Court, having conducted business,*

*made, operated, used, offered for sale, and/or sold in this judicial district and elsewhere in the*

*United States its products, particularly the ST16 intelligent mobile gateway and ST40*

*multimedia code platform (the "ST Products"). Upon information and belief, the Former*

*Employee Defendants are subject to the jurisdiction of this Court, because they either reside in*

*this judicial district and/or have committed acts which have injured UTStarcom within this*

*judicial district.*

26. Defendant admits that this Court has jurisdiction over the subject matter of Counts

II-V pursuant to 28 U.S.C. §§ 1331 and 1338(a), and that Starent is subject to the jurisdiction of

this Court for this action. The subject matter of the remaining allegations of this Paragraph is

moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated

July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the

truth or accuracy of the remainder of this Paragraph is required, and therefore denies the

allegations set forth in the remainder of this Paragraph.

*27. This Court has supplemental jurisdiction over the non-federal question claims*

*pursuant to 28 U.S.C. § 1367 because they arise out of the same facts and acts as those giving*

*rise to the federal claims.*

27. Defendant denies the allegations in this Paragraph with regard to Count VII. With

regard to Counts I, VI, and VIII-XV, the subject matter of this Paragraph is moot because it

relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008

(D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy

of the remainder of this Paragraph is required, and therefore denies the allegations set forth in the

remainder of this Paragraph.

*28.    This Court has venue pursuant to 28 U.S.C. §§ 1391 and/or 1400(b).*

28.    Defendant admits this Court has venue pursuant to 28 U.S.C. §§ 1391 and/or 1400(b) with respect to Counts II-V and VII.  With regard to Counts I, VI, and VIII-XV, the subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the remainder of this Paragraph is required, and therefore denies the allegations set forth in the remainder of this Paragraph.

## FACTUAL BACKGROUND

### UTStarcom's Business Activities

*29.    UTStarcom specializes in data communications products, including networking products and wireless products.  UTStarcom acquired the Business Unit, including the products, services and intellectual property.  These products, services and intellectual property relate to telecommunications.  The product lines of the Business Unit consist of equipment (including hardware and software) that facilitates the wireless transmission of data including, for example, products allowing a cellular telephone user to access the Internet or check e-mail through use of the user's cellular telephone.*

29.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*30.    UTStarcom's products and services are used in the provision of wireless communication technology including:  second generation ("2G") technology; second and a half generation ("2.5G") technology; third generation ("3G") technology; and other wireless telephone technology.*

15

30.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*31.     UTStarcom's products and services that are so used in 2G, 2.5G and 3G wireless communication technology include, but are not limited to: CDMA2000 1xRTT data services; Evolution-Data Optimized ("EV-DO") services; and virtual private network ("VPN") services. CDMA2000 1xRTT is a protocol of mobile telecommunications standards that use a multiple access scheme for digital radio in order to send voice, data, and signaling data (such as a dialed telephone number) between mobile phone and cell sites. EV-DO is typically used by numerous cellular telephone service providers to provide broadband-speed Internet access to their users. A VPN is a private communications network that is often used by companies to communicate over a public network, such as the Internet.*

31.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph related to UTStarcom's products and services, and, therefore, denies them. Defendant admits the remaining allegations set forth in this Paragraph.

*32.     UTStarcom is also involved with products and services for authentication, authorization and accounting ("AAA") servers. "Authentication" refers to the confirmation that a user who is requesting services is a valid user of the network services requested. "Authorization" refers to the granting of specific types of service (including "no service") to users based on their authentication, what services they are requesting, and the current system state. "Accounting" refers to the tracking of the consumption of network resources by users.*

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph related to UTStarcom's product and services, and, therefore, denies them.  Defendant admits the remaining allegations set forth in this Paragraph.

### The Business Unit's Creation, Core Data Products And Services, And Its Development And Protection Of Its Confidential And Proprietary Information

*33.     U.S. Robotics began the Business Unit at least as early as March 1, 1996, by conducting research into and developing wireless telephone technology, including the wireless telephone technology that became known as 2G, 2.5G, 3G, and other wireless telephone technology.  The technology, infrastructure, support, know-how, and developed products and services that comprises the Business Unit was developed over a substantial period of time, and continues to be developed, at a cost of hundreds of million dollars.  In connection with the development of the Business Unit's technology, infrastructure, support, know-how, and developed products and services, the Business Unit developed substantial confidential and proprietary trade secret information.*

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.  Moreover, the subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required.

*34.     The Business Unit's confidential and proprietary trade secret information can be summarized as including its:  confidential policies and procedures created pursuant to*

*industrial and commercial standards set forth by the International Organization for Standardization ("ISO"); confidential project documents; confidential design and engineering documents; confidential cost information; confidential data provided to customers; policies and procedures for employee access to the Business Unit's intranet; engineering/functional compliance documents; and regulatory compliance standards and test results (collectively, "Confidential and Proprietary Information"). The documents containing the Confidential and Proprietary Information were and are maintained by the Business Unit in the strictest confidence.*

34. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*35.    The Business Unit's developed products include, but are not limited to, the Total Control 1000 ("TC1000"), Total Control 800 ("TC800"), Total Control 2000 ("TC2000"), Total Control 200 ("TC200"), Total Control 3000 ("TC3000"), and Total Control 3100 ("TC3100"); (collectively, the "Core Data Products"). These Core Data Products were created, developed, marketed and sold using the Business Unit's Confidential and Proprietary Information.*

35. The subject matter of the remaining part of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the

remaining part of this Paragraph is required, and therefore denies the allegations set forth in the remaining part of this Paragraph.

*36.     While developed and created using the Business Unit's Confidential and Proprietary Information, the Business Unit's Core Data Products were and are developed to conform to and work in coordination with industry-wide accepted platforms and standards, including but not limited to:  ASN Gateway products; Foreign Agent Control Node ("FACN") products; Gateway GPRS Support Node ("GGSN") products; Home Agent Control Node ("HACN") products; Home Agent ("HA") products; Interworking Function ("IWF") products; Interworking Unit ("IWU") products; and Packet Data Serving Node ("PDSN") products (collectively, the "Network Products").*

36.     The allegations related to "the Business Unit's Confidential and Proprietary Information" in this Paragraph are moot because they relate solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this subject matter is required, and denies the related allegations.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the remaining part of this Paragraph, and therefore denies them.

*37.     The Network Products provide the Business Unit's customers and their customers' end-users with much of the infrastructure that transmits data from a cellular telephone or other wireless device, such as a personal digital assistant, to the Internet or e-mail server.  The Network Products enable cellular telephone users to access the Internet or check e-mail through use of their cellular telephone, among other things.  The Network*

19

*Products have been, and continue to be, purchased by cellular service providers including, but not limited to, Sprint Nextel ("Sprint") and Verizon Wireless ("Verizon"), and subsequently used by these companies' end users (*i.e., *consumers).*

37.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*38.     The Business Unit was and continues to be highly successful, developing its proprietary products and services, including products based upon:  the above-described wireless telephone technology and Network Products and services; its confidential and proprietary information; and its protected and protectable intellectual property.*

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

**3Com's Acquisition Of The Business Unit And Subsequent Activities**

*39.     On or about June 11, 1997, 3Com acquired U.S. Robotics.  3Com's acquisition of U.S. Robotics included the Business Unit, which consisted and consists of Core Data Products and services that are created, protected, marketed and sold by the Business Unit; and the Confidential and Proprietary Information (collectively, the "Acquired Property").*

39.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*40.     Subsequent to 3Com's purchase of U.S. Robotics, employees working for the Business Unit, pursuant to the on-going research and development of the wireless telephone technology, filed many patent applications with the United States Patent & Trademark Office*

20

*("PTO") in support of its Network Products. The patents include, but are not limited to, the following:*

*a.        On January 27, 2004, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/491,751, entitled "Routing method for mobile wireless nodes having overlapping internet protocol home addresses," which is enumerated as U.S. Patent No. 6,684,256 ("the '256 patent"). A true and correct copy of the '256 patent is attached hereto as Exhibit A;*

*b.        On July 20, 2004, the PTO duly and legally issued U.S. Patent Appl. Serial No. 10/346,897, entitled "Virtual home agent service using software-replicated home agents," which is enumerated as U.S. Patent No. 6,765,900 ("the '900 patent"). A true and correct copy of the '900 patent is attached hereto as Exhibit B;*

*c.        On November 8, 2005, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/515,560, entitled "Applying modified mobile internet protocol (IP) in a wireless mobile data network interface," which is enumerated as U.S. Patent No. 6,963,582 ("the '582 patent"). A true and correct copy of the '582 patent is attached hereto as Exhibit C; and*

*d.        On February 6, 2007, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/920,980, entitled "PDSN fast tunnel lookup," which is enumerated as U.S. Patent No. 7,173,905 ("the '905 patent"). A true and correct copy of the '905 patent is attached hereto as Exhibit D.*

40.        Defendant admits that U.S. Patent No. 6,684,256, entitled "Routing method for mobile wireless nodes having overlapping internet protocol home addresses," U.S. Patent No. 6,765,900, entitled "Virtual home agent service using software-replicated home agents," U.S. Patent No. 6,963,582, entitled "Applying modified mobile internet protocol (IP) in a wireless

mobile data network interface," and U.S. Patent No. 7,173,905, entitled "PDSN fast tunnel lookup," are attached to the Complaint as Exhibits A-D. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph, and therefore denies them.

*41.* *UTStarcom, through the acquisition of the Business Unit, is the assignee and owner of, and currently owns all right, title and interest in the '256, '900, '582, and '905 patents.*

41. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*42.* *The Business Unit provided and provides initial and on-going services in support of the Network Products. The Business Unit has been a leading provider of its Network Products and initial and on-going services since its inception.*

42. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph, and therefore denies them.

*The Business Unit's Proprietary Documents And Proprietary Computer Code*

*43.* *The Business Unit's Confidential and Proprietary Information contains: technical, sales, marketing, and other documents and files (the "Proprietary Documents"); and computer code and architecture including, but not limited to, source code, object code and assembly code (the "Proprietary Computer Code").*

43. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*44.* *UTStarcom has complied in all respects with the provisions of the copyright laws of the United States and has secured the exclusive rights and privileges in and to the copyrights in certain Proprietary Documents and Proprietary Computer Code.*

44. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*45.* *On November 14, 2007, UTStarcom obtained United States copyright registrations for each of the following Proprietary Documents with the United States Copyright Office:*

*a.* *1X-Data Network Solution: System Requirement Documentation, U.S. Copyright Reg. No. TXu 1-569-583;*

*b.* *3G 3.0 PDSN Performance, Preliminary Report # l, U.S. Copyright Reg. No. TXu 1-569-585;*

*c.* *3G 3.0 PDSN Performance, Preliminary Report # 2, U.S. Copyright Reg. No. TXu 1-569-625;*

*d.* *3G PDSN Performance in 3G Networks, Report # 1, U.S. Copyright Reg. No. TXu 1-569-624;*

*e.* *3G PDSN Performance, Report # 2, U.S. Copyright Reg. No. TXu 1-569-616;*

*f.* *3G PDSN Performance, Report # 3, U.S. Copyright Reg. No. TXu 1-569-617;*

*g.* *3G PDSN Performance, Report # 4, , U.S. Copyright Reg. No. TXu 1-569-621;*

23

h. *3G PDSN Performance, Report # 5, U.S. Copyright Reg. No. TXu 1-569-623;*

i. *Feature Functional Document: Common Element Manager (CEM) Total Control, 3G Data Network Solution, Wireless 3G Release 3.0, U.S. Copyright Reg. No. TXu 1-569-602;*

j. *Foreign Agent Control Node Technical White Paper, U.S. Copyright Reg. No. TXu 1-569-615;*

k. *Managing the CommWorks Wireless System with CommWorks Common Element Manager, U.S. Copyright Reg. No. TXu 1-569-614;*

l. *Project Concept Document: CommWorks 5000 3G Wireless Adapter R1, U.S. Copyright Reg. No. TXu 1-569-582;*

m. *PDSN SOFTWARE REQUIREMENTS SPECIFICATION, Revision 1.1, U.S. Copyright Reg. No. TXu 1-569-587;*

n. *Product Requirements Definition: CommWorks 4302 Foreign Agent Control Node (FACN), 3G Data Network Solution, U.S. Copyright Reg. No. TXu 1-569-589;*

o. *Product Requirements Definition: SBR/AWE version 1.6, 3G v.2.0, U.S. Copyright Reg. No. TXu 1-569-591;*

p. *Product Requirements Definition: Total Control 1000 Packet Data Serving Node (PDSN), 3G Data Network Solution, U.S. Copyright Reg. No. TXu 1-569-593;*

q. *Product Requirements Definition: Total Control Manager for 3G, PDSN Manager, AAA Server, 3G Data Core Network Management, U.S. Copyright Reg. No. TXu 1-569-594;*

r. *Product Requirements Definition: Total Control, CommWorks 3G Data Network Solution, Wireless 3G Release 2.0, Version 1.0, U.S. Copyright Reg. No. TXu 1-569-595;*

s. *System Functional Specification: 3G Packet Data Serving Node, Revision 1.3, U.S. Copyright Reg. No. TXu 1-569-597;*

t. *Software Functional Specification: Common Element Manager Technology Project, Revision 1.12, U.S. Copyright Reg. No. TXu 1-569-586;*

24

u.     *STG Performance Report for 3G 3.0 PDSN, U.S. Copyright Reg. No. TXu 1-569-626; and*

v.     *Total Control 1000 Enhanced Data System: Management MIB Reference, U.S. Copyright Reg. No. TXu 1-569-578.*

45.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*46.     On November 14, 2007, UTStarcom obtained U.S. copyright registrations for the following Proprietary Computer Code with the United States Copyright Office:*

a.     *AAA INTERFACE MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-630;*

b.     *CALL CONTROL MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-631;*

c.     *FACN MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-654;*

d.     *HA IP ROUTING MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-657;*

e.     *HA MOBILE IP AND HACN INTERFACE MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-656;*

f.     *HA MOBILE IP MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-639;*

g.     *HACN FUNCTION MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-655;*

h.     *MIB DEFINITIONS CALL-INITIATION PROCESS, U.S. Copyright Reg. No. TXu 1-569-580;*

i.     *PDSN – FACN INTERFACE MIB DEFINITION FROM THE PDSN, U.S. Copyright Reg. No. TXu 1-569-664;*

j. *PDSN FOREIGN AGENT MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-663;*

k. *PDSN IP ROUTING MIB DEFINITION, U.S. Copyright Reg. No. TXu 1-569-660;*

1. *USR_IP MIB, U.S. Copyright Reg. No. TXu 1-569-641;*

m. *USR-FA-MIB DEFINITIONS, U.S. Copyright Reg. No. TXu 1-569-658;*

n. *USR-FCNI-MIB DEFINITIONS, U.S. Copyright Reg. No. TXu 1-569-662;*

o. *USR-USER-MAN-MIB DEFINITIONS, U.S. Copyright Reg. No. TXu 1-569-627; and*

p. *USR-VHA-MIB DEFINITIONS, U.S. Copyright Reg. No. TXu 1-569-659.*

46. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**The Business Unit's Protection Of Confidential And Proprietary Information**

*47. The Business Unit instituted Confidential and Proprietary Information protection policies (the "Policies"). The Policies were historically instituted and have been continuously followed to ensure that access to the Confidential and Proprietary Information is limited, and its confidentiality is protected and maintained because of its substantial value.*

47. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

26

**48.** *As a condition of employment with the Business Unit, all employees are required to sign agreement(s) that contain non-disclosure and non-solicitation provisions. Upon information and belief, each of the Former Employee Defendants signed one or more of the following agreements: an employee agreement (the "Employee Agreement"); a conflicts, confidential information and assignment of inventions agreement (the "Confidential Agreement"); and the propriety information and assignment of inventions agreement (the "Assignment Agreement") (collectively, the "Employment Agreements").*

48. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**49.** *Among other things, the provisions within the Employment Agreements: (a) prohibit current and former employees from disclosing any Confidential and Proprietary Information to any outside party; (b) require employees, upon their resignation or termination, to return all Business Unit materials in their possession; (c) require employees to disclose and assign all intellectual property they develop during, through or as a result of their employment with the Business Unit; (d) preclude the solicitation or encouragement of the solicitation of Business Unit employees during, and for one calendar year preceding, their disassociation from the Business Unit; and (e) require employees to avoid and disclose actual or potential conflicts.*

49. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly,

Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*50.      The Employee Agreement and/or the Confidential Agreement contain additional terms prohibiting employees who signed these agreements from soliciting or encouraging the solicitation of the Business Unit's current or past customers for a period of six (6) months following the employees' resignation or termination from the Business Unit. The Employment Agreements provided for the assignment of the Employment Agreements to UTStarcom, with the acquisition of the Business Unit. The Employment Agreements were so assigned.*

50.      The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*51.      The employees of the Business Unit had and have restricted access to Confidential and Proprietary Information. Such access was and is determined on a primarily need-to-know basis. To effect the restricted access, the Business Unit provides electronic key cards and multiple layers of computer passwords.*

51.      The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*52.    The Business Unit has provided:  brochures describing its policies to all new employees; company-wide intranet access to these brochures; and copies of its Policies to all employees.  The Business Unit has carefully kept its Confidential and Proprietary Information confidential, and has policed and enforced its rights in its Confidential and Proprietary Information.*

52.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*Starent's Unauthorized Acquisition Of The Business Unit's Confidential And Proprietary Information And Its Protected And Protectable Intellectual Property*

*53.    Upon information and belief, in 2003, Starent began to sell the ST Products, which continue to be the only products Starent offers for sale.  Upon information and belief, the ST Products were launched using a significant portion of the Business Unit's Confidential and Proprietary Information.  Starent did not independently develop, but instead wrongfully acquired, the Business Unit's Confidential and Proprietary Information to expedite the launch of the ST Products.*

53.    Defendant admits that it developed the ST Products and that it sells the ST Products, but denies the remaining allegations of this Paragraph.  Moreover, other than the first sentence, the subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).

*54.    Upon information and belief, Starent has further engaged in raiding key personnel and employees of the Business Unit.  Beginning at least as early as August 28, 2000*

29

*and continuing to at least as late as October 4, 2004, Starent engaged in a deliberate and*

*calculated pattern and practice of soliciting and hiring the Business Unit's key personnel,*

*notwithstanding the Employment Agreements.*

54. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*55. Upon information and belief, Starent has solicited and/or hired at least twenty-*

*five (25) key personnel of the Business Unit including, but not limited to the: principal, lead*

*and senior engineers for the Business Unit; principal architect and product manager of the*

*Network Products for the Business Unit; manager of global strategic technology for the*

*Business Unit; Director of Wireless Product Management for the Business Unit; Director of*

*Product Management for the Business Unit; network consultants and product managers for*

*the Business Unit; the head of proposals and technical writers for the Business Unit;*

*marketing and public relations managers for the Business Unit; General Manager of Latin*

*America for the Business Unit; and the North American Director of Sales for Wireless*

*Products for the Business Unit, as well as senior, key members of this individual's sales staff.*

55. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*56.     Upon information and belief, Starent hired these key personnel and placed them into the identical or substantially similar positions as they had with the Business Unit, with the calculated knowledge and strategic desire that the Former Employee Defendants would perform the same or substantially similar job duties.  Upon information and belief, the Former Employee Defendants have performed and/or continue to perform the identical or substantial similar job duties for Starent that they performed for the Business Unit.*

56.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*57.     Each of the Former Employee Defendants, during the course and scope of their employment with the Business Unit, was a key employee who had secure access to and acquired valuable Confidential and Proprietary Information.  Each of the Former Employee Defendants acquired Confidential and Proprietary Information pertaining to the Business Unit's Network Products, engineering, research and development, manufacturing, marketing, and sales of the Network Products.*

57.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*58.     Upon information and belief, Starent carried out its corporate raid of Business Unit employees for the improper strategic purpose of utilizing the Business Unit's*

31

Confidential and Proprietary Information in order to, **inter alia**, *significantly accelerate the normal product development life cycle, develop its ST Products and its sales and marketing channels. Upon information and belief, each of the Former Employee Defendants provided Starent with the Confidential and Proprietary Information they acquired without permission from the Business Unit, as follows.*

a. *Defendants Noel Charath, Dale Eliason, Nick Lopez, Charles Rygula, Paul Shieh, Gennady Sirota, and Amit Tiwari were employed as,* **inter alia**, *product managers for the Business Unit (collectively, "Product Managers"). The Product Manager's job involved meeting with customers and potential customers to present them with information regarding the Core Data Products. All Product Managers "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of life. The Product Managers had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information including, but not limited to its: confidential policies and procedures created pursuant to the ISO standards; confidential project documents; confidential design and engineering documents; confidential cost information; confidential data provided to customers; policies and procedures for employee access to the Business Unit's intranet; engineering/functional compliance documents; and regulatory compliance standards and test results.*

b. *Defendants Matthew Harper, Sanil Puthiyandyil, Shaji Radhakrishnan, and Rajesh Ramankutty were employed as,* **inter alia**, *engineers for the Business Unit (collectively, "Engineers"). The Engineers had access to and, upon information and belief,*

*misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information including, but not limited to its: confidential project documents; confidential design and engineering documents; confidential cost information; confidential data provided to customers; policies and procedures for employee access to the Business Unit's intranet; and engineering/functional compliance documents; and regulatory compliance standards and test results.*

*c.* *Defendant Troy Gabel was employed as,* **inter alia***, a Network Consultant for the Business Unit. Mr. Gabel's position as a Network Consultants' position with the Business Unit was both technical-based and sales-based. His role was to support the sales team, to expand contractual relationships with existing clients, including but not limited to Sprint and Verizon, and to answer technical questions. For instance,* **inter alia***, Mr. Gabel was informed and had confidential access to not only of what the Business Unit's products could do, but also of what they could not do, and what features were* **not** *being planned. Mr. Gabel had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information. Upon information and belief, Starent, utilizing the Business Unit's Confidential and Proprietary Information, could and did focus its product development efforts accordingly.*

*d.* *Defendants Brian Espy and Mark Zarich were employed as,* **inter alia***, salesmen, for the Business Unit (collectively, "Salesmen"). As part of their position, the Salesmen had detailed knowledge of product development and implementation of product features, customers that were being targeted by the Business Unit (and* **how** *these customers were being targeted), pricing structures and product capabilities, performance and*

*weaknesses. The Salesmen had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information including, but not limited to, its: confidential policies and procedures created pursuant to the ISO standards; confidential design and engineering documents; confidential cost information; confidential data provided to customers; and policies and procedures for employee access to the Business Unit's intranet.*

      *e.*      *Defendants John Capener and James Wininger were employed as,* **inter alia***, marketing personnel, for the Business Unit (collectively, "Marketing Personnel"). The Marketing Personnel were responsible for marketing the Core Data Products. The Marketing Personnel had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information including, but not limited to, its: confidential policies and procedures created pursuant to the ISO standards; confidential cost information; confidential data provided to customers; as well as product service information, details, features and product performance data.*

      *f.*      *Defendant Todd Kelly was employed as,* **inter alia***, a Network Consultant for the Business Unit. As described above, the role of a Network Consultant was to support the sales team, to expand contractual relationships with existing clients, including but not limited to Sprint and Verizon, and to answer technical questions. For instance,* **inter alia***, Mr. Kelly was informed and had confidential access to not only of what the Business Unit's products could do, but also of what they could not do, and what features were* **not** *being planned. Defendant Kelly had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary*

34

*Information including, but not limited to, all of the Confidential and Proprietary Information misappropriated, improperly acquired and fraudulently used by all of the Product Managers, Engineers, Salesmen, Marketing Personnel, and Defendant Espy.*

> *g.     Defendant Starent had access to and, upon information and belief, misappropriated, improperly acquired and fraudulently used, the Business Unit's Confidential and Proprietary Information including, but not limited to, all of the Confidential and Proprietary Information misappropriated, improperly acquired and fraudulently used by all of the Product Managers, Engineers, Salesmen, Marketing Personnel, and Defendants Espy and Kelly.*

58.     Defendant denies the allegations related to Mr. Harper, Mr. Puthiyandyil, and Mr. Radhakrishnan.  The remaining subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the remainder of this Paragraph is required, and therefore denies the alleagations in the remainder of this Paragraph.

> *59.     Upon information and belief, the Former Employee Defendants' work at and on behalf of Starent, a direct competitor to the Business Unit, is substantially similar to their duties at the Business Unit as described above, and the Former Employee Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Business Unit's Confidential and Proprietary Information in performing their duties for Starent.*

59.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

### *Starent's Use And Unauthorized Public Disclosure Of The Business Unit's Confidential And Proprietary Information And Its Protected And Protectable Intellectual Property*

*60.     Starent has engaged in a pattern of improperly and unlawfully acquiring, copying, using and/or publicly disclosing the Business Unit's Confidential and Proprietary Information.*

60.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*61.     The invention disclosed in Starent's patent application entitled "Managing resources for IP networks," U.S. Patent Appl. Serial No. 10/679,938, filed October 6, 2003 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/416,151, filed October 4, 2002), and published as U.S. Patent Appl. Pub. No. 2004/0250159 on December 9, 2004 ("Starent's 2004/0250159 application"), is owned by UTStarcom.  This invention was co-invented by Defendant Harper and other Business Unit employees while they were employees of the Business Unit, and is taught by UTStarcom's implementation of software replication in UTStarcom's patent, U.S. Patent No. 6,560,217 ("the '217 patent"), which was co-invented by Defendant Harper.*

61.    Defendant admits that it filed a patent application entitled "Managing resources for IP networking," which was given U.S. Patent Appl. Serial No. 10/679,938 on October 6, 2003 (which claimed priority to U.S. Provisional Patent Appl. Serial No. 60/416,151, filed October 4, 2002), and which was published as U.S. Patent Appl. Pub. No. 2004/0250159 on December 9, 2004, and denies the remaining allegations in this Paragraph.

*62.    The invention disclosed in Starent's patent application entitled "Method and systems for providing improved handoffs in a wireless communication system," U.S. Patent Appl. Serial No. 11/893,846, filed July 19, 2004 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/488,152, filed on July 17, 2003), and published as U.S. Patent Appl. Pub. No. 2005/0025132 on February 3, 2005 ("Starent's 2005/0025132 application"), is owned by UTStarcom.  This invention was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by UTStarcom's implementation of handoffs, which was previously patented in UTStarcom's patent, U.S. Patent No. 7,154,868 ("the '868 patent").*

62.    Defendant admits that it filed a patent application entitled "Methods and systems for providing improved handoffs in a wireless communication system," which was given U.S. Patent Appl. Serial No. 11/893,846 on July 19, 2004 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/488,152, filed on July 17, 2003), and which was published as U.S. Patent Appl. Pub. No. 2005/0025132 on February 3, 2005, and denies the remaining allegations in this Paragraph.

*63.    The invention disclosed in Starent's patent application entitled "Reduced data session establishment time in CDMA-2000 networks," U.S. Patent Appl. Serial No.*

*10/797, 646, filed March 10, 2004 and published as U.S. Patent Appl. Pub. No. 2005/0204043*

*on September 15, 2005 ("Starent's 2005/0204043 application"), is owned by UTStarcom. This*

*invention was co-invented by Defendants Harper and Puthiyandyil and another former*

*employee of the Business Unit while these individuals were employees of the Business Unit,*

*and was implemented by UTStarcom in its Core Data Products more than one year prior to*

*Starent's filing of this patent application.*

63.     Defendant admits that it filed a patent application entitled "Reduced data session

establishment time in CDMA-2000 networks," which was given U.S. Patent Appl. Serial No.

10/797,646 on March 10, 2004, and which was published as U.S. Patent Appl. Pub. No.

2005/0204043 on September 15, 2005.  Defendant is without knowledge or information

sufficient to form a belief as to what was implemented in UTStarcom's Core Data Products and

thereofore denies that allegation.  Defendant denies the remaining allegations in this Paragraph.

*64.     The invention disclosed in Starent's patent application entitled "Method and*

*system for traffic redirection for prepaid subscriber sessions in a wireless network," U.S.*

*Patent Appl. Serial No. 11/439,077, filed May 23, 2006 (claiming priority to U.S. Provisional*

*Patent Appl. Serial No. 60/683,580, filed on May 23, 2005), and published as U.S. Patent Appl.*

*Pub. No. 2006/0276170 on December 7, 2006 ("Starent's 2006/0276170 application"), is*

*owned by UTStarcom.  This invention was invented by Defendant Radhakrishnan and another*

*former employee of the Business Unit while they were employees of the Business Unit, and is*

*taught by UTStarcom's implementation of prepaid subscriber services, which was previously*

*patented in UTStarcom's patent, U.S. Patent No. 6,829,473 ("the '473 patent") and related*

*patent applications.*

64.     Defendant admits that it filed a patent application entitled "Method and system for traffic redirection for prepaid subscriber sessions in a wireless network," which was given U.S. Patent Appl. Serial No. 11/439,077 on May 23, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/683,580, filed on May 23, 2005), and which was published as U.S. Patent Appl. Pub. No. 2006/0276170 on December 7, 2006, and denies the remaining allegations in this Paragraph.

*65.     The invention disclosed in Starent's patent application entitled "Quality of service update procedure," U.S. Patent Appl. Serial No. 11/500,552, filed August 7, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/705,983, filed on August 5, 2005; U.S. Provisional Patent Appl. Serial No. 60/707,363, filed on August 11, 2005; and U.S. Provisional Patent Appl. Serial No. 60/740,733, filed on November 30, 2005), and published as U.S. Patent Appl. Pub. No. 2007/0036078 on February 15, 2007 ("Starent's 2007/0036078 application"), is owned by UTStarcom.  This invention was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by UTStarcom's implementation of quality of service, which was previously patented in UTStarcom's patent, U.S. Patent No. 6,940,836 ("the '836 patent").*

65.     Defendant admits that it filed a patent application entitled "Quality of service update procedure," which was given U.S. Patent Appl. Serial No. 11/500,552 on August 7, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/705,983, filed on August 5, 2005; U.S. Provisional Patent Appl. Serial No. 60/707,363, filed on August 11, 2005; and U.S. Provisional Patent Appl. Serial No. 60/740,733, filed on November 30, 2005), and which was

published as U.S. Patent Appl. Pub. No. 2007/0036078 on February 15, 2007, and denies the remaining allegations in this Paragraph.

*66.* *The invention disclosed in Starent's patent application entitled "System and method for a policy enforcement point interface," U.S. Patent Appl. Serial No. 11/584,450, filed October 20, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/729,415, filed on October 20, 2005; U.S. Provisional Patent Appl. Serial No. 60/777,960, filed on March 1, 2006; and U.S. Provisional Patent Appl. Serial No. 60/780,023, filed on March 6, 2006), and published as U.S. Patent Appl. Pub. No. 2007/0094712 on April 26, 2007 ("Starent's 2007/0094712 application"), is owned by UTStarcom. This invention was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by Confidential and Proprietary Information contained in UTStarcom internal document(s) that, upon information and belief, were improperly acquired by the Former Employee Defendants.*

66. Defendant admits that it filed a patent application entitled "System and method for a policy enforcement point interface," which was given U.S. Patent Appl. Serial No. 11/584,450 on October 20, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/729,415, filed on October 20, 2005; U.S. Provisional Patent Appl. Serial No. 60/777,960, filed on March 1, 2006; and U.S. Provisional Patent Appl. Serial No. 60/780,023, filed on March 6, 2006), and which was published as U.S. Patent Appl. Pub. No. 2007/0094712 on April 26, 2007. Defendant is without knowledge or information sufficient to form a belief as to what is contained in UTStarcom internal documents and therefore denies that allegation. Defendant denies the remaining allegations in this Paragraph.

40

*67.     The invention disclosed in Starent's patent application "Internet protocol tunneling on a mobile network," U.S. Patent Appl. Serial No. 11/598,875, filed November 14, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/738,503, filed on November 21, 2005), and published as U.S. Patent Appl. Pub. No. 2007/0189219 on August 16, 2007 ("Starent's 2007/0189219 application"), is owned by UTStarcom.  This invention was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by UTStarcom's implementation of facilitating use of multiple communication protocols, for which UTStarcom has filed a patent application entitled "Method to facilitate use of multiple communication protocols in a communication network," U.S. Patent Appl. Serial No. 10/997,502, filed November 24, 2004, and published as U.S. Patent Appl. Pub. No. 2006/0168110 on July 27, 2006 ("UTStarcom's 2006/0168110 application").*

67.     Defendant admits that it filed a patent application entitled "Internet protocol tunneling on a mobile network," which was given U.S. Patent Appl. Serial No. 11/598,875 on November 14, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/738,503, filed on November 21, 2005), and which was published as U.S. Patent Appl. Pub. No. 2007/0189219 on August 16, 2007, and denies the remaining allegations in this Paragraph.

*68.     The invention disclosed in Starent's patent, U.S. Patent No. 6,985,464, entitled "Managing packet data interconnections in mobile communications" ("Starent's '464 patent") is owned by UTStarcom.  Upon information and belief, the invention was invented by Defendant Harper and another former employee of the Business Unit while they were employees of the Business Unit, and is taught by UTStarcom's implementation of managing*

41

*foreign agent selections that was previously patented in the '905 patent. Starent filed its patent about six weeks after UTStarcom. In addition, upon information and belief, Defendant Sirota was the Business Unit employee that signed off on the invention disclosure document for the Business Unit.*

68. Defendant admits that it is the assignee of U.S. Patent No. 6,985,464, entitled "Managing packet data interconnections in mobile communications." Defendant is without knowledge or information sufficient to form a belief as to who signed Business Unit invention disclosures and therefore denies that allegation. Defendant denies the remaining allegations in this Paragraph.

### Starent And The Former Employee Defendants Have Conspired Together To The Significant Financial Detriment Of UTStarcom

*69. Upon information and belief, the Former Employee Defendants who were working for the Business Unit after accepting employment at Starent, or who had been solicited by or were communicating with Starent while continuing to work for the Business Unit, intercepted from Vivo (the largest mobile telecommunications operator in the Southern Hemisphere and an existing customer of the Business Unit) at least one significant request for proposal meant for the Business Unit. Because of the interception, the Business Unit did not receive the request for proposal for its representatives. These actions were taken by these Former Employee Defendants without the knowledge, approval or permission of the Business Unit, and denied the Business Unit an opportunity to enter into additional agreements with an existing client, all to the significant detriment of the Business Unit. Upon information and belief, such activity was conducted under the direction, knowledge and approval of Starent.*

42

69.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*70.     Upon information and belief, the Former Employee Defendants who left the Business Unit to work for Starent (or who were intending to work for Starent but had not yet left) solicited other key employees to seek employment at Starent, in direct violation of their fully executed Employment Agreements. Upon information and belief, such activity was conducted under the direction, knowledge and approval of Starent, for the purpose of both weakening the Business Unit and furthering Starent's improper scheme to acquire the Business Unit's employees, customers, and Confidential and Proprietary Information.*

70.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*71.     Upon information and belief, Starent: (a) was and continues to be aware that the Former Employee Defendants acquired the Confidential and Proprietary Information without permission; (b) had actual and/or constructive knowledge of the unauthorized acquisition of the Confidential and Proprietary Information by its new employees; (c) in certain circumstances directed and encouraged the unauthorized acquisition of the Confidential and Proprietary Information by its new employees, which occurred during the Former Employee Defendants' employment at Starent; (d) subsequently utilized and/or*

43

*publicly disclosed, and continues to utilize and/or publicly disclose, the Confidential and Proprietary Information in the engineering, research and development, manufacturing, marketing, and sales of its ST Products; (e) intercepted at least one "request for business proposal" that was delivered to the Business Unit and instead responded to the proposal itself, without the knowledge of the Business Unit; and (f) encouraged or ratified the Business Unit employees' activities in directly soliciting other key employees of the Business Unit to join Starent, in direct violation of the Employment Agreements.*

71. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*72. The above mentioned activities were carried out by Starent and the Former Employee Defendants without the knowledge, permission or consent of UTStarcom, and to the significant detriment of UTStarcom which, upon information and belief, is believed to be in the hundreds of millions of dollars.*

72. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

## COUNT I
## VIOLATION OF THE ILLINOIS TRADE SECRET ACT
### (Against All Defendants)

73. *UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 72 of this Complaint.*

74. *The Confidential and Proprietary Information described herein constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1* **et seq.** *("the Act").*

75. *The Defendants removed, used and/or disclosed the trade secret information that belongs to UTStarcom. The Defendants' actions, as alleged herein, constitute misappropriation of UTStarcom's trade secrets under the Act. The Defendants' actions, as alleged herein, also constitute a continuing threat of misappropriation.*

76. *Starent has used and/or is likely to use trade secret information that belongs to UTStarcom. Starent's actions constitute a misappropriation of trade secrets under the Act. Starent's actions, as alleged herein, also constitute a continuing threat of misappropriation.*

77. *Section 3 of the Act authorizes the issuance of an injunction in the event of an actual or threatened misappropriation.*

78. *Defendants' actions with respect to UTStarcom's trade secrets have been and will continue to be willful.*

79. *Defendants' continued breaches of the Act have caused and will continue to cause UTStarcom to lose business and the goodwill, reputation, and confidence of the 3G wireless industry, for which UTStarcom cannot be compensated by money damages, thereby causing UTStarcom to sustain irreparable harm.*

73-79. Count I has been dismissed by Judge Lindberg's Order dated July 23, 2008

(D.I. 158), and the subject matter of Paragraphs 73-79 is moot.  Accordingly, Defendant asserts

that no investigation regarding the truth or accuracy of these Paragraphs is required, and

therefore denies the allegations of these Paragraphs.

**COUNT II**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,684,256**
**(Against Starent)**

*80.        UTStarcom repeats and incorporates by this reference all of the allegations in*

*Paragraphs 1 through 79 of this Complaint.*

80.        Defendant repeats its answers to Paragraphs 1 through 79 as if fully set forth

herein.

*81.        The '256 patent is entitled to a presumption of validity.*

81.        Defendant denies the allegations in this Paragraph.

*82.        Upon information and belief, Starent has infringed and is still infringing,*

*and/or is actively inducing or contributing to the infringement by Starent's customers in*

*violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '256 patent by*

*making, using, operating, offering for sale and/or selling within the United States the ST*

*Products which infringe one or more claims of the '256 patent.*

82.        Defendant denies the allegations in this Paragraph.

*83.        Upon information and belief, Starent's infringement of the '256 patent has*

*been and continues to be willful and deliberate and with the full knowledge of the '256 patent.*

83.        Defendant denies the allegations in this Paragraph.

*84.        Upon information and belief, Starent will continue its infringing activities*

*unless enjoined by the Court.*

84.     Defendant denies the allegations in this Paragraph.

*85.     As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

85.     Defendant denies the allegations in this Paragraph.

**COUNT III**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,765,900**
**(Against Starent)**

*86.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 79 of this Complaint.*

86.     Defendant repeats its answers to Paragraphs 1 through 79 as if fully set forth herein.

*87.     The '900 patent is entitled to a presumption of validity.*

87.     Defendant denies the allegations in this Paragraph.

*88.     Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '900 patent by making, using, operating, offering for sale and/or selling within the United States the ST products which infringe one or more claims of the '900 patent.*

88.     Defendant denies the allegations in this Paragraph.

*89.     Upon information and belief, Starent's infringement of the '900 patent has been and continues to be willful and deliberate and with the full knowledge of the '900 patent.*

89.     Defendant denies the allegations in this Paragraph.

47

*90.     Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

90.     Defendant denies the allegations in this Paragraph.

*91.     As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

91.     Defendant denies the allegations in this Paragraph.

<u>**COUNT IV**</u>
<u>**PATENT INFRINGEMENT**</u>
<u>**U.S. PATENT NO. 6,963,582**</u>
**(Again Starent)**

*92.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 79 of this Complaint.*

92.     Defendant repeats its answers to Paragraphs 1 through 79 as if fully set forth herein.

*93.     The '582 patent is entitled to a presumption of validity. U.S. Patent No. 6,963,582*

93.     Defendant denies the allegations in this Paragraph.

*94.     Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '582 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '582 patent.*

94.     Defendant denies the allegations in this Paragraph.

48

*95.     Upon information and belief, Starent's infringement of the '582 patent has been and continues to be willful and deliberate and with the full knowledge of the '582 patent.*

95.     Defendant denies the allegations in this Paragraph.

*96.     Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

96.     Defendant denies the allegations in this Paragraph.

*97.     As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

97.     Defendant denies the allegations in this Paragraph.

**COUNT V**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 7,173,905**
**(Against Starent)**

*98.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 79 of this Complaint.*

98.     Defendant repeats its answers to Paragraphs 1 through 79 as if fully set forth herein.

*99.     The '905 patent is entitled to a presumption of validity.*

99.     Defendant denies the allegations in this Paragraph.

*100.     Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '905 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '905 patent.*

49

100.     Defendant denies the allegations in this Paragraph.

*101.     Upon information and belief, Starent's infringement of the '905 patent has been and continues to be willful and deliberate and with the full knowledge of the '905 patent.*

101.     Defendant denies the allegations in this Paragraph.

*102.     Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

102.     Defendant denies the allegations in this Paragraph.

*103.     As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

103.     Defendant denies the allegations in this Paragraph.

## COUNT VI
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS AND
## PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

*104.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 103 of this Complaint.*

*105.     Based upon UTStarcom's long-standing and well-established relationships with its customers and its prior dealings with those customers, UTStarcom had a reasonable expectation that its existing business relationships would continue, and that UTStarcom would enter into additional valid agreements and business arrangements with its existing customers.*

*106.     Defendants knew of UTStarcom's long-standing business relationships with its customers, and knew or should have known of UTStarcom's expectancy of entering into future agreements and business arrangements with them.*

50

*107.    Defendants intended to and did in fact interfere with UTStarcom's long-standing business relationships with its customers by, among other things, intercepting at least one significant request for proposal that was directed to the Business Unit from Vivo, the largest mobile telecommunications operator in the Southern Hemisphere (an existing customer of the Business Unit), and providing it to Starent, which previously did not have access to or knowledge of it.  Defendants did not advise the Business Unit of the request for proposal, and thus deprived UTStarcom of the opportunity to compete for the business and enter into a future business agreement with an existing Business Unit customer.*

*108.    By engaging in the actions alleged, Defendants intended to and did in fact prevent, without justification, UTStarcom's legitimate expectation that it would enter into additional agreements and/or business arrangements with at least one of its existing customers.*

*109.    Defendants' conduct was willful, wanton and reckless and undertaken with callous disregard and indifference to UTStarcom's relationships with its existing customers. Defendants calculated to harm UTStarcom's business and conceal their activities in order to increase the likelihood of damages to UTStarcom.*

*110.    UTStarcom has been damaged by Defendants' intentional interference with its existing business relationships and its prospective economic advantage.*

104-110.    Count VI has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 104-110 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

**COUNT VII**
**DECLARATIONS OF OWNERSHIP**
**(Against Starent)**

*111.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 103 of this Complaint.*

111.    Defendant repeats its answers to Paragraphs 1 through 103 as if fully set forth herein.

*112.    The invention disclosed in Starent's 2004/0250159 application was invented by Defendant Harper and other Business Unit employees while they were employees of the Business Unit, and is taught by UTStarcom's implementation of software replication in the '217 patent.*

112.    Defendant denies the allegations in this Paragraph.

*113.    To the extent that Starent's 2004/0250159 application contains any patentable inventions, such inventions were conceived while Defendant Harper was an employee of the Business Unit.*

113.    Defendant denies the allegations in this Paragraph.

*114.    Accordingly, all rights in Starent's 2004/0250159 application should be assigned to UTStarcom.*

114.    Defendant denies the allegations in this Paragraph.

*115.    The invention disclosed in Starent's 2005/0025132 application was invented by current and/or former employees of the Business Unit employees while they were employees of the Business Unit, and is taught by UTStarcom's implementation of handoffs, previously patented by UTStarcom in the '868 patent.*

115.    Defendant denies the allegations in this Paragraph.

**116.    Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2005/0025132 application.**

116.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**117.    Continued prosecution of Starent's 2005/0025132 application is likely to cause further disclosure of UTStarcom's trade secrets.**

117.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**118.    Accordingly, Starent should be enjoined from further prosecution of Starent's 2005/0025132 application and all rights therein should be assigned to UTStarcom.**

118.    Defendant denies the allegations in this Paragraph.

**119.    The invention disclosed in Starent's 2005/0204043 application was co-invented by Defendants Harper and Puthiyandyil and another former employee of the Business Unit while these individuals were employees of the Business Unit, and was implemented by UTStarcom in its Core Data Products more than one year prior to Starent's filing of this patent application.**

119.    Defendant denies that the invention claimed in Starent's 2005/0204043 application was invented by Mr. Harper, Mr. Puthiyandyil and another former employee of the Business Unit while these individuals were employees of the Business Unit. Defendant is without knowledge or information sufficient to form a belief as to what was implemented by UTStarcom in its Core Data Products and therefore denies those allegations.

**120.    Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2005/0204043 application.**

120.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**121.    Continued prosecution of Starent's 2005/0204043 application is likely to cause further disclosure of UTStarcom's trade secrets.**

121.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158). Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

**122.    Accordingly, Starent should be enjoined from further prosecution of Starent's 2205/0204043 application and all rights therein should be assigned to UTStarcom.**

122.    Defendant denies the allegations in this Paragraph.

**123.    The invention disclosed in Starent's 2006/0276170 application was invented by Defendant Radhakrishnan and another former employee of the Business Unit while they were**

54

*employees of the Business Unit, and is taught by UTStarcom's implementation of prepaid*

*subscriber services, which was previously patented by UTStarcom in the '473 patent and*

*related patent applications.*

123.    Defendant denies the allegations in this Paragraph.

*124.    To the extent that Starent's 2006/0276170 application contains any patentable*

*inventions, such inventions were conceived while Defendant Radhakrishnan was an employee*

*of the Business Unit.*

124.    Defendant denies the allegations in this Paragraph.

*125.    Accordingly, all rights in Starent's 2006/0276170 application should be*

*assigned to UTStarcom.*

125.    Defendant denies the allegations in this Paragraph.

*126.    The invention disclosed in Starent's 2007/0036078 application was invented by*

*current and/or former employee(s) of the Business Unit while they were employees of the*

*Business Unit, and is taught by UTStarcom's implementation of quality of service, which was*

*previously patented in the '836 patent.*

126.    Defendant denies that the allegations in this Paragraph.

*127.    To the extent that Starent's 2007/0036078 application contains any patentable*

*inventions, such inventions were conceived by current and/or former employee(s) of the*

*Business Unit while they were employees of the Business Unit.*

127.    Defendant denies the allegations in this Paragraph.

*128.    Accordingly, all rights in Starent's 2007/0036078 application should be*

*assigned to UTStarcom.*

55

128.     Defendant denies the allegations in this Paragraph.

*129.     The invention disclosed in Starent's 2007/0094712 application was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by Confidential and Proprietary Information contained in UTStarcom internal document(s) that, upon information and belief, were improperly acquired by the Former Employee Defendants.*

129.     Defendant denies that the invention claimed in Starent's 2007/0094712 application was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit.  The remaining subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the remainder of this Paragraph is required, and therefore denies the allegations of the remainder of this Paragraph.

*130.     Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2007/0094712 application.*

130.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*131.     Continued prosecution of Starent's 2007/0094712 application is likely to cause further disclosure of UTStarcom's trade secrets.*

56

131.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158).  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of this Paragraph is required, and therefore denies the allegations of this Paragraph.

*132.    Accordingly, Starent should be enjoined from further prosecution of Starent's 2007/0094712 application and all rights therein should be assigned to UTStarcom.*

132.    Defendant denies the allegations in this Paragraph.

*133.    The invention disclosed in Starent's 2007/0189219 application was invented by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit, and is taught by UTStarcom's implementation of facilitating use of multiple communication protocols, for which UTStarcom has filed the UTStarcom 2006/0168110 application.*

133.    Defendant denies the allegations in this Paragraph.

*134.    To the extent that Starent's 2007/0189219 application contains any patentable inventions, such inventions were conceived by current and/or former employee(s) of the Business Unit while they were employees of the Business Unit.*

134.    Defendant denies the allegations in this Paragraph.

*135.    Accordingly, all rights in Starent's 2007/0189219 application should be assigned to UTStarcom.*

135.    Defendant denies the allegations in this Paragraph.

*136.    The inventions disclosed in Starent's '464 patent were invented by Defendant Harper and another former employee of the Business Unit while they were employees of the*

*Business Unit, and is taught by UTStarcom's implementation of managing foreign agent*

*selections that was previously patented by UTStarcom in the '905 patent.*

136.     Defendant denies the allegations in this Paragraph.

*137.     To the extent that there are any patentable improvements in Starent's '464*

*patent, such patentable improvements were conceived and known to Defendant Harper while*

*he was employed by the Business Unit.*

137.     Defendant denies the allegations in this Paragraph.

*138.     Accordingly, all rights in Starent's '464 patent should be assigned to*

*UTStarcom.*

138.     Defendant denies the allegations in this Paragraph.

## COUNT VIII
## COPYRIGHT INFRINGEMENT
### (Against All Defendants)

*139.     UTStarcom repeats and incorporates by this reference all of the allegations in*

*Paragraphs 1 through 79 of this Complaint.*

*140.     Defendants have infringed and will continue to infringe UTStarcom's*

*copyrights in the Technical Documents identified in Paragraph nos. 1 through 79, above, by*

*copying them or allowing them to be copied for use by Starent and/or other third parties,*

*and/or to make derivative works for Starent and/or other third parties.*

*141.     Defendants have infringed and will continue to infringe UTStarcom's*

*copyrights in the Proprietary Computer Codes identified in Paragraph nos. 1 through 79,*

*above, by copying them or allowing them to be copied for use by Starent and/or other third*

*parties, and/or to make derivative works for Starent and/or other third parties.*

*142.* *As a direct and proximate result of Defendants' violations of UTStarcom's above-described copyrights, UTStarcom has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation and goodwill.*

*143.* *Pursuant to 17 U.S.C. § 502, UTStarcom is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from infringing UTStarcom's copyrights, which actions are causing and will continue to cause injuries for which UTStarcom has no adequate remedy at law.*

*144.* *UTStarcom is further entitled to recover from Defendants the damages it has sustained and will sustain, and any gains, profits or advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above.  At present, the amount of such damages, gains, profits and advantages cannot be ascertained fully by UTStarcom. Alternatively, pursuant to 17 U.S.C. § 504, UTStarcom is entitled to recover statutory damages for Defendants' willful acts of infringement alleged above.*

*145.* *UTStarcom is also entitled to recover from Defendants its attorneys' fees and costs of maintaining this action pursuant to 17 U.S.C. § 505.*

139-145.    Count VIII has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 139-145 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

**COUNT IX**
**BREACH OF THE RESTRICTIVE COVENANTS**
**CONCERNING CONFIDENTIAL INFORMATION**
**(Against The Former Employee Defendants)**

*146.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 145 of this Complaint.*

*147.    The Former Employee Defendants voluntarily executed valid and enforceable agreements prohibiting each of them, respectively, from, among other things, sharing or disclosing the Business Unit's Confidential and Proprietary Information and trade secrets to actual or potential competitors.*

*148.    The Former Employee Defendants had substantial knowledge concerning the development and operation of commercially valuable technologies, information concerning the*

*149.    Business Unit's key employees, information concerning the Business Unit's strategies, and plans.*

*150.    Without permission of the Business Unit, and for reasons contrary to the Business Unit's interest and well-being, the Former Employee Defendants shared and disclosed such Confidential and Proprietary Information and trade secrets to Starent.*

*151.    The actions by the Former Employee Defendants breached the Employment Agreements.*

*152.    As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

146-152.    Count IX has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 146-152 is moot. Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

## COUNT X
## BREACH OF THE RESTRICTIVE COVENANTS
## CONCERNING NON-SOLICITATION OF EMPLOYEES
### (Against The Former Employee Defendants)

*153.   UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 152 of this Complaint.*

*154.   The Former Employee Defendants voluntarily executed valid and enforceable Agreements prohibiting each of them, respectively, from, among other things, encouraging the solicitation and/or soliciting their co-workers at the Business Unit from leaving the Business Unit and/or joining a competitor.*

*155.   Both immediately preceding and following their departure from the Business Unit, the Former Employee Defendants provided information and assistance encouraging the solicitation of the Business Unit's key employees, including their identification, and the means by which to most successfully engage in the solicitations.  Further, in some, if not all cases, the Former Employee Defendants actually made direct solicitations of the Business Unit's key employees.*

*156.   By their actions described above, including but not limited to encouraging the key employees to leave Starent, identifying the key employees to solicit and informing Starent of the best means of conducting such solicitation, and by Defendants directly soliciting key employees of the Business Unit, the Former Employee Defendants breached the Employment Agreements.*

*157.   As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

153-157.     Count X has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 153-157 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

**COUNT XI**
**BREACH OF THE RESTRICTIVE COVENANTS**
**CONCERNING NON-SOLICITATION OF CLIENTS**
**(Against The Former Employee Defendants)**

*158.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 157 of this Complaint.*

*159.     The Former Employee Defendants who executed the Employee Agreement and/or the Confidential Agreement, voluntarily executed valid and enforceable contracts prohibiting each of them, respectively, from, among other things, encouraging the solicitation and/or soliciting the Business Unit's customers.*

*160.     Notwithstanding their contractual obligations, the Former Employee Defendants acquired and improperly disclosed the Business Unit's Confidential and Proprietary Information to allow Starent to identify and develop competitive products, and acquire key salespersons with relationships with customers, including Sprint and Verizon.*

*161.     Once Starent was empowered with the know how and means to solicit customers of the Business Unit, customers of the Business Unit, including Spring and Verizon, ceased their relationships with the Business Unit and commenced business relationships with Starent, who was now providing the same products or services previously provided by the Business Unit.*

*162.    The Former Employee Defendants' actions encouraged or were actual solicitations of the Business Unit's customers, including but not limited to Sprint and Verizon.*

*163.    By their actions described above, the Former Employee Defendants breached the Employee Agreement and/or the Confidential Agreement.*

*164.    As a result of the breach of the Employee Agreement and/or the Confidential Agreement, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

158-164.    Count XI has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 158-164 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

**COUNT XII**
**BREACH OF THE RESTRICTIVE COVENANTS**
**CONCERNING THE ASSIGNMENT OF INVENTIONS**
**(Against The Former Employee Defendants)**

*165.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 164 of this Complaint.*

*166.    Each of the Former Employee Defendants voluntarily executed valid and enforceable Agreements in which, among other things, each of them assigned, agreed to disclose, and further protect the Business Unit's property rights and interests in any and all inventions developed by, on behalf of, for the benefit of, and in the scope of their employment with the Business Unit.*

*167.    Starent's patents, set forth herein, are the result or product of inventions created by the Former Employee Defendants in whole or in part in the course and scope of the former employees' duties with/for the Business Unit.*

*168.     Contrary to the Employment Agreements, the Former Employee Defendants usurped inventions created in whole or in part at and for the Business Unit, for the benefit of their new employer, Starent.  Such actions breached the Employment Agreements.*

*169.     As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

165-169.     Count XII has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 165-169 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

**COUNT XIII**
**BREACH OF THE DUTY OF LOYALTY**
**(Against The Former Employee Defendants)**

*170.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 169 of this Complaint.*

*171.     While employed by the Business Unit, the Former Employee Defendants assisted Starent in raiding the Business Unit's key employees by, among other things, identifying key employees, assisting in their recruitment and solicitation, and failing to report and participating in and condoning the raiding of the Business Unit's key personnel.*

*172.     Further, on at least one occasion, a former employee, while still employed by the Business Unit, usurped a corporate opportunity for the Business Unit, misdirecting it to Starent and never advising the Business Unit of the opportunity, thus depriving UTStarcom of the opportunity to compete for the business and giving Starent an opportunity it otherwise would not have received.*

*173.     The Former Employee Defendants, as agents of and employees of the Business Unit, owed the Business Unit a duty of fidelity and loyalty.*

*174.     By their actions described herein, the Former Employee Defendants breached their duty of loyalty.*

*175.     As a result of the Former Employee Defendants' breach of their duty of loyalty to the Business Unit, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

170-175.  Count XIII has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 170-175 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

<u>**COUNT XIV**</u>
<u>**INDUCEMENT OF THE BREACH OF THE DUTY OF LOYALTY**</u>
**(Against Starent)**

*176.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 175 of this Complaint.*

*177.     At all times, Starent knew when the Former Employee Defendants were employed by the Business Unit, and that these Former Employee Defendants had and/or continued to have fiduciary duties and responsibilities to the Business Unit.*

*178.     In the course of hiring at least twenty-five (25) key employees of the Business Unit, and directing the actions of the Former Employee Defendants, and aware of the timing, sequence, and nature of the competitive activities going on while the Former Employee*

*Defendants remained employed with the Business Unit, Starent knew or should have known that such collusive activities were in violation of the former employees' duty of loyalty.*

*179.	Notwithstanding such knowledge, the Starent continued to induce, aid, abet, and encourage the Former Employee Defendants' actions, and continued to benefit from the Former Employee Defendants' actions.*

*180.	By encouraging, assisting and receiving the benefits of the Former Employee Defendants' breach of their duty of loyalty, Starent induced, aided and abetted and induced the breach of the duty of loyalty .*

*181.	As a result of Starent's inducement, aiding and abetting and encouragement of the Former Employee Defendants' breach of their duty of loyalty to the Business Unit, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

176-181.	Count XIV has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 176-181 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

## COUNT XV
## INDUCING THE BREACH OF THE EMPLOYMENT AGREEMENTS
### (Against Starent)

*182.	UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 181 of this Complaint.*

*183.	Upon information and belief in the course of hiring at least twenty-five (25) key employees of the Business Unit, Starent had actual or constructive knowledge of the restrictive covenants in the Employment Agreements.*

*184.    Notwithstanding such knowledge, Starent continued to induce, encourage, assist, incentivize and condone the breach of the Employment Agreements by the Former Employee Defendants.*

*185.    As such, Starent aided and abetted the breach of the Employment Agreements.*

*186.    As a result of the Starent's aiding and abetting the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

182-186.    Count XV has been dismissed by Judge Lindberg's Order dated July 23, 2008 (D.I. 158), and the subject matter of Paragraphs 182-186 is moot.  Accordingly, Defendant asserts that no investigation regarding the truth or accuracy of these Paragraphs is required, and therefore denies the allegations of these Paragraphs.

## Affirmative Defenses

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to Starent's right to plead additional defenses as discovery into the facts of the matter warrant, Starent hereby asserts the following affirmative defenses:

### First Affirmative Defense
### (NonInfringement of Asserted Patents)

1.    Starent has not infringed and is not infringing in any manner, for example, directly, contributorily, or by inducement, any claim of the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, or (iv) '905 patent, either literally or under the doctrine of equivalents.

### Second Affirmative Defense
### (Invalidity of Asserted Patents)

2.      The claims of the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and (iv) '905 patent are not valid because of failure to comply with one or more provisions of 35 U.S.C. §§ 102-112.

### Third Affirmative Defense
### (Unenforceability of Asserted Patents)

3.      The '256 patent is unenforceable due to inequitable conduct and unclean hands because, *inter alia*, individuals associated with the filing and/or prosecution of the patent application that matured into the '256 patent failed to disclose, with intent to deceive, certain material (noncumulative) prior art to the U.S. Patent and Trademark Office ("USPTO").  For example, upon information and belief, the Applicants and/or their patent counsel withheld from the USPTO, with deceptive intent, an Internet Engineering Task Force ("IETF") draft that they knew or should have known about.  *See* Perkins et al., *Private Addresses in Mobile IP*, June 25, 1999 (10 pages) (Exhibit A).  This uncited reference discloses foreign agents that route communications with a mobile node by referring to a list containing the home IP address for the mobile node and a home agent IP address associated with the mobile node so that packets are correctly routed despite the presence of mobile nodes having identical home IP addresses (thus dealing with the situation where "two mobile nodes . . . show up with the same identical private IP address.").  Accordingly, this reference and the information contained therein were material to the subject matter of the '256 patent.

### Fourth Affirmative Defense
### (Unenforceability of Asserted Patents)

4.      The '582 patent is unenforceable due to inequitable conduct and unclean hands because, *inter alia*, individuals associated with the filing and/or prosecution of the patent

68

application that matured into this patent intentionally withheld certain material (noncumulative) information from the USPTO so as to deceive the USPTO into issuing the '582 patent. More specifically, the Applicant and/or his patent counsel failed to disclose certain information concerning a proposed Radio-to-Packet ("RP") interface between a Radio Network Node ("RNN") and a Packet Data Serving Node ("PDSN"). *See, e.g.*, Xu et al., *Mobile IP Based Micro Mobility Management Protocol in the Third Generation Wireless Network*, October 1999 (11 pages) (Exhibit B). On information and belief, they did so with an intent to deceive the USPTO because those associated with the filing and/or prosecution of the application (the sole inventor, Yingchun Xu, is listed as an editor and co-author of the withheld reference) knew or should have known that a reasonable patent examiner would have considered the withheld information to be important in considering whether to allow the application to issue as a patent.

### Fifth Affirmative Defense
### (Unenforceability of Asserted Patents)

5.    The '905 patent is unenforceable due to inequitable conduct and unclean hands because, on information and belief, individuals associated with the filing and/or prosecution of the patent application that matured into this patent intentionally withheld certain material (noncumulative) information from the USPTO so as to deceive the USPTO into issuing the '905 patent. More specifically, on information and belief, the Applicants and/or their patent counsel withheld from the USPTO material Internet Engineering Task Force ("IETF") drafts concerning using Generic Routing Encapsulation (GRE) with a key to identify a tunnel used in the Mobile IP communications protocol. *See* Calhoun et al., *GRE Extensions*, September 2000 and Dommety, *Key and Sequence Number Extensions to GRE*, (June 2000) (Exhibit C). On information and belief, they did so with an intent to deceive the USPTO because those associated with the filing

69

and/or prosecution of the application (Yingchun Xu of 3Com Corporation, the assignee of the application that led to the '905 patent, was named as a co-author on that IETF draft) knew or should have known that a reasonable patent examiner would have considered the withheld information to be important in considering whether to allow the application to issue as a patent. Applicants and/or their patent counsel also failed to disclose the Verma patent (U.S. Patent No. 6,522,880 assigned to 3Com), which the USPTO used to reject the claims during prosecution of the '905 patent, which also demonstrated an intent to deceive the USPTO by withholding a material reference of which they clearly knew or should have known.

### Sixth Affirmative Defense
### (Unenforceability of Asserted Patents)

6.      UTSI appears to contend that its patents cover industry-standard implementations. The patents are unenforceable because UTSI misused these patents by failing to properly disclose these patents to the relevant standards bodies and/or failing to offer a license to these patents to Starent on reasonable, nondiscriminatory terms before filing this action.

### Seventh Affirmative Defense
### (Estoppel And Laches)

7.      One or more of Plaintiff's claims are barred by estoppel and laches.

8.      Any allegations in the Complaint that are not answered above are denied.  Starent reserves the right to supplement or amend this Answer, if necessary, as more information becomes known regarding UTSI's claims.

### COUNTERCLAIMS

Starent asserts the following counterclaims against UTSI:

70

1.     Starent realleges and incorporates by reference its responses and allegations as set forth herein in Paragraphs 1-8 above.

2.     Starent is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Tewksbury, Massachusetts.

3.     UTSI is a corporation organized and existing under the laws of the State of Delaware, having its corporate headquarters in Alameda, California.

## JURISDICTION

4.     This Court has subject matter jurisdiction over these counterclaims for relief pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a) under the Patent Laws of the United States (35 U.S.C. § 1 et seq.).

5.     On May 8, 2007, UTSI filed a civil action alleging, *inter alia,* patent infringement and violation of the Trade Secret Act of the State of Illinois by filing a Complaint in this Court against Starent.  Subsequently, UTSI filed an Amended Complaint on November 16, 2007; a Second Amended Complaint on December 12, 2007; and a Third Amended Complaint on May 30, 2008.  As a consequence, there remains an actual, justifiable controversy between Starent and UTSI concerning whether Starent infringes any valid and enforceable claims of the asserted patents (i.e., the '256 patent, '900 patent, '582 patent, and '905 patent).  This Court, therefore, also has subject matter jurisdiction over these counterclaims pursuant to the Federal Declaration Act (28 U.S.C. §§ 2201-2202).

6.     This Court also has personal jurisdiction over UTSI because UTSI has submitted itself to the jurisdiction of this Court.

## BACKGROUND

71

**UTSI's Prior Lawsuits Against Starent**

7.      This is the third lawsuit brought by UTSI against Starent since March 2004.  In

the first lawsuit, *UTStarcom, Inc. v. Starent Networks, Corp.*, C-04-01122 PVT (N.D. Cal.,

Mar. 22, 2004) ("*UTSI I*"), UTSI sued Starent for patent infringement and brought a motion for a

preliminary injunction in order to prevent "Starent's continued sale and use of its competitive

product."  (Exhibit D, p. 1.)  UTSI, which hoped to block Starent from doing business with

Sprint and Verizon, attempted to justify that motion by arguing that its PDSN business "might

not survive without having significant sales to at least one of the two 'Tier 1' carriers."  (*Id.*,

p. 13.)  The court, however, denied UTSI's motion for preliminary injunction on almost every

issue, including finding that UTSI was not likely to succeed on the merits of either infringement

or validity.

8.      Notwithstanding that ruling, and after the district court rejected most of UTSI's

claim construction positions, UTSI sent letters to Verizon and Sprint, falsely and misleadingly

stating that UTSI was in a "strong position going forward."  (Exhibit E.)

9.      At the time UTSI sent the letters, Starent had existing business relationships with

both Verizon and Sprint.  Upon information and belief, UTSI knew of those relationships with

Starent, and knew that Starent expected to continue to do business with those companies.  Upon

information and belief, UTSI's actions in sending those letters adversely affected the volume of

Starent's actual and expected business with both Verizon and Sprint.

10.     In light of the district court's claim constructions, Starent sought summary

judgment of noninfringement.  The Court ruled in Starent's favor for *three* separate reasons, i.e.,

that the accused ST16 product—one of the same products at issue in this suit—did not meet three

separate claim limitations. UTSI appealed the adverse judgment to the United States Court of Appeals for the Federal Circuit, but failed even to argue error in all the district court's bases for its finding. The Federal Circuit promptly issued a "summary affirmance" on April 6, 2007, just four days after hearing the oral argument. (Exhibit F.)

11.     While *UTSI I* was still pending, in February 2005, UTSI filed its second patent infringement lawsuit against Starent in the Northern District of California. *UTStarcom, Inc. v. Starent Networks, Corp.*, C-05-0710 (N.D. Cal. Feb. 16, 2005) ("*UTSI II*"). However, after nearly two years of litigation, and on the eve of the Court's claim construction hearing, on December 7, 2006, UTSI filed a reissue application in the USPTO in which it sought to correct various "errors in the original specification and drawings" that it admitted "confused the invention" and "render[ed] the patent indefinite because the written description conflict[ed] with the drawings." (Exhibit G, Preliminary Amendment to Reissue Application, pp. 1, 54, 70.) UTSI also requested a stay of the litigation pending the outcome of the reissue proceedings in the USPTO. The Court stayed *UTSI II* on January 29, 2007, and it remains stayed at this point in time. (Exhibit H.) Moreover, Plaintiff and the named inventors in *UTSI II* committed inequitable conduct in failing to disclose material prior art to the USPTO with an intent to deceive the Office when prosecuting the patent in suit, U.S. Patent No. 6,829,473. The USPTO recently granted Starent's *inter partes* reexamination request based on this same prior art. (Exhibit I.) Thus, on information and belief, Plaintiff knowingly asserted an unenforceable and indefinite patent against Starent in *UTSI II*.

12.     *UTSI I* and *UTSI II* were objectively baseless lawsuits that, on information and belief, were filed with malicious intent and without probable cause. More specifically, on

information and belief, those lawsuits were designed to intentionally and unjustifiably injure, and have so injured, Starent's reputation in the marketplace, and have intentionally and unjustifiably interfered directly with Starent's business by discouraging Starent's customers from doing business with Starent, including, for example, UTSI's making false and misleading statements to customers about the effect those lawsuits would have on Starent's business and customer relationships.

**Starent's Initial Public Offering**

13.     On March 6, 2007, Starent filed a registration statement with the U.S. Securities and Exchange Commission announcing its proposed initial public offering ("IPO") of stock. Shortly after the filing, on May 8, 2007, UTSI filed the instant lawsuit against Starent ("*UTSI III*").

14.     On information and belief, UTSI filed the *UTSI III* Complaint with malicious intent.  More specifically, on information and belief, UTSI's goal in filing the *UTSI III* lawsuit was to intentionally and unjustifiably derail the IPO and damage Starent's reputation immediately before its IPO in order to adversely affect Starent's stock price and thereby directly injure its financial condition.

15.     *UTSI III* is an objectively baseless lawsuit that was, on information and belief, filed without probable cause and designed only to further injure and that has further injured Starent's reputation in the marketplace, and that has further interfered directly with Starent's business by discouraging Starent's customers from doing business with Starent.  Indeed, numerous Counts of the Third Amended Complaint have already been dismissed by the Court because UTSI could not provide sufficiently detailed allegations to support the Counts.

74

## FIRST CLAIM FOR RELIEF
### (NonInfringement of The Asserted Patents)

16.      Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 15 of the Counterclaims.

17.      Starent seeks a declaration that it has not infringed and does not infringe in any manner, for example, contributorily or by inducement, any claim of the '256 patent, '900 patent, '582 patent, and '905 patent, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF
### (Invalidity of The Asserted Patents)

18.      Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 15 of the Counterclaims.

19.      Starent seeks a declaration that the claims of the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and (iv) '905 patent are not valid.

## THIRD CLAIM FOR RELIEF
### (Unenforceability of Asserted Patents)

20.      Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 15 of the Counterclaims.

21.      Starent seeks a declaration that the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and/or (iv) '905 patent are unenforceable for at least the reasons set forth in Paragraphs 2-6 above.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference With Prospective Economic Advantage)

22.      Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 15 of the Counterclaims.

23.     UTSI has tortiously interfered with Starent's prospective economic advantage by, *inter alia*, (i) contacting companies that UTSI knew or should have known were both existing and prospective customers of Starent's and misrepresenting the posture of the *UTSI I* litigation; and (ii) the filing, with malicious intent, of the *UTSI I*, *UTSI II*, and *UTSI III* litigations.

### FIFTH CLAIM FOR RELIEF
### (Malicious Prosecution)

24.     Starent hereby incorporates by reference the allegations set forth above in Paragraphs 1 through 15 of the Counterclaims.

25.     UTSI has engaged in malicious prosecution, evidenced by the filing of at least the *UTSI I* litigation.

### REQUEST FOR RELIEF

WHEREFORE, Starent respectfully requests that the Court enter judgment for Starent:

A.      Dismissing UTSI's Third Amended Complaint with prejudice;

B.      Declaring that Starent has not infringed and is not infringing, either directly, contributorily, or by inducement, any claim of the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and (iv) '905 patent, either literally or under the doctrine of equivalents.

C.      Declaring that the claims of the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and/or (iv) '905 patent are not valid for failing to comply with one or more provisions of 35 U.S.C. §§ 102-112.

D.      Declaring that the (i) '256 patent, (ii) '900 patent, (iii) '582 patent, and (iv) '905 patent are unenforceable;

E.      Declaring that this is an exceptional case under 35 U.S.C. § 285;

F.       Awarding Starent its costs, disbursements, and reasonable attorney fees (including

expert fees) incurred in this action;

G.       Awarding Starent actual damages;

H.       Awarding Starent punitive damages for all causes of action allowing such an

award; and

I.       Granting any and all further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Starent hereby demands a trial by jury in this action on all claims and issues triable before

a jury.

Dated:  August 7, 2008                    Respectfully submitted,

                                          /s/ Arthur Gollwitzer III
                                          Arthur Gollwitzer III (06225038)
                                          E-mail:  agollwitzer@michaelbest.com
                                          MICHAEL BEST & FRIEDRICH L.L.P.
                                          Two Prudential Plaza
                                          180 N. Stetson Avenue, Suite 2000
                                          Chicago, Illinois  60601
                                          Telephone: (312) 222-0800

                                          *Of Counsel*:
                                          Lawrence R. Robins (6183995)
                                          E-mail:  larry.robins@finnegan.com
                                          Christopher S. Schultz (*pro hac vice*)
                                          E-mail:  christopher.schultz@finnegan.com
                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                          55 Cambridge Parkway
                                          Cambridge, Massachusetts  02142
                                          Telephone:  (617) 452-1600
                                          Facsimile:  (617) 452-1666

                                          E. Robert Yoches (*pro hac vice*)
                                          E-mail:  bob.yoches@finnegan.com
                                          James T. Wilson (*pro hac vice*)
                                          -Email: james.wilson@finnegan.com
                                          FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, L.L.P.
                                          901 New York Avenue, N.W.
                                          Washington, D.C.  20001-4413
                                          Telephone: (202) 408-4000
                                          Facsimile: (202) 408-4400

                                          Attorneys for Defendants
                                          Starent Networks, Corp.

## CERTIFICATE OF SERVICE

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on August 7,

2008, I caused a copy of the following document:

### DEFENDANT STARENT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT

to be filed by electronic filing (ECF), which provides service to the following counsel of record

by e-mail:

> Joanna M. Esty
> Thomas J. Speiss
> Christopher L. Rudd
> Jackie M. Joseph
> VENABLE LLP
> 2049 Century Park East, Suite 2100
> Los Angeles, CA 90067
>
> Randolph Stuart Sergent
> VENABLE LLP
> 750 East Pratt Street
> Baltimore, MD 21202
> Telephone: (410) 528-2881
> Facsimile: (410)244-7742
>
> Marina N. Saito
> LOEB & LOEB LLP
> 321 N. Clark Street, Suite 2300
> Chicago, IL 60610
>
> Bernard J. Nussbaum
> SONNENSCHEIN NATH & ROSENTHAL LLP
> 7800 Sears Tower
> Chicago, IL 60606

/s/Arthur Gollwitzer III
Arthur Gollwitzer III (06225038)