**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UTSTARCOM, INC., | ) | Case No. 07 CV 2582 |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| vs. | ) | THE HONORABLE GEORGE W. |
| | ) | LINDBERG |
| STARENT NETWORKS, CORP.; JOHN | ) | |
| CAPENER; NOEL CHARATH; DALE | ) | MAGISTRATE JUDGE |
| ELIASON; BRIAN ESPY; TROY GABEL; | ) | NAN R. NOLAN |
| MATTHEW HARPER; TODD KELLY; NICK | ) | |
| LOPEZ; SANIL PUTHIYANDYIL; SHAJI | ) | |
| RADHAKRISHNAN; RAJESH | ) | |
| RAMANKUTTY; CHARLES RYGULA; | ) | |
| ANTHONY SCHOENER, PAUL SHIEH; | ) | |
| GENNADY SIROTA; AMIT TIWARI; | ) | |
| JAMES WININGER; AND MARK | ) | |
| ZARICH, | ) | |
| | ) | |
| Defendants. | | |

**ANSWER OF MARK ZARICH TO
FOURTH AMENDED COMPLAINT**

**CHRONOLOGY AND PARTIES**

**Chronology**

1.      *On August 11, 2000, Defendant Starent was incorporated in Delaware by Ashraf M. Dahod.*

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

2.      *Defendant Schoener was a co-founder of Starent.  Prior to his co-founding of Starent, Mr. Schoener was the Director of Software Development for 3Com Corporation ("3Com"), the predecessor-in-interest to UTStarcom, Inc. (UTStarcom purchased certain*

*assets of 3Com on May 23, 2003, known as the "carrier business unit" (the acronym refers to*

*the cellular telephone carrier companies serviced by this unit, such as Sprint and Verizon)).*

2.      Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*3.      Initially, Starent represented publicly that it was established to design, create*

*and commercialize products that did not currently exist - namely mobile gateway products*

*that would be able to help deliver both voice and data for mobile devices.   Starent*

*maintained that these new Starent mobile gateway products would be designed from the*

*ground up by Starent's employees, and when finalized and introduced into the market,*

*would ultimately compete with the products of 3Com's carrier business unit (3Com and*

*UTStarcom (who is 3Com's successor- in-interest to the carrier unit business) shall*

*hereafter be referred to as the "Carrier Unit").*

3.      Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*4.      Immediately upon founding Starent, Mr. Schoener, with knowledge that each*

*and every individual that worked at 3Com, including himself, had signed at least one*

*employment agreement with 3Com expressly prohibiting:  (a) the disclosure of 3Com's*

*confidential and proprietary trade secret information, (b) the solicitation of 3Com's clients*

*and potential clients, and (c) the solicitation of 3Com's employees to join a directly*

*competing business, began soliciting and/or recruiting for Starent certain 3Com employees*

*for positions similar to their positions at 3Com.*

4.      Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

**5.     *Thereafter, as each former 3Com employee joined Starent, that employee was encouraged and aided by Starent and other former 3Com employees in soliciting and recruiting additional 3Com employees to Starent – notwithstanding each former employee's contractual prohibition against doing so.***

5.     The subject matter of this paragraph is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed the relevant Counts.

**6.     *As a result of these soliciting and recruiting efforts, Defendants Shieh, Harper, Sirota, and Eliason – all of whom were employed by 3Com, and all of whom held key technical, sales, marketing and/or management positions for 3Com with the Carrier Unit –joined Starent.***

6.     Defendant admits that Defendants Shieh, Harper, Sirota, and Eliason joined Starent. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**7.     *From the beginning, Starent operated in "stealth" mode.  That is, Starent was secret about its efforts regarding its new product design and development, because, in truth, Starent was not designing its new product from the ground up as it has represented. Instead, Starent was using the detailed product information that was confidential and proprietary to 3Com as the basis for the design of its new product, having acquired this confidential and proprietary information illicitly from both the 3Com former employees and improper solicitation of 3Com's customers and third party vendors.***

7.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

***8.     As discussed more fully below and within the claims pled against them,
Starent and Messrs. Schoener, Shieh, Harper, Sirota, and Eliason had access to and did
misappropriate from the Carrier Unit at least five (5) years of wireless product development
proprietary information (contained in product development documents, technical
documents, and testing documents), and other technical confidential and proprietary trade
secret information in order to reduce the development cycle and time to market of Starent's
ST16 product.***

8.     Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.

***9.     Starent was also in "stealth" mode to avoid having 3Com detect that it was
wrongfully acquiring customer and market information from 3Com – through the 3Com
employees it was soliciting and hiring – to reduce Starent's market development and
penetration cycle for its new ST16 carrier product.  That is, Starent and Messrs. Schoener,
Shieh, Harper, Sirota, and Eliason, in the first few months of 2001 then solicited and
recruited Defendants Capener, Rygula, Lopez, Puthiyandyil, and, later in 2001, solicited
Defendants Wininger, Tiwari to join Starent.  Each of these individuals who worked for the
Carrier Unit and held key, decision-making positions for the Carrier Unit, joined Starent.***

9.     Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.

***10.     As discussed more fully below and within the claims pled against them,
Messers. Capener, Rygula, Lopez, Puthiyandyil, Wininger and Tiwari, had access to and did
wrongfully take proprietary and confidential product development information contained
in 3Com proprietary documents (i.e., Carrier Unit product development documents),***

*technical specification documents, and marketing documents, in order to assist Starent in the development, marketing and sale of Starent's ST16 product.*

10.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*11.     As a result of using 3Com's wrongfully acquired proprietary technical products designs and specifications, Starent was able to substantially reduce its product development cycle.  That is, as acknowledged by Starent employees, having 3Com's proprietary and confidential technical and product information allowed Starent to create an enhanced 3Com product – namely Starent's ST16, rather than having to design a ground up new product from scratch.*

11.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*12.     As a result of using 3Com's wrongfully acquired proprietary and confidential product, customer and marketing information, Starent was able to substantially reduce its market penetration cycle (i.e., the amount of time it takes to introduce a new product into the market, and obtain paying customers).  That is, as acknowledged by Starent employees, having 3Com's proprietary and confidential customer, market and vendor information gave Starent strategic customer, market and vendor information that would not have been available to any other start up company for a similar product, and allowed Starent immediate contact with 3Com's key customers, suppliers and vendors that would not have been known to Starent.  Starent used this information to immediately contact and solicit*

*3Com existing customers, suppliers and vendors beginning even before Starent had a final product design (much less an actual product) to offer for sale, and continuing thereafter.*

12.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*13.     Therefore, within fifteen (15) months of its founding, Starent, led by Messers. Dahod and Schoener, had solicited and recruited at least ten (10) key employees of the Carrier Unit, developed and modified the 3Com product to create a prototype ST16 product.*

13.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*14.     As a result of this activity, Starent was able to design an enhanced 3Com product, rather than a new product and have a working prototype by 2002, and Starent was able to offer it for sale to 3Com's customers beginning immediately – even though Starent did not have an actual product before 2002.*

14.     Defendant denies Starent designed an enhanced 3Com product.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*15.     However, even using 3Com's confidential and proprietary information as the basis for development, marketing and sale of the ST16, Starent was greedy and still not satisfied with the technical development progress of its product or of its efforts to get its product to market.*

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**16.     By 2002, Starent was still testing its supposedly enhanced product, still did not have any appreciable amount of market penetration, and had no sales in North America.**

16.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**17.     Recognizing that much of the technical and marketing information taken from 3Com by Starent employees (who were former 3Com employees) in 2001 was not updated, and recognizing that it was spending its investors' money without having a product to sell, Starent returned to secretly acquire more of 3Com's employees and propriety information.**

17.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**18.     As Starent knew, 3Com had continued to develop its Carrier Unit products, the PDSN (packet data serving node) products (TC1000 and TC2000) and related products, invested significant human resources during 2001 and on through 2002 to enhancing and improving its own product. Starent sought to acquire 3Com's updated technical, marketing and strategic proprietary and confidential information in order to update and finalize the technical design of its ST16 product, and to accelerate its market penetration.**

18.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**19.     To that end, later in 2002 and in early 2003, Starent and the above-mentioned Defendants continued to engage in their recruiting spree, in violation of the 3Com**

*agreements, and solicited and hired another round of former 3Com employees:  Defendants*
*Charath, Kelly, Gabel, Zarich, and Espy.  Each of these individuals who worked for the*
*Carrier Unit and held key positions for the Carrier Unit, joined Starent.  As discussed more*
*fully below and within the claims pled against them, Messrs. Charath, Kelly, Gabel, Zarich,*
*and Espy had access to and did (continue to) misappropriate the Carrier Unit's confidential*
*and proprietary trade secret information in order to assist in the development, marketing*
*and sale of Starent's ST16 carrier business product.  As a result of hiring the Carrier Unit*
*employees, Starent, with each new hire, received a misappropriated "fresh" set of the*
*Carrier Unit's most recently created trade secret information and ancillary documents.*

19.     Defendant admits that he was hired by Starent.  Defendant denies the remaining
allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information
sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants
and, therefore, denies them.

*20.     In addition, before he was even hired by Starent, Defendant Kelly, conspiring*
*with top Starent management, including, but not limited to, Pierre Kahhle, wrongfully*
*acquired thousands of updated proprietary and confidential 3Com documents that*
*described in detail product design, product specification, software and hardware, systems*
*interfaces and technical specifications.  These documents have been identified*
*(preliminarily) to the satisfaction of the Court in the identification of trade secrets approved*
*by the Special Master in this action.  Starent acquired these documents through the*
*wrongful taking from 3Com's systems (as also acknowledged by Order of the Special Master*
*for the purpose of granting access to Mr. Kelly's Starent hard drives), and then downloaded*
*all of these wrongfully acquired documents to Starent.*

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*21.     With this massive downloading of all of the strategic proprietary and confidential information necessary to update and create 3Com's products, and related to technical designs, productizing, testing, development, marketing, strategic planning, customer information, marketing, and sales, Starent was then in position to update its ST16 product, and strategically deploy its competitive product to 3Com customers.*

21.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*22.     Then, determining that there were still confidential and proprietary documents of 3Com that Starent would like to have, Starent and its key executives caused Defendant Espy, while still an employee of 3Com, to transmit confidential and proprietary 3Com documents to his private email address on a holiday when it was known that 3Com would be closed.  Thereafter, Mr. Espy, on information and belief, provided this additional information to Starent and then, immediately Mr. Espy terminated his employment with 3Com and began work at Starent.*

22.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*23.     Within days of leaving 3Com, Defendant Kelly and Starent solicited existing and strategic 3Com customers known to Mr. Kelly, and used the confidential and proprietary information acquired by Starent through Mr. Kelly to prepare technical and commercial presentations and proposals to these existing 3Com customers.*

23.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**24.     As the depositions of the defendants have confirmed, the confidential and proprietary information acquired from 3Com through Messrs. Kelly, Zarich, Rygula and others was and is in Starent's possession, and has been used by Starent and its employees.**

24.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and is without knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**25.     With the updated technical and marketing information acquired by Starent from 3Com, to further update Starent's prototype product (the ST16) using 3Com proprietary information, Starent needed to acquire the computer engineers and programmers that worked for 3Com.  It did so by soliciting and hiring Defendants Radhakrishnan and Ramankutty, who are engineers, in mid-2003.**

25.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**26.     Starent, a start-up company, because it had solicited the above named 3Com employees, all of whom which had access to and did misappropriate the Carrier Unit's confidential and proprietary trade secret information, and developed, created and marketed the Starent ST16 competing product, as a result (or fruit) of the misappropriation, has:  (a) reduced the Carrier Unit's thriving, over $100 million per year business to rubble; (b) misappropriated the Carrier Unit's trade secrets, (c) infringed the Carrier Unit's patents, (d) infringed the Carrier Unit's copyrights, and (e) unfairly competed with the Carrier Unit in the manner discussed below.  Through the filing of this Complaint, UTStarcom demands**

*that its business and intellectual property rights be returned to it, in the form of injunctive*

*relief, return of its intellectual property, and financial damages, as discussed in the claims*

*and the Request For Relief.*

26.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and

lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they

relate to the other Defendants and, therefore, denies them.

### Parties

### Plaintiff UTStarcom

*27.     On June 10, 1991, UTStarcom was incorporated under the laws of the State of*

*Delaware.  UTStarcom began its business in Alameda, California.  Its corporate*

*headquarters is located at 1275 Harbor Bay Parkway, Alameda, California 94502.*

27.     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*28.     On May 23, 2003, UTStarcom acquired substantially all of the assets of*

*3Com's carrier business unit.  UTStarcom continues to own and operate the Carrier Unit.*

28.     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*29.     With the acquisition of the Carrier Unit, UTStarcom acquired the personnel*

*and facilities for the Carrier Unit, including, but not limited to: engineering; research and*

*development; manufacturing; marketing; sales; and administration.  All of these personnel*

*and facilities for the Carrier Unit, with the exception of certain personnel, were, and are*

*still, located at 3800 Golf Road, Rolling Meadows, Illinois 60008, as well as other locations.*

*Until recently, UTStarcom operated one of its locations at 9393 W. 110th Street, Suite 500,*

*Overland Park, Kansas 66210-1402 which, upon information and belief, was first opened
and utilized by the Carrier Unit on or about September 27, 1996.*

29.     Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.

*30.     The majority of UTStarcom's operations that are related to the acquired
Carrier Unit have operated and continue to operate today from UTStarcom's location in
Rolling Meadows, Illinois, and at other locations.  UTStarcom has hundreds of employees
and others involved in its Carrier Unit operations in Illinois and at other locations.*

30.     Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.

**Defendant Starent**

*31.     On August 11, 2000, Starent was incorporated under the laws of the State of
Delaware.  Starent is doing business and has places of business located in Schaumburg,
Illinois and at 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210-1402, the
latter of which is a "shared" office space and the identical Overland Park, Kansas business
address for UTStarcom (i.e., each business rents an office(s) within the office space).  Starent
is now unlawfully making, using and selling products and services that compete with
UTStarcom, as more fully described herein.*

31.     Defendant admits that Starent is a corporation organized and existing under the laws
of the State of Delaware and that Starent has an office in Schaumburg, Illinois and in Overland
Park, Kansas.  Defendant is without knowledge or information sufficient to form a belief as to the
truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*32.     Defendant Starent had access to the Carrier Unit's Confidential and
Proprietary Trade Secret Information including, but not limited to, all of the Confidential*

12

*and Proprietary Trade Secret Information misappropriated, improperly acquired and fraudulently used by all of the individually-named Defendants, as set forth herein.*

32.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*33.     Starent sought out and acquired the Carrier Unit's confidential and proprietary trade secret information, including but not limited to technical specifications, design information, software, hardware configurations, systems operation and interoperability tests, development information, marketing presentations and information, customer contact information, and other information, and, on behalf of and/or with the knowledge of Starent, utilized the Carrier Unit's confidential and proprietary trade secret information without any license to design, develop, and manufacture the ST16 and market it to the Carrier Unit's existing clients and potential clients. The Carrier Unit's confidential and proprietary trade secret information utilized by Starent includes, but is not limited to, the trade secrets information contained in the following documents:*

- *The trade secrets contained in Ex. 2 to the Plaintiff's Trade Secrets at Issue, dated August 30, 2007, which were found by the Special Master to be a sufficient identification of trade secrets;*

- *3Com Wireless Data Overview for SPCS July 28 00.jpg;*

- *Wireless 3G 2.0 Price List 03.11.02.xls;*

- *PDSN and HA Performance 5-09-02;*

- *CommWorks price list 05-23-02.xls;*

- *PDSN and HA PerformanceFinal6-18-02.zip;*

- ***Carrier/administrative/NASales&NCOrgChartJuly02.ppt;***

- ***R4.0 customer presentation [Verizon Wireless] 07-03-02.ppt;***

- ***schedule7-18-02.doc;***

- ***3GConCall072302.ppt.***

- ***CommWorks Wireless Business Unit:  All Hands Meeting, Oct.  23, 2002;***

- ***Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;***

- ***CommWorks Pipeline Opportunity Report Wireless Amer., Nov. 1, 2002;***

- ***Sprint PCS & CommWorks Executive Review, Nov. 14, 2002;***

- ***CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 14, 2002;***

- ***Project Concept document for K-PDSN (S0052).doc; and***

- ***Vpn-wireless-zip.ZIP.***

33.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Schoener**

***34.     On August 11, 2000, Mr. Schoener co-founded Starent.  (Defendant Schoener began working for the Carrier Unit on December 15, 1997, where he was the Director of Software Development, and continued working for the Carrier Unit just prior to co-founding Starent.  ) Immediately upon founding Starent, Mr. Schoener, with knowledge that each and every individual that worked from 3Com, including himself, had signed an employment agreement with 3Com expressly prohibiting:  (a) the disclosure of 3Com's confidential and proprietary trade secret information, (b) the solicitation of 3Com's clients and potential clients, and (c) the solicitation of 3Com's employees to join a directly***

14

*competing business, immediately recruited 3Com employees and, as each employee was hired, encouraged them to solicit additional employees, and participated in the subsequent hiring process for additional 3Com employees.*

34.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*35.     Upon information and belief, Mr. Schoener had access to and did take the Carrier Unit's wireless product development information included in 3Com's proprietary documents (e.g., including product development documents, technical documents, and testing documents), and other technical confidential and proprietary trade secret information in order to acquire the five (5) years' worth of product development, marketing and sales information for the purpose of its use to 3Com and develop Starent's ST16 carrier business product and business.*

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*36.     Upon information and belief, Mr. Schoener's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

36.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Shieh**

*37.     On August 24, 2000, Mr. Shieh left the employ of the Carrier Unit.  Upon information and belief, on August 28, 2000, Mr. Shieh began his employment with Starent. Defendant Paul Shieh began working for the Carrier Unit in about September 1997, where he was a principal architect and product manager for the products and services.  Upon information and belief, Mr. Shieh began his employment at Starent as the Director of Technology and is presently the Vice President of Technology and General Manager for Greater China.*

37.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*38.     Defendant Shieh signed an agreement with the Carrier Unit which, inter alia, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.*

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*39.     Defendant Shieh was a principal architect and product manager for the Carrier Unit.  His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products.  As a product manager, he "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of-life.*

39.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***40.     Defendant Shieh had access to and did acquire the Carrier Unit's technical specifications, development, design and engineering proprietary information, engineering and functional compliance information, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Shieh.***

40.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***41.     Defendant Shieh also had contact with Carrier Unit customers and with potential customers in order to present information concerning the Carrier Unit's core data products.***

41.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***42.     Upon information and belief, Defendant Shieh utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information acquired by Mr. Shieh and belonging to 3Com to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product to the Carrier Unit's customers and potential clients, including but not limited to China Unicom and KDDI.***

42.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**43.     Upon information and belief, Defendant Shieh's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.**

43.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Harper**

**44.     Upon information and belief, on October 16, 2000, Mr. Harper began his employment with Starent and is now a software architect for Starent, engineering the Starent's products' hardware and software platforms.  (Defendant Harper began working for the Carrier Unit on or about April 17, 1995, where he was a senior consulting engineer for the Carrier Unit, an inventor and architect for the hardware and software platforms for the products of the Carrier Unit, and was well-versed in the relevant products and services of the Carrier Unit.  On October 6, 2000, Mr. Harper left the employ of the Carrier Unit.**

44.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**45.     Upon information and belief, Mr. Harper previously resided in Cook County and DuPage County, Illinois.  Upon information and belief, Mr. Harper presently resides at 22 Ticklefancy Lane, Salem, New Hampshire 03079.**

45.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**46.     Defendant Harper, on or about April 17, 1995, signed an agreement with the Carrier Unit which, inter alia, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.**

46.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**47.     Defendant Harper was a senior consulting engineer for the Carrier Unit, an inventor and architect for the hardware and software platforms for the Carrier Unit.  He had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential information provided to customers, and other Confidential and Proprietary Trade Secret Information belonging to the Carrier Unit, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Harper.**

47.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**48.     Mr. Harper provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.**

48.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*49.     Upon information and belief, Defendant Harper's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

49.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Sirota

*50.     Upon information and belief, on November 13, 2000, Mr. Sirota began his employment with Starent, and is presently the Vice President of Product Management for Starent.  (Defendant Sirota began working for the Carrier Unit on about October 21, 1999, where he was Director of Wireless Product Management for the Carrier Unit.  On November 9, 2000, Mr. Sirota left the employ of the Carrier Unit. ) Upon information and belief, Mr. Sirota resides in Lake County, Illinois.*

50.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*51.     Defendant Sirota, on October 21, 1999, signed an agreement with the Carrier Unit which, inter alia, prohibited him from soliciting the Carrier Unit's employees, and from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit.*

51.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**52.     Defendant Sirota was director of product management for the Carrier Unit. His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products.  As a product manager, he "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of-life.**

52.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**53.     Defendant Sirota had access to the Carrier Unit's technical specifications, development, design and engineering information, engineering and functional compliance information, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information, said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Sirota.**

53.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**54.     After being hired by Starent, Mr. Sirota also had contact with the Carrier Unit's customers and with potential customers in order to present information concerning the proposed design of Starent's ST16 (the ST16 was in the design and development stage until at least mid- 2002) and to solicit from the customers concerning what enhancements to 3Com's existing products the customers would like to see.  Mr. Sirota participated on these**

*"development" teams with other Starent employees. It was from these client and development efforts that Starent was able to finalize the alleged enhancements to the 3Com product that Starent would develop as a result, as set forth in the deposition of Defendant Lopez, which is designated by Defendants as* **Highly Confidential.**

54.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*55.     Mr. Sirota utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product to the Carrier Unit's customers and potential clients.*

55.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*56.     Defendant Sirota, upon information and belief, also solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least five (5) Carrier Unit employees that Mr. Sirota solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Sirota received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

56.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*57.     Upon information and belief, Defendant Sirota's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the*

*Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

57.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Eliason

*58.     Upon information and belief, Defendant Eliason began working for Starent on or about December 1, 2000.  (On November 25, 2000, Mr. Eliason left the employ of the Carrier Unit, where he was a product manager for the wireless group of the Carrier Unit.)*

58.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*59.     Upon information and belief, Defendant Eliason signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.*

59.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*60.     Defendant Eliason was a product manager for the Carrier Unit.  His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products.  As a product manager, he "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of- life.*

60.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**61.     Defendant Eliason he had access to the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information.  He also had contact with Carrier Unit customers and potential customers. Upon information and belief, Mr. Eliason utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.**

61.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**62.     Upon information and belief, Defendant Eliason's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.**

62.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Capener**

**63.     Upon information and belief, Defendant Capener began working for Starent on January 15, 2001.  (Defendant John Capener began working for the Carrier Unit on July 6, 1993, where he was a manager in marketing for the Carrier Unit.  On January 1, 2001,**

*Mr. Capener left the employ of the Carrier Unit.) Upon working with Starent, Mr. Capener became the Director of Marketing for Starent, and is now the Vice President of Marketing Communications for Starent.*

63.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*64.     Upon information and belief, Mr. Capener resides at 84 Towne Hill Road, Haverhill, Massachusetts 01835.*

64.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*65.     Defendant Capener, on July 6, 1993, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit.*

65.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*66.     Defendant Capener was a marketing manager for the Carrier Unit.  He responsible for marketing the Core Data Products.  Mr. Capener had access to the Carrier Unit's Confidential and Proprietary Trade Secret Information including, but not limited to, its: confidential policies and procedures created pursuant to the ISO standards; confidential cost information; confidential data provided to customers; as well as product service information, details, features and product performance data, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret*

*Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Capener.*

66.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**67.    Mr. Capener then utilized the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent to directly market of Starent's ST16 products to the Carrier Unit's customers and potential customers.  Mr. Capener confirmed in his deposition that he and Starent had possession of 3Com Confidential and Proprietary Trade Secret Information that Mr. Capener maintained and updated as set forth in his deposition, which Defendants designated Highly Confidential.**

67.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**68.    Upon information and belief, Defendant Capener's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.**

68.  Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Rygula**

*69. Upon information and belief, Mr. Rygula began his employment with Starent shortly after leaving the Carrier Unit on February 7, 2001. (Defendant Rygula began working for the Carrier Unit on about December 18, 1995, where he was a technical writer and then became a product manager for the Carrier Unit. On February 7, 2001, Mr. Rygula left the employ of the Carrier Unit.) Upon information and belief, Mr. Rygula is presently employed by Starent as the Director of Technical Communications.*

69.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*70. Upon information and belief, Mr. Rygula previously resided in Cook County, Illinois.*

70.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*71. On December 18, 1995, Mr. Rygula signed an agreement with the Carrier Unit which, inter alia, prohibited him from disclosing or using any of the Carrier Unit's confidential information for his or another's benefit. Mr. Rygula further agreed not to accept any employment which would inherently involve his use or disclosure of the Carrier Unit's proprietary information.*

71.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*72. Defendant Rygula was a technical writer and a product manager for the Carrier Unit. His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products. As a product manager, he*

*"owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of-life.*

72.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**73.     Defendant Rygula he had access to the Carrier Unit's technical specifications, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Rygula.  In fact, in discovery, Mr. Rygula produced approximately three hundred (300) documents that were wrongfully in his possession containing 3Com's Confidential and Proprietary Trade Secret Information.**

73.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**74.     Mr. Rygula also had contact with Carrier Unit customers and, upon information and belief, with potential customers.  Mr. Rygula utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.**

74.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**75.     Upon information and belief, Defendant Rygula's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the**

*Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

75.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Lopez**

*76.    Upon information and belief, on February 19, 2001, Mr. Lopez began his employment with Starent.  (Defendant Lopez began working for the Carrier Unit in about March 1997, where he was a senior product manager.  On February 16, 2001, Mr. Lopez left the employ of the Carrier Unit.)  Upon information and belief, Mr. Lopez previously was the Director of Carrier Development for Starent and is presently the Vice President of Strategic Alliances for Starent.*

76.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them

*77.    Upon information and belief, Mr. Lopez presently resides at 1305 Acorn Drive, Sleepy Hollow, Illinois 60118.*

77.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*78.    Defendant Lopez, at least as early as December 31, 1997, signed an agreement with the Carrier Unit which, inter alia, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit, accepting any employment which would inherently involve the use or disclosure of*

29

*the Carrier Unit's proprietary information, and prohibiting him from soliciting 3Com's*

*employees to work for a direct competitor.*

78.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*79.     Mr. Lopez was employed as a senior product manager with 3Com.  His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products.  As a product manager, he "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of-life.*

79.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*80.     As a senior product manager, Mr. Lopez had access to the Carrier Unit's confidential project information, cost information, and other confidential information, including client contact information and presentations, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Lopez.  He also routinely met with Carrier Unit customers and potential customers.*

80.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*81.     Defendant Lopez, upon being hired by Starent, immediately began to solicit on behalf of Starent, the Carrier Unit's customers and/or potential customers including but not limited to Samsung, that he had worked with while employed by the Carrier Unit and he*

*conspired with Starent to solicit Carrier Unit customers and/or potential customers beginning with his employment with Starent. Upon information and belief, Mr. Lopez utilized Confidential and Proprietary Trade Secret Information known to him to solicit the Carrier Unit's customers and existing customers and discuss technical improvements to 3Com's products as set forth in Mr. Lopez's deposition, which Defendants designated as* **Highly Confidential.**

81.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***82.     In addition, at least one (1) Carrier Unit employee that Mr. Lopez solicited to work for Starent were hired by Starent, as set forth in Mr. Lopez's deposition, which Defendants designated as*** **Highly Confidential.**

82.     The subject matter of this paragraph is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed the relevant Counts.

***83.     Upon information and belief, Defendant Lopez's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.***

83.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Puthiyandyil**

*84.     Upon information and belief, Mr. Puthiyandyil began his employment with Starent on April 23, 2001.  (Defendant Puthiyandyil began working for the Carrier Unit on about October 7, 1996, where he was a Principal Engineer for the Carrier Unit.)  Upon information and belief, Mr. Puthiyandyil is the Director of the Protocol Development Group for Starent.*

84.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*85.     Upon information and belief, Mr. Puthiyandyil previously resided in Mount Prospect, Illinois and presently resides at 10 Georgetown Drive, Nashua, New Hampshire 03062.*

85.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*86.     Defendant Puthiyandyil signed an agreement with the Carrier Unit which, inter alia, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit.  Mr. Puthiyandyil further agreed not to accept any employment which would inherently involve the use or disclosure of the Carrier Unit's proprietary information.*

86.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*87.     Defendant Puthiyandyil was a principal engineer for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information, and said*

*Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Puthiyandyil.*

87.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*88.    Upon information and belief, Mr. Puthiyandyil provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.*

88.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*89.    Upon information and belief, Defendant Puthiyandyil's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their [sic] duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their [sic] detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their [sic] duties for Starent.*

89.    Defendant denies remaining allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Wininger

*90.    Upon information and belief, on June 18, 2001, Defendant Wininger began his employment with Starent as Manager of Professional Services, where he was responsible for responding to requests for proposals.  (Mr. Wininger began working for the Carrier Unit on*

*about August 5, 1996, where he was the head of proposals for the Carrier Unit.  On June 12,*

*2001, Mr. Wininger left the employ of the Carrier Unit.)  Upon information and belief, Mr.*

*Wininger resigned from Starent and, since April 2004, has been employed by Northrop*

*Grumman Systems Corp.*

90.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*91.    Upon information and belief, Mr. Wininger resides at 14223 Redmond Drive,*

*Huntley, Illinois 60142.*

91.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*92.    On August 5, 1996, Mr. Wininger signed a non-disclosure and non-solicitation*

*agreement with the Carrier Unit which,* inter alia*, prohibited him from soliciting employees*

*of the Carrier Unit, from divulging or using any of the proprietary technical and business*

*information of the Carrier Unit for his or another's benefit.  Mr. Wininger further agreed*

*not to accept any employment which would inherently involve the use or disclosure of the*

*Carrier Unit's proprietary information.*

92.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*93.    Defendant Wininger was a marketing manager for the Carrier Unit, where he*

*had access to the Carrier Unit's confidential cost information, confidential internal data and*

*testing information, product service information and details, product features and*

*performance data, and other Confidential and Proprietary Trade Secret Information, and*

*said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Wininger.*

93.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*94.     Upon information and belief, Mr. Wininger utilized the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent to draft technical and marketing documents and directly market Starent's ST16 products to the Carrier Unit's customers and potential customers.*

94.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*95.     As a Starent employee, Defendant Wininger solicited the Carrier Unit's employees to join him at Starent.  At least two (2) Carrier Unit employees that Mr. Wininger solicited to work for Starent were hired by Starent, as set forth in Mr. Wininger's deposition, which Defendants designated as* Highly Confidential.

95.     The subject matter of this paragraph is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed the relevant Counts.

*96.     Upon information and belief, Defendant Wininger's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon,*

*their detailed and comprehensive knowledge of the Carrier Unit's Confidential and*

*Proprietary Trade Secret Information in performing their duties for Starent.*

96.     Defendant denies the remaining allegations set forth in this Paragraph as they apply

to him, and lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Tiwari**

*97.     On October 12, 2001, Mr. Tiwari left the employ of the Carrier Unit, where he*

*was the Director of Product Management.  Upon information and belief, Mr. Tiwari*

*immediately began working for Starent, where he first was the Director of Systems*

*Engineering for Worldwide Accounts.  Upon information and belief, Mr. Tiwari is presently*

*the Vice President of Solutions Development for Starent.*

97.     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*98.     Upon information and belief, Mr. Tiwari resides in Lake County, Illinois.*

98.     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*99.     Defendant Tiwari signed a non-solicitation and confidentiality agreement*

*with the Carrier Unit upon beginning his employment with the Carrier Unit, which,* **inter**

**alia***, prohibited him from soliciting employees of the Carrier Unit, from divulging or using*

*any of the proprietary technical and business information of the Carrier Unit for his or*

*another's benefit.  Mr. Tiwari further agreed not to accept any employment which would*

*inherently involve the use or disclosure of the Carrier Unit's proprietary information.*

99.     Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

**100.** *Defendant Tiwari was the Director of Product Management for the Carrier Unit. As a product manager, he "owned" their assigned products from a customer development and marketing perspective throughout the product lifecycle, from creation to end-of-life. As a product manager, Defendant Tiwari had access to the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Tiwari. He also routinely met with Carrier Unit customers and potential customers.*

100. Defendant admits that Mr. Tiwari was a director of product management for 3Com. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**101.** *Upon joining Starent, Defendant Tiwari, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to China Unicom that he had worked with while employed by the Carrier Unit on behalf of Starent and/or in conspiracy with Starent, in order to gain these Business Unit customers as clients of Starent. Upon information and belief, Mr. Tiwari specifically utilized the Confidential and Proprietary trade secret information he had access to – including the project information, test results and cost information – to assist in the development process of the ST16 and to solicit the Carrier Unit's customers on behalf of Starent and/or as a co-conspirator of Starent.*

101. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***102. Upon information and belief, Defendant Tiwari's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.***

102. Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Charath

***103. Upon information and belief, on January 7, 2001, Mr. Charath began his employment at Starent as a Systems Engineer, and subsequently became a Senior Systems Engineer for Starent. (Defendant Noel Charath was a product manager for the Carrier Unit. On January 2, 2002, Mr. Charath left the employ of the Carrier Unit.) Upon information and belief, Mr. Charath is now the Director of Solutions Development at Starent.***

103. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***104. Upon information and belief, Mr. Charath previously resided in Cook County, Illinois, and presently resides at 139 Orchard Hill Road, Haverhill, Massachusetts 01835.***

104. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**105.    Upon information and belief, Defendant Charath signed an agreement with the Carrier Unit which, inter alia, prohibited him from disclosing or using, after the term of his employment, any confidential or proprietary information belonging to the Carrier Unit.**

105.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**106.    Defendant Charath was a product manager and engineer for the Carrier Unit. His job involved meeting with customers and potential customers to present them with information regarding the Core Data Products.  As a product manager, he "owned" their assigned products from a customer development/marketing perspective throughout the product lifecycle, from creation to end-of-life.**

106.    Defendant admits that Mr. Charath was a product manager for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**107.    Defendant Charath he had access to the Carrier Unit's technical specifications, design information, confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Charath.  He also had contact with Carrier Unit customers and potential customers.**

107.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**108.    Upon information and belief, Mr. Charath utilized the Carrier Unit's technical specifications, design information, confidential project information, cost**

*information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.*

108.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*109.    Upon information and belief, Defendant Charath's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

109.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Kelly**

*110.    Upon information and belief, on November 14, 2002, Defendant Kelly began his employment with Starent.  (Mr. Kelly began working for the Carrier Unit on about August 7, 1995, where was first a network consultant and later a manager for global strategic technology for wireless products for the Carrier Unit.  On November 11, 2002, Mr. Kelly left the employ of the Carrier Unit.)  Upon information and belief, Mr. Kelly previously was the Director of Network Consulting and Sales and Support, and subsequently the Vice President of Network Consulting and Sales Support, North America, for Starent.  Upon information and belief, Mr. Kelly left Starent in the spring of 2008 and is now employed by Nexius, Inc.*

40

110.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***111.    Upon information and belief, Mr. Kelly resides in northern Virginia.***

111.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***112.    On August 7, 1995, Defendant Kelly signed an agreement with the Carrier Unit which, inter alia, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit.  Mr. Kelly further agreed not to accept any employment which would inherently involve the use or disclosure of the Carrier Unit's proprietary information.***

112.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***113.    Defendant Kelly was a Network Consultant for the Carrier Unit.  As part of his position, Defendant Kelly's role was to support the sales team, to expand contractual relationships with existing clients, including but not limited to Sprint and Verizon, and to answer technical questions.  For instance,*** inter alia***, Mr. Kelly was informed and had confidential access to not only of what the Carrier Unit's products could do, but also of what they could not do, and what features were*** not ***being planned.***

113.    Defendant admits that Mr. Kelly was a network consultant and later a manager for global technology for the 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*114.* *As part of his position, he had access to and specific knowledge of the Carrier Unit's projects in development, its successes and test results, its cost information, its client lists and potential client lists, its technical specification information, design information, confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Kelly. He also had contact with Carrier Unit customers and potential customers.*

114. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*115.* *Defendant Kelly met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with the Carrier Unit's Confidential and Proprietary Trade Secret Information concerning Carrier Unit customers and/or potential customers including but not limited to Byte Mobile, KDDI, China Unicom, Samsung, Sprint, Verizon Wireless.*

115. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*116.* *On November 11, 2002, Mr. Kelly resigned from the Carrier Unit. Mr. Kelly – after giving his resignation to the Carrier Unit – downloaded to Starent more than 3,000 Carrier Unit files containing the Carrier Unit's Confidential and Proprietary Trade Secret Information that he had wrongfully transferred to his Carrier Unit computers. These downloads were so massive that they had to be executed multiple times before the complete*

*downloading was successful.  It was only after the Carrier Unit files were successfully*

*downloaded to Starent and Mr. Kelly had attempted to erase the files and evidence of the*

*downloading that Mr. Kelly turned in his Carrier Unit computers.*

116.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*117.    Mr. Kelly specifically utilized the Confidential and Proprietary trade secret*

*information he misappropriated – including the project information, test results and cost*

*information, and the above specifically-named documents – to assist in the development*

*process of the ST16 and to solicit the Carrier Unit's customers on behalf of Starent and/or as*

*a co-conspirator of Starent, including but not limited to Byte Mobile, China Unicom,*

*Samsung, Sprint, and others.*

117.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*118.    Defendant Kelly solicited the Carrier Unit's employees upon joining Starent,*

*to join him at Starent.  At least two (2) Carrier Unit employee that Mr. Kelly solicited to*

*work for Starent was hired by Starent.*

118.    The subject matter of this paragraph is moot because Judge Lindberg's Order dated

March 24, 2009 (D.I. 301) dismissed the relevant Counts.

*119.    Upon information and belief, Defendant Kelly's work at and on behalf of*

*Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the*

*Carrier Unit as described above, and the Individual Defendants have utilized and relied*

*upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon,*

*their detailed and comprehensive knowledge of the Carrier Unit's Confidential and*

*Proprietary Trade Secret Information in performing their duties for Starent.*

119.    Defendant denies the allegations set forth in this Paragraph as they apply to him,

and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as

they relate to the other Defendants and, therefore, denies them.

### Defendant Zarich

*120.    Upon information and belief, on December 9, 2002, Defendant Zarich joined*

*the sales force at Starent, and was based at Starent's Overland Park, Kansas sales office.*

*(Mr. Zarich began working for the Carrier Unit on about September 18, 2000, where he*

*worked as a sales representative for the Carrier Unit, and was based at UTStarcom's*

*Overland Park, Kansas sales office.  On November 25, 2002, Mr. Zarich left the employ of*

*the Carrier Unit.  ) Upon information and belief, Mr. Zarich is now Director of Sales at*

*Vornado Air LLC.*

120.    Defendant admits that he worked in sales for 3Com, that he left 3Com on or around

December 9, 2002 to work in sales for Starent, and now works for Vornado.  Defendant is without

knowledge or information sufficient to form a belief as to the truth of the allegations set forth in

this Paragraph and, therefore, denies them.

*121.    Upon information and belief, Mr. Zarich resides at 232 South Duffers Court,*

*Andover, Kansas 67211.*

121.    Admitted.

*122.    Defendant Zarich, on September 18, 2000, signed an agreement with the*

*Carrier Unit which,* inter alia*, prohibited him from disclosing, using, after the term of his*

*employment with the Carrier Unit, any proprietary or confidential information or*

*know-how belonging to the Carrier Unit.  On November 25, 2002, Mr. Zarich further signed*

*another agreement certifying that he did not possess the Carrier Unit's Confidential and Proprietary Trade Secret Information.*

122.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*123.   Defendant Zarich was employed as a salesman for the Carrier Unit.  As part of his position, Mr. Zarich had detailed knowledge of product development and implementation of product features, customers that were being targeted by the Carrier Unit (and how these customers were being targeted), pricing structures and product capabilities, performance and weaknesses.  Mr. Zarich had access to the Carrier Unit's Confidential and Proprietary Trade Secret Information including, but not limited to, its: confidential policies and procedures created pursuant to the ISO standards; confidential design and engineering information; confidential cost information; confidential data provided to customers; and policies and procedures for employee access to the Carrier Unit's intranet, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Zarich.*

123.   Defendant admits that he worked in sales for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*124.   Prior to leaving the Carrier Unit on November 25, 2002, Mr. Zarich printed approximately 847 pages of files containing the Carrier Unit's Confidential and Proprietary Trade Secret Information from the computer issued to him by the Carrier Unit, and took these files with him when he resigned.  Upon information and belief, these files included, but are not limited to:*

- ■ *CommWorks Wireless Business Unit: All Hands Meeting, Oct. 23, 2002;*

- ■ *Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;*

- ■ *CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;*

- ■ *Sprint PCS & CommWorks Executive Review, Nov. 14, 2002; and*

- ■ *CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 14, 2002.*

124. Denied.

***125.   Upon information and belief, Mr. Zarich also routinely met with Carrier Unit customers and potential customers, including Sprint.  Upon joining Starent, Mr. Zarich, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to Sprint to purchase the Starent Products.  Upon information and belief, Mr. Zarich specifically utilized the Confidential and Proprietary trade secret information he had access to – including the project information, test results and cost information – to solicit Sprint on behalf of Starent and/or as a co-conspirator of Starent.***

125. Defendant admits that he met with Sprint while working for 3Com and Starent. Defendant denies the remaining allegations set forth in this Paragraph.

***126.   Upon information and belief, Defendant Zarich's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon,***

*their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

126.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Defendant Gabel**

*127.    Defendant Gabel began working for the Carrier Unit on about May 11, 1998, where he was a network consultant for the Carrier Unit, and was based at UTStarcom's Kansas sales office.  On November 25, 2002, Mr. Gabel left the employ of the Carrier Unit. Upon information and belief, on December 9, 2002, Mr. Gabel joined the sales force at Starent, and was based at Starent's Kansas sales office.*

127.    Defendant admits that Mr. Gabel was a network consultant for 3Com, that he left the employ of 3Com on or around November 25, 2002, and that Mr. Gabel joined Starent on or around December 9, 2002.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*128.    Upon information and belief, Mr. Gabel resides at 14609 Windsor Street, Overland Park, Kansas 66224.*

128.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*129.    Defendant Gabel, on May 11, 1998, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.  On November 25, 2002, Mr. Gabel further signed another agreement certifying that he did not possess the Carrier Unit's Confidential and Proprietary Trade Secret Information.*

129.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**130.     Defendant Gabel was a network consultant for the Carrier Unit.  Mr. Gabel's position was both technical-based and sales-based.  His role was to support the sales team, to expand contractual relationships with existing clients, including but not limited to Sprint and Verizon, and to answer technical questions.  For instance, inter alia, Mr. Gabel was informed and had confidential access to not only of what the Carrier Unit's products could do, but also of what they could not do, and what features were not being planned.  Mr. Gabel had access to the Carrier Unit's technical product and sales information, product development plans and information, pricing information, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Gabel.**

130.     Defendant admits that Mr. Gabel was a network consultant for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**131.     Upon information and belief, Mr. Gabel provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development, creation, and direct marketing of Starent's ST16 product to the Carrier Unit's customers and potential customers, including but not limited to Sprint.**

131.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***132.     Upon information and belief, Defendant Gabel's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.***

132.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Espy

***133.     Upon information and belief, on January 6, 2003, Defendant Espy began his employment at Starent and was based at Starent's Overland Park, Kansas sales office.  (Mr. Espy began working for the Carrier Unit on about October 19, 1998, where he was North American Director of Sales for Wireless Products for the Carrier Unit, and was based in UTStarcom's Overland Park, Kansas sales office.  On January 2, 2003, Mr. Espy left the employ of the Carrier Unit. ) Upon information and belief, Mr. Espy was initially employed by Starent as a sales director and subsequently became the Vice President of Sales for Starent.***

133.     Defendant admits that Mr. Espy was the North American Director of Sales for Wireless Products for 3Com, that he left 3Com in or around January 2003, and that he became Vice President of Sales for Starent.  Defendant is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**134.     Upon information and belief, Mr. Espy resides at 5212 West 166th Street, Stilwell, Kansas 66085.**

134.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**135.     On October 19, 1998, Defendant Espy signed an agreement with the Carrier Unit which, inter alia, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.**

135.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**136.     Defendant Espy was the North American Director of Sales for Wireless Products for the Carrier Unit.  As part of his position, Mr. Espy had detailed knowledge of product development and implementation of product features, customers that were being targeted by the Carrier Unit (and how these customers were being targeted), pricing structures and product capabilities, performance and weaknesses.  Mr. Espy had access to the Carrier Unit's Confidential and Proprietary Trade Secret Information including, but not limited to, its: confidential policies and procedures created pursuant to the ISO standards; confidential design and engineering information; confidential cost information; confidential data provided to customers; and policies and procedures for employee access to the Carrier Unit's intranet and other Carrier Unit Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was**

**included in 3Com documents and both the documents and the content thereof was known to Mr. Espy.**

136.    Defendant admits that Mr. Espy was the North American Director of Sales for Wireless Products for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**137.    Upon information and belief, Mr. Espy began providing the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent representatives prior to his resignation from the Carrier Unit, as well as to at least one representative from at least one wireless company other than Starent, who was the Director of Wireless Planning for this company.**

137.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**138.    Upon information and belief, Mr. Espy met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with information concerning Carrier Unit customers and/or potential customers including but not limited to Alltel, Bell South International, Sprint, Verizon Wireless, and US Cellular, and subsequently upon being hired by Starent, upon information and belief, solicited these Carrier Unit clients on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers.**

138.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**139.** *Immediately prior to his resignation from the Carrier Unit, Mr. Espy e-mailed numerous documents containing the Carrier Unit's confidential and proprietary trade secret information to himself at his private e-mail. Upon information and belief, Mr. Espy then provided this Confidential and Proprietary Trade Secret Information to Starent.*

139. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**140.** *Upon information and belief, Defendant Espy's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.*

140. Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### Defendant Ramankutty

**141.** *On July 16, 2003, began his employment with Starent as a software engineer. (Defendant Rajesh Ramankutty was a lead/senior software engineer for the Carrier Unit. Upon information and belief, Mr. Ramankutty left the Carrier Unit.) Upon information and belief, Mr. Ramankutty is presently employed by Starent as a Consulting Software Engineer.*

141. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**142. Upon information and belief, Mr. Ramankutty previously resided in Mount Prospect, Illinois and also at 6 Newcastle Drive, #6, Nashua, New Hampshire 03060.**

142. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**143. Defendant Ramankutty was a principal engineer for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information, and said Confidential and Proprietary Trade Secret Information was included in 3Com documents and both the documents and the content thereof was known to Mr. Ramankutty.**

143. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**144. Upon information and belief, Mr. Radhakrishnan provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.**

144. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**145. Upon information and belief, Defendant Ramankutty's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon,**

*their detailed and comprehensive knowledge of the Carrier Unit's Confidential and*

*Proprietary Trade Secret Information in performing their duties for Starent.*

145.    Defendant denies remaining allegations set forth in this Paragraph as they apply to

him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations

as they relate to the other Defendants and, therefore, denies them.

### Defendant Radhakrishnan

*146.    On July 21, 2003, Defendant Radhakrishnan began his employment with*

*Starent as a software engineer.  (Defendant Radhakrishnan left the Carrier Unit in April*

*2001.  He began working for the Carrier Unit in about April 1997, where he was an engineer*

*and was part of the remote access server group.)  Upon information and belief, Mr.*

*Radhakrishnan is presently the Engineering Manager for Security Protocol/Products at*

*Starent.*

146.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*147.    Upon information and belief, Mr. Radhakrishnan resides in Cook County,*

*Illinois.*

147.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*148.    Defendant Radhakrishnan was a principal engineer for the Carrier Unit,*

*where he had access to the Carrier Unit's confidential project information, confidential*

*design and engineering information, confidential cost information, confidential data*

*provided to customers, and other Confidential and Proprietary Trade Secret Information,*

*and said Confidential and Proprietary Trade Secret Information was included in 3Com*

***documents and both the documents and the content thereof was known to Mr. Radhakrishnan.***

148.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***149.  Upon information and belief, Mr. Radhakrishnan provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.***

149.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***150.  Upon information and belief, Defendant Radhakrishnan's work at and on behalf of Starent, a direct competitor to the Carrier Unit, is substantially similar to their duties at the Carrier Unit as described above, and the Individual Defendants have utilized and relied upon, and/or continue to utilize and rely upon, and/or will inevitably use and rely upon, their detailed and comprehensive knowledge of the Carrier Unit's Confidential and Proprietary Trade Secret Information in performing their duties for Starent.***

150.  Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

### All Defendants

***151.  Upon information and belief, each of the above-named defendants, in engaging in the acts alleged herein, was the conspirator, co-conspirator, agent or alter ego of***

*each of the other defendants and was acting in the course and scope of such agency and with*

*the permission, consent and ratification of their co-defendants.*

151.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*152.    Upon information and belief, each of the Individual Defendants, as a result of*

*their prior relationships with the Carrier Unit, had access to and did acquire technical and*

*non-technical information, computer code and architecture, data, formulas, patterns,*

*programs, compilations, devices, methods, techniques, drawings, processes, concepts,*

*implementations, financial data, copyright material, sales and marketing data, information*

*and files, customer and supplier lists, and other trade secret information, as further defined*

*and explained within this Complaint, that belongs to the Carrier Unit.*

152.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the as to the truth of the remaining allegations as they relate to the other Defendants and, therefore, denies them.

## JURISDICTION AND VENUE

*153.    This is an action for patent infringement arising under the patent laws of the*

*United States, 35 U.S.C. §§ 1, et seq., and copyright infringement arising under the*

*copyright laws of the United States, 17 U.S.C. §§ 101, et seq.*

153.    Admitted that the complaint purports to state an action for patent infringement and an action for copyright infringement.

*154.    This Court has jurisdiction over the subject matter of this action pursuant to*

*28 U.S.C. §§ 1331 and 1338(a).  Upon information and belief, Starent is subject to the*

*jurisdiction of this Court because it transacts business and/or has transacted business within*

*this judicial district and is subject to the jurisdiction of this Court, having conducted business, made, operated, used, offered for sale, and/or sold in this judicial district and elsewhere in the United States its products, particularly the ST16 intelligent mobile gateway and ST40 multimedia code platform (the "ST Products"). Upon information and belief, the Individual Defendants are subject to the jurisdiction of this Court, because they either reside in this judicial district and/or have committed acts which have injured UTStarcom within this judicial district.*

154.    The subject matter of Counts VII-XV and XX is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed those Counts. With regard to Counts II-V and XVI-XIX, Defendant need not respond as these allegations are not directed to Defendant Lopez. Defendant further denies the remaining allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations as they relate to the other Defendants and, therefore, denies them.

*155.    This Court has supplemental jurisdiction over the non-federal question claims pursuant to 28 U.S.C.§ 1367 because they arise out of the same facts and acts as those giving rise to the federal claims.*

155.    Defendant denies the allegations set forth in this Paragraph with respect to Count I as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them. The subject matter of Counts VII-XV and XX is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed those Counts, and accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the remainder of this Paragraph is required, and therefore denies the allegations set forth in the remainder of this Paragraph.

**156. This Court has venue pursuant to 28 U.S.C. §§1391 and/or 1400(b).**

156. Defendant admits the allegations set forth in this Paragraph as they apply to him with respect to Count I, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them. The subject matter of Counts VII-XV and XX is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed those Counts, and accordingly, Defendant asserts that no investigation regarding the truth or accuracy of the remainder of this Paragraph is required, and therefore denies the allegations set forth in the remainder of this Paragraph.

## FACTUAL BACKGROUND

### UTStarcom's Business Activities

**157. UTStarcom specializes in data communications products, including networking products and wireless products. UTStarcom acquired the Carrier Unit, including the products, services and intellectual property. These products, services and intellectual property relate to telecommunications. The product lines of the Carrier Unit consist of equipment (including hardware and software) that facilitates the wireless transmission of data including, for example, products allowing a cellular telephone user to access the Internet or check e-mail through use of the user's cellular telephone.**

157. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**158. UTStarcom's products and services are used in the provision of wireless communication technology including: second generation ("2G") technology; second and a half generation ("2.5G") technology; third generation ("3G") technology; and other wireless telephone technology.**

158.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**159.   UTStarcom's products and services that are so used in 2G, 2.5G and 3G wireless communication technology include, but are not limited to:  CDMA2000 1xRTT data services; Evolution-Data Optimized ("EV-DO") services; and virtual private network ("VPN") services.  CDMA2000 1xRTT is a protocol of mobile telecommunications standards that use a multiple access scheme for digital radio in order to send voice, data, and signaling data between mobile phone and cell sites.  EV-DO is typically used by cellular telephone service providers to provide broadband-speed Internet access to their users.  A VPN is a private communications network that is used by companies to communicate over a public network, such as the Internet.**

159.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**160.   UTStarcom is also involved with products and services for authentication, authorization and accounting ("AAA") servers.  "Authentication" refers to the confirmation that a user who is requesting services is a valid user of the network services requested.  "Authorization" refers to the granting of specific types of service (including "no service") to users based on their authentication, what services they are requesting, and the current system state.  "Accounting" refers to the tracking of the consumption of network resources by users.**

160.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**The Carrier Unit's Creation, Core Data Products and Services, And Its Development And Protection Of Its Confidential And Proprietary Trade Secret Information**

*161.    U.S. Robotics began the Carrier Unit at least as early as March 1, 1996, by conducting research into and developing wireless telephone technology, including the wireless telephone technology that became known as 2G, 2.5G, 3G, and other wireless telephone technology.  The technology, infrastructure, support, know-how, and developed products and services that comprises the Carrier Unit was developed over a substantial period of time, and continues to be developed, at a cost of hundreds of million dollars.  In connection with the development of the Carrier Unit's technology, infrastructure, support, know-how, and developed products and services, the Carrier Unit developed substantial confidential and proprietary trade secret information.*

161.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*162.    The Carrier Unit's confidential and proprietary trade secret information can be summarized as including its: confidential policies and procedures created pursuant to industrial and commercial standards set forth by the International Organization for Standardization ("ISO"); confidential project information; confidential design and engineering information; confidential cost information; confidential data provided to customers; policies and procedures for employee access to the Carrier Unit's intranet; engineering/functional compliance information; and regulatory compliance standards and test results (collectively, "Confidential and Proprietary Trade Secret Information").  The documents containing the Confidential and Proprietary Trade Secret Information were and are maintained by the Carrier Unit in the strictest confidence.*

162.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*163.    The Carrier Unit's developed products include, but are not limited to, the Total Control 1000 ("TC1000"), Total Control 800 ("TC800"), Total Control 2000 ("TC2000"), Total Control 200 ("TC200"), Total Control 3000 ("TC3000"), and Total Control 3100 ("TC3100"); (collectively, the "Core Data Products"). These Core Data Products were created, developed, marketed and sold using the Carrier Unit's Confidential and Proprietary Trade Secret Information.*

163.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*164.    While developed and created using the Carrier Unit's Confidential and Proprietary Trade Secret Information, the Carrier Unit's Core Data Products were and are developed to conform to and work in coordination with industry-wide accepted platforms and standards, including but not limited to: ASN Gateway products; Foreign Agent Control Node ("FACN") products; Gateway GPRS Support Node ("GGSN") products; Home Agent Control Node ("HACN") products; Home Agent ("HA") products; Interworking Function ("IWF") products; Interworking Unit ("IWU") products; and Packet Data Serving Node ("PDSN") products (collectively, the "Network Products").*

164.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*165.    The Network Products provide the Carrier Unit's customers and their customers' end-users with much of the infrastructure that transmits data from a cellular telephone or other wireless device, such as a personal digital assistant, to the Internet or*

*e-mail server. The Network Products enable cellular telephone users to access the Internet or check e-mail through use of their cellular telephone, among other things. The Network Products have been, and continue to be, purchased by cellular service providers including, but not limited to, Sprint and Verizon, and subsequently used by these companies' end users (i.e., consumers).*

165.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*166.    The Carrier Unit was and continues to be highly successful, developing its proprietary products and services, including products based upon: the above-described wireless telephone technology and Network Products and services; its confidential and proprietary information; and its protected and protectable intellectual property.*

166.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

### 3Com's Acquisition Of The Carrier Unit And Subsequent Activities

*167.    On or about June 11, 1997, 3Com acquired U.S. Robotics. 3Com's acquisition of U.S. Robotics included the Carrier Unit, which consisted and consists of Core Data Products and services that are created, protected, marketed and sold by the Carrier Unit; and the Confidential and Proprietary Trade Secret Information (collectively, the "Acquired Property").*

167.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*168.    Subsequent to 3Com's purchase of U.S. Robotics, employees working for the Carrier Unit, pursuant to the on-going research and development of the wireless telephone technology, filed many patent applications with the United States Patent & Trademark*

*Office ("PTO") in support of its Network Products. The patents include, but are not limited to, the following:*

       *a.      On January 27, 2004, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/491,751, entitled "Routing method for mobile wireless nodes having overlapping internet protocol home addresses," which is enumerated as U.S. Patent No. 6,684,256 ("the '256 patent"). A true and correct copy of the '256 patent is attached hereto as Exhibit A;*

       *b.      On July 20, 2004, the PTO duly and legally issued U.S. Patent Appl. Serial No. 10/346,897, entitled "Virtual home agent service using software-replicated home agents," which is enumerated as U.S. Patent No 6,765,900 ("the '900 patent"). A true and correct copy of the '900 patent is attached hereto as Exhibit B;*

       *c.      On November 8, 2005, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/515,560, entitled "Applying modified mobile internet protocol (IP) in a wireless mobile data network interface," which is enumerated as U.S. Patent No. 6,963,582 ("the '582 patent"). A true and correct copy of the '582 patent is attached hereto as Exhibit C; and*

       *d.      On February 6, 2007, the PTO duly and legally issued U.S. Patent Appl. Serial No. 09/920,980, entitled "PDSN fast tunnel lookup," which is enumerated as U.S. Patent No. 7,173,905 ("the '905 patent"). A true and correct copy of the '905 patent is attached hereto as Exhibit D.*

      168.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

      *169.   UTStarcom, through the acquisition of the Carrier Unit, is the assignee and owner of, and currently owns all right, title and interest in the '256, '900, '582, and '905 patents.*

169. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*170. The Carrier Unit provided and provides initial and on-going services in support of its Network Products. The Carrier Unit has been a leading provider of its Network Products and initial and on-going services since its inception.*

170. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

### The Carrier Unit's Proprietary Documents and Proprietary Computer Code

*171. The Carrier Unit's Confidential and Proprietary Trade Secret Information contains: technical, sales, marketing, and other information and files (the "Proprietary Documents"); and computer code and architecture including, but not limited to, source code, object code and assembly code (the "Proprietary Computer Code").*

171. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*172. UTStarcom has complied in all respects with the provisions of the copyright laws of the United States and has secured the exclusive rights and privileges in and to the copyrights in certain Proprietary Documents and Proprietary Computer Code.*

172. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*173. On November 14, 2007, UTStarcom obtained United States copyright registrations for each of the following Proprietary Documents with the United States Copyright Office:*

a. *1X-Data Network Solution: System Requirement Documentation, U.S. Copyright Reg. No. TXu 1-569-583. A true and correct copy of the registration is attached hereto as Exhibit E;*

b. *3G 3.0 PDSN Performance, Preliminary Report # 1, U.S. Copyright Reg. No. TXu 1-569-585. A true and correct copy of the registration is attached hereto as Exhibit F;*

c. *3G 3.0 PDSN Performance, Preliminary Report # 2, U.S. Copyright Reg. No. TXu 1-569-625. A true and correct copy of the registration is attached hereto as Exhibit G;*

d. *3G PDSN Performance in 3G Networks, Report # 1, U. S. Copyright Reg. No. TXu 1-569-624. A true and correct copy of the registration is attached hereto as Exhibit H;*

e. *3G PDSN Performance, Report # 2, U.S. Copyright Re. No. TXu 1-569-616. A true and correct copy of the registration is attached hereto as Exhibit I;*

f. *3G PDSN Performance, Report # 3, U.S. Copyright Re. No. TXu 1-569-617. A true and correct copy of the registration is attached hereto as Exhibit J;*

g. *3G PDSN Performance, Report # 4, , U.S. Copyright Re. No. TXu 1-569-621. A true and correct copy of the registration is attached hereto as Exhibit K;*

h. *3G PDSN Performance, Report # 5, U.S. Copyright Re. No. TXu 1-569-623. A true and correct copy of the registration is attached hereto as Exhibit L;*

i. *Feature Functional Document: Common Element Manager (CEM) Total Control, 3G Data Network Solution, Wireless 3G Release 3.0, U.S. Copyright Re. No. TXu 1-569-602. A true and correct copy of the registration is attached hereto as Exhibit M;*

j. *Foreign Agent Control Node Technical White Paper, U.S. Copyright Reg. No. TXu 1-569-615. A true and correct copy of the registration is attached hereto as Exhibit N;*

    **k.**   *Managing the CommWorks Wireless System with CommWorks Common Element Manager, U.S. Copyright Re. No. TXu 1-569-614 . A true and correct copy of the registration is attached hereto as Exhibit O;*

    **l.**   *Project Concept Document: CommWorks 5000 3G Wireless Adapter R1, U.S. Copyright Re. No. TXu 1-569-582. A true and correct copy of the registration is attached hereto as Exhibit P;*

    **m.**   *PDSN SOFTWARE REQUIREMENTS SPECIFICATION, Revision 1.1, U.S. Copyright Re. No. TXu 1-569-587. A true and correct copy of the registration is attached hereto as Exhibit Q;*

    **n.**   *Product Requirements Definition: CommWorks 4302 Foreign Agent Control Node (FACN), 3G Data Network Solution, U.S. Copyright Re. No. TXu 1-569-589. A true and correct copy of the registration is attached hereto as Exhibit R;*

    **o.**   *Product Requirements Definition: SBR/AWE version 1.6, 3G v.2.0, U.S. Copyright Re. No. TXu 1-569-591. A true and correct copy of the registration is attached hereto as Exhibit S;*

    **p.**   *Product Requirements Definition: Total Control 1000 Packet Data Serving Node (PDSN), 3G Data Network Solution, U.S. Copyright Re. No. TXu 1-569-593. A true and correct copy of the registration is attached hereto as Exhibit T;*

    **q.**   *Product Requirements Definition: Total Control Manager for 3G, PDSN Manager, AAA Server, 3G Data Core Network Management, U.S. Copyright Re. No. TXu 1-569-594. A true and correct copy of the registration is attached hereto as Exhibit U;*

*r.        Product Requirements Definition: Total Control, CommWorks 3G Data Network Solution, Wireless 3G Release 2.0, Version 1.0, U.S. Copyright Re. No. TXu 1-569-595. A true and correct copy of the registration is attached hereto as Exhibit V;*

*s.        System Functional Specification: 3G Packet Data Serving Node, Revision 1.3, U.S. Copyright Re. No. TXu 1-569-597. A true and correct copy of the registration is attached hereto as Exhibit W;*

*t.        Software Functional Specification: Common Element Manager Technology Project, Revision 1.12, U.S. Copyright Re. No. TXu 1-569-586. A true and correct copy of the registration is attached hereto as Exhibit X;*

*u.        STG Performance Report for 3G 3.0 PDSN, U.S. Copyright Re. No. TXu 1-569-626. A true and correct copy of the registration is attached hereto as Exhibit Y; and*

*v.        Total Control 1000 Enhanced Data System: Management MIB Reference, U.S. Copyright Re. No. TXu 1-569-578. A true and correct copy of the registration is attached hereto as Exhibit Z.*

173.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*174.    On November 14, 2007, UTStarcom obtained U.S. Copyright registrations for the following Proprietary Computer Code with the United States Copyright Office:*

*a.        AAA INTERFACE MIB DEFINITION, U.S. Copyright Re. No. TXu 1-569-630. A true and correct copy of the registration is attached hereto as Exhibit AA;*

*b.        CALL CONTROL MIB DEFINITION, U.S. Copyright Re. No. TXu 1-569-631. A true and correct copy of the registration is attached hereto as Exhibit BB;*

        c.        *FACN MIB DEFINITION, U.S. Copyright Re. No. TXu 1-569-654.  A*
*true and correct copy of the registration is attached hereto as Exhibit CC;*

        d.        *HA IP ROUTING MIB DEFINITION, U.S. Copyright Re. No. TXu*
*1-569-657.  A true and correct copy of the registration is attached hereto as Exhibit DD;*

        e.        *HA MOBILE IP AND HACN INTERFACE MIB DEFINITION, U.S.*
*Copyright Re. No. TXu 1-569-656.  A true and correct copy of the registration is attached hereto*
*as Exhibit EE;*

        f.        *HA MOBILE IP MIB DEFINITION, U.S. Copyright Re. No. TXu*
*1-569-639.  A true and correct copy of the registration is attached hereto as Exhibit FF;*

        g.        *HACN FUNCTION MIB DEFINITION, U.S. Copyright Re. No. TXu*
*1-569-655.  A true and correct copy of the registration is attached hereto as Exhibit GG;*

        h.        *MIB DEFINITIONS CALL-INITIATION PROCESS, U.S. Copyright*
*Re. No. TXu 1-569-580.  A true and correct copy of the registration is attached hereto as Exhibit*
*HH;*

        i.        *PDSN - FACN INTERFACE MIB DEFINITION FROM THE PDSN,*
*U.S. Copyright Re. No. TXu 1-569-664.  A true and correct copy of the registration is attached*
*hereto as Exhibit II;*

        j.        *PDSN FOREIGN AGENT MIB DEFINITION, U.S. Copyright Reg. No.*
*TXu 1-569-663.  A true and correct copy of the registration is attached hereto as Exhibit JJ;*

        k.        *PDSN IP ROUTING MIB DEFINITION, U.S. Copyright Re. No. TXu*
*1-569-660 .  A true and correct copy of the registration is attached hereto as Exhibit KK;*

        l.        *USR_IP MIB, U.S. Copyright Re. No. TXu 1-569-641.  A true and*
*correct copy of the registration is attached hereto as Exhibit LL;*

*m. USR-FA-MIB DEFINITIONS, U.S. Copyright Re. No. TXu 1-569-658 .*

*A true and correct copy of the registration is attached hereto as Exhibit MM;*

*n. USR-FCNI-MIB DEFINITIONS, U.S. Copyright Re. No. TXu*

*1-569-662.  A true and correct copy of the registration is attached hereto as Exhibit NN;*

*o. USR-USER-MAN-MIB DEFINITIONS, U.S. Copyright Re. No. TXu*

*1-569-627.  A true and correct copy of the registration is attached hereto as Exhibit OO; and*

*p. USR-VHA-MIB DEFINITIONS, U.S. Copyright Re. No. TXu 1-569-659.*

*A true and correct copy of the registration is attached hereto as Exhibit PP.*

174. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**The Carrier Unit's Protection Of Confidential and Proprietary Trade Secret Information**

*175. The Carrier Unit instituted Confidential and Proprietary Trade Secret Information protection policies (the "Policies").  The Policies were historically instituted and have been continuously followed to ensure that access to the Confidential and Proprietary Trade Secret Information is limited, and its confidentiality is protected and maintained because of its substantial value.*

175. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*176. As a condition of employment with the Carrier Unit, all employees are required to sign agreement(s) that contain non-disclosure and non-solicitation provisions.  Upon information and belief, each of the Individual Defendants signed one or more of the following agreements: an employee agreement (the "Employee Agreement"); a conflicts, confidential information and assignment of inventions agreement (the "Confidential*

*Agreement"); and the propriety information and assignment of inventions agreement (the "Assignment Agreement") (collectively, the "Employment Agreements").*

176.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*177.    Among other things, the provisions within the Employment Agreements: (a) prohibit current and former employees from disclosing any Confidential and Proprietary Trade Secret Information to any outside party; (b) require employees, upon their resignation or termination, to return all Carrier Unit materials in their possession; (c) require employees to disclose and assign all intellectual property they develop during, through or as a result of their employment with the Carrier Unit; (d) preclude the solicitation or encouragement of the solicitation of Carrier Unit employees during, and for one calendar year preceding, their disassociation from the Carrier Unit; and (e) require employees to avoid and disclose actual or potential conflicts.*

177.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*178.    The Employee Agreement and/or the Confidential Agreement contain additional terms prohibiting employees who signed these agreements from soliciting or encouraging the solicitation of the Carrier Unit's current or past customers for a period of six (6) months following the employees' resignation or termination from the Carrier Unit. The Employment Agreements provided for the assignment of the Employment Agreements to UTStarcom, with the acquisition of the Carrier Unit.  The Employment Agreements were so assigned.*

178.    The subject matter of this paragraph is moot because Judge Lindberg's Order dated March 24, 2009 (D.I. 301) dismissed the relevant Counts.

*179.    The employees of the Carrier Unit had and have restricted access to Confidential and Proprietary Trade Secret Information.  Such access was and is determined on a primarily need-to-know basis.  To effect the restricted access, the Carrier Unit provides electronic key cards and multiple layers of computer passwords.*

179.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*180.    The Carrier Unit has provided: brochures describing its policies to all new employees; company-wide intranet access to these brochures; and copies of its Policies to all employees.  It also has carefully kept its Confidential and Proprietary Trade Secret Information confidential and has policed and enforced its rights in its Confidential and Proprietary Trade Secret Information.*

180.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**Starent's Unauthorized Acquisition Of The Carrier Unit's Confidential and Proprietary Trade Secret Information And Its Protected And Protectable Intellectual Property**

*181.    Upon information and belief, in 2003, Starent began to sell the ST Products, which continue to be the only products Starent offers for sale.  Upon information and belief, the ST Products were launched using a significant portion of the Carrier Unit's Confidential and Proprietary Trade Secret Information as the basis for the design and development of the ST16.  Starent did not independently develop the ST16 product from the ground up, but instead wrongfully acquired the Carrier Unit's Confidential and Proprietary Trade Secret*

*Information and used this Confidential and Proprietary Trade Secret Information to*
*expedite the design, development, launch, and market penetration of the ST Products.*

181. Defendant admits that Starent sells ST products, but has no knowledge of any use or
acquisition by Starent of 3Com Confidential and Proprietary Trade Secret Information, and
therefore denies that allegation. Defendant is without knowledge or information sufficient to form
a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies
them.

*182. Upon information and belief, Starent has further engaged in raiding key*
*personnel and employees of the Carrier Unit. Beginning at least as early as August 28, 2000,*
*and continuing to at least as late as October 4, 2004, Starent engaged in a deliberate and*
*calculated pattern and practice of soliciting and hiring the Carrier Unit's key personnel,*
*notwithstanding the Employment Agreements.*

182. Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.

*183. Upon information and belief, Starent has solicited and/or hired at least*
*twenty-five (25) key personnel of the Carrier Unit including, but not limited to the:*
*principal, lead and senior engineers for the Carrier Unit; principal architect and product*
*manager of the Network Products for the Carrier Unit; manager of global strategic*
*technology for the Carrier Unit; Director of Wireless Product Management for the Carrier*
*Unit; Director of Product Management for the Carrier Unit; network consultants and*
*product managers for the Carrier Unit; the head of proposals and technical writers for the*
*Carrier Unit; marketing and public relations managers for the Carrier Unit; General*
*Manager of Latin America for the Carrier Unit; and the North American Director of Sales*

*for Wireless Products for the Carrier Unit, as well as senior, key members of this individual's sales staff.*

183.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***184.    Upon information and belief, Starent hired these key personnel and placed them into the identical or substantially similar positions as they had with the Carrier Unit, with the calculated knowledge and strategic desire that the Individual Defendants would perform the same or substantially similar job duties.  Upon information and belief, the Individual Defendants have performed and/or continue to perform the identical or substantial similar job duties for Starent that they performed for the Carrier Unit.***

184.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

***185.    Each of the Individual Defendants, during the course and scope of their employment with the Carrier Unit, was a key employee who had secure access to and acquired valuable Confidential and Proprietary Trade Secret Information.  Each of the Individual Defendants acquired Confidential and Proprietary Trade Secret Information pertaining to the Carrier Unit's Network Products, engineering, research and development, manufacturing, marketing, and sales of the Network Products.***

185.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*186.    Upon information and belief, Starent carried out its corporate raid of Carrier Unit employees for the improper strategic purpose of utilizing the Carrier Unit's Confidential and Proprietary Trade Secret Information in order to,* inter alia*, significantly accelerate the normal product development life cycle, develop its ST Products and its sales and marketing channels, and marketing penetration.  Upon information and belief, each of the Individual Defendants, with the exception of Wininger, provided Starent with the Confidential and Proprietary Trade Secret Information they acquired without permission from the Carrier Unit, as set forth in each individual defendant's particularized paragraphs contained herein.*

186.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**Starent's Use And Unauthorized Public Disclosure Of The Carrier Unit's Confidential And Proprietary Trade Secret Information And Its Protected And Protectable Intellectual Property**

*187.    Starent has engaged in a pattern of improperly and unlawfully acquiring, copying, using and/or publicly disclosing the Carrier Unit's Confidential and Proprietary Trade Secret Information.*

187.    Defendant has no knowledge of any acquisition, copying, use or disclosure by Starent of 3Com Confidential and Proprietary Trade Secret Information, and therefore denies the allegations set forth in this Paragraph.

*188.    The invention disclosed in Starent's patent application entitled "Managing resources for IP networks," U.S. Patent Appl. Serial No. 10/679,938, filed October 6, 2003 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/416,151, filed October 4, 2002), and published as U.S. Patent Appl. Pub. No. 2004/0250159 on December 9, 2004*

*("Starent's 2004/0250159 application"), is owned by UTStarcom. This invention was co-invented by Defendant Harper and other Carrier Unit employees while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of software replication in UTStarcom's patent, U. S. Patent No. 6,560,217 ("the '217 patent"), which was co-invented by Defendant Harper.*

188.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*189.    The invention disclosed in Starent's patent application entitled "Method and systems for providing improved handoffs in a wireless communication system," U.S. Patent Appl. Serial No. 11/893,846, filed July 19, 2004 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/488,152, filed on July 17, 2003), and published as U.S. Patent Appl. Pub. No. 2005/0025132 on February 3, 2005 ("Starent's 2005/0025132 application"), is owned by UTStarcom. This invention was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of handoffs, which was previously patented in UTStarcom's patent, U.S. Patent No. 7,154,868 ("the '868 patent").*

189.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*190.    The invention disclosed in Starent's patent application entitled "Reduced data session establishment time in CDMA-2000 networks," U.S. Patent Appl. Serial No. 10/797,646, filed March 10, 2004 and published as U.S. Patent Appl. Pub. No. 2005/0204043 on September 15, 2005 ("Starent's 2005/0204043 application"), is owned by UTStarcom. This invention was co-invented by Defendants Harper and Puthiyandyil and another former*

*employee of the Carrier Unit while these individuals were employees of the Carrier Unit,*
*and was implemented by UTStarcom in its Core Data Products more than one year prior to*
*Starent's filing of this patent application.*

190.    The subject matter of this Paragraph is moot because it relates solely to Counts that
were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

***191.    The invention disclosed in Starent's patent application entitled "Method and***
*system for traffic redirection for prepaid subscriber sessions in a wireless network," U.S.*
*Patent Appl. Serial No. 11/439,077, filed May 23, 2006 (claiming priority to U.S. Provisional*
*Patent Appl. Serial No. 60/683,580, filed on May 23, 2005), and published as U.S. Patent*
*Appl. Pub. No. 2006/0276170 on December 7, 2006 ("Starent's 2006/0276170 application"),*
*is owned by UTStarcom.  This invention was invented by Defendant Radhakrishnan and*
*another former employee of the Carrier Unit while they were employees of the Carrier Unit,*
*and is taught by UTStarcom's implementation of prepaid subscriber services, which was*
*previously patented in UTStarcom's patent, U.S. Patent No. 6,829,473 ("the '473 patent")*
*and related patent applications.*

191.    The subject matter of this Paragraph is moot because it relates solely to Counts that
were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

***192.    The invention disclosed in Starent's patent application entitled "Quality of***
*service update procedure," U.S. Patent Appl. Serial No. 11/500,552, filed August 7, 2006*
*(claiming priority to U.S. Provisional Patent Appl. Serial No. 60/705,983, filed on August 5,*
*2005; U.S. Provisional Patent Appl. Serial No. 60/707,363, filed on August 11, 2005; and U.S.*
*Provisional Patent Appl. Serial No. 60/740,733, filed on November 30, 2005), and published*
*as U.S. Patent Appl. Pub. No. 2007/0036078 on February 15, 2007 ("Starent's 2007/0036078*

*application"), is owned by UTStarcom.  This invention was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of quality of service, which was previously patented in UTStarcom's patent, U.S. Patent No. 6,940,836 ("the '836 patent").*

192.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*193.    The invention disclosed in Starent's patent application entitled "System and method for a policy enforcement point interface," U.S. Patent Appl. Serial No. 11/584,450, filed October 20, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/729,415, filed on October 20, 2005; U.S. Provisional Patent Appl. Serial No. 60/777,960, filed on March 1, 2006; and U.S. Provisional Patent Appl. Serial No. 60/780,023, filed on March 6, 2006), and published as U.S. Patent Appl. Pub. No. 2007/0094712 on April 26, 2007 ("Starent's 2007/0094712 application"), is owned by UTStarcom.  This invention was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by Confidential and Proprietary Trade Secret Information contained in UTStarcom internal document(s) that, upon information and belief, were improperly acquired by the Individual Defendants.*

193.    The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*194.    The invention disclosed in Starent's patent application entitled "Internet protocol tunneling on a mobile network," U.S. Patent Appl. Serial No. 11/598,875, filed November 14, 2006 (claiming priority to U.S. Provisional Patent Appl. Serial No. 60/738,503, filed on November 21, 2005), and published as U.S. Patent Appl. Pub. No. 2007/0189219 on*

*August 16, 2007 ("Starent's 2007/0189219 application"), is owned by UTStarcom. This invention was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of facilitating use of multiple communication protocols, for which UTStarcom has filed a patent application entitled "Method to facilitate use of multiple communication protocols in a communication network," U.S. Patent Appl. Serial No. 10/997,502, filed November 24, 2004, and published as U.S. Patent Appl. Pub. No. 2006/0168110 on July 27, 2006 ("UTStarcom's 2006/0168110 application").*

194. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*195. The invention disclosed in Starent's patent, U.S. Patent No. 6,985,464, entitled "Managing packet data interconnections in mobile communications" ("Starent's '464 patent") is owned by UTStarcom. Upon information and belief, the invention was invented by Defendant Harper and another former employee of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of managing foreign agent selections that was previously patented in the '905 patent. Starent filed its patent about six weeks after UTStarcom. In addition, upon information and belief, Defendant Sirota was the Carrier Unit employee that signed off on the invention disclosure document for the Carrier Unit.*

195. The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

### Starent And The Individual Defendants Have Conspired Together
### To The Significant Financial Detriment Of UTStarcom

*196.     Upon information and belief, the Individual Defendants who were working for the Carrier Unit after accepting employment at Starent, or who had been solicited by or were communicating with Starent while continuing to work for the Carrier Unit, intercepted from Vivo (the largest mobile telecommunications operator in the Southern Hemisphere and an existing customer of the Carrier Unit) at least one significant request for proposal meant for the Carrier Unit.  Because of the interception, the Carrier Unit did not receive the request for proposal for its representatives.  These actions were taken by these Individual Defendants without the knowledge, approval or permission of the Carrier Unit, and denied the Carrier Unit an opportunity to enter into additional agreements with an existing client, all to the significant detriment of the Carrier Unit.  Upon information and belief, such activity was conducted under the direction, knowledge and approval of Starent.*

196.     Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

*197.     Upon information and belief, the Individual Defendants who left the Carrier Unit to work for Starent (or who were intending to work for Starent but had not yet left) solicited other key employees to seek employment at Starent, in direct violation of their fully executed Employment Agreements.*

197.     The subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

*198.     Upon information and belief, such activity was conducted under the direction, knowledge and approval of Starent, for the purpose of both weakening the Carrier Unit and*

***furthering Starent's improper scheme to acquire the Carrier Unit's employees, customers,
and Confidential and Proprietary Trade Secret Information.***

198.   Defendant is without knowledge or information sufficient to form a belief as to the
truth of the allegations set forth in this Paragraph and, therefore, denies them.  Further, some of the
subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by
Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

***199.     Upon information and belief, Starent:  (a) was and continues to be aware that
the Individual Defendants acquired the Confidential and Proprietary Trade Secret
Information without permission; (b) had actual and/or constructive knowledge of the
unauthorized acquisition of the Confidential and Proprietary Trade Secret Information by
its new employees; (c) in certain circumstances directed and encouraged the unauthorized
acquisition of the Confidential and Proprietary Trade Secret Information by its new
employees, which occurred during the Individual Defendants' employment at Starent; (d)
subsequently utilized and/or publicly disclosed, and continues to utilize and/or publicly
disclose, the Confidential and Proprietary Trade Secret Information in the engineering,
research and development, manufacturing, marketing, and sales of its ST Products; (e)
intercepted at least one "request for business proposal" that was delivered to the Carrier
Unit and instead responded to the proposal itself, without the knowledge of the Carrier
Unit; and (f) encouraged or ratified the Carrier Unit employees' activities in directly
soliciting other key employees of the Carrier Unit to join Starent, in violation of the
Employment Agreements.***

199.   Defendant denies the allegations set forth in this Paragraph as they apply to him,
and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as

they relate to the other Defendants and, therefore, denies them. Further, some of the subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

**200.    *The above mentioned activities were carried out by Starent and the Individual Defendants without the knowledge, permission or consent of UTStarcom, and to the significant detriment of UTStarcom which, upon information and belief, is believed to be in the hundreds of millions of dollars.***

200.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them. Further, much of the subject matter of this Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

### COUNT I
### VIOLATION OF THE ILLINOIS TRADE SECRET ACT
**(Against Defendants Starent, Kelly, Zarich, Schoener, Capener, Charath, Eliason, Espy, Gabel, Harper, Lopez, Puthiyandyil, Radhakrishnan, Ramankutty, Rygula, Shieh, Sirota, Tiwari, and Wininger)**

**201.    *UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 200 of this Complaint.***

201.    Defendant repeats his answer to Paragraphs 1 through 200 as if fully set forth herein.

**202.    *The Confidential and Proprietary Trade Secret Information described herein constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. ("the Act").***

202.    Denied.

**203.    *The Defendants removed, used and/or disclosed the trade secret information that belongs to UTStarcom. The Defendants' actions, as alleged herein, constitute***

*misappropriation of UTStarcom's trade secrets under the Act. The Defendants' actions, as alleged herein, also constitute a continuing threat of misappropriation.*

203. Defendant denies the allegations set forth in this Paragraph as they apply to him, and has no knowledge or information that any other Defendant misappropriated trade secrets and, therefore, denies the remaining allegations.

*204. Defendant Starent, upon information and belief, sought out and acquired the Carrier Unit's Confidential and Proprietary Trade Secret Information, including but not limited to technical specifications, design information, development information, marketing presentations and information, customer contact information, and other information, and, on behalf of and/or with the knowledge of Starent, utilized the Carrier Unit's Confidential and Proprietary Trade Secret Information without any license to design, develop, and manufacture the ST16 and market it to the Carrier Unit's existing clients and potential clients. The Confidential and Proprietary Trade Secret Information utilized by Starent includes but is not limited to the trade secrets information contained in the following documents:*

- *The trade secrets contained in Ex. 2 to the Plaintiff's Trade Secrets at Issue, dated August 30, 2007, which were found by the Special Master to be a sufficient identification of trade secrets;*
- *3Com Wireless Data Overview for SPCS July 28 00.jpg;*
- *Wireless 3G 2.0 Price List 03.11.02.xls;*
- *PDSN and HA Performance 5-09-02;*
- *CommWorks price list 05-23-02.xls;*
- *PDSN and HA PerformanceFinal6-18-02.zip;*

- ***Carrier/administrative/NASales&NCOrgChartJuly02.ppt;***

- ***R4.0 customer presentation [Verizon Wireless] 07-03-02.ppt;***

- ***schedule7-18-02.doc;***

- ***3GConCall072302.ppt.***

- ***CommWorks Wireless Business Unit: All Hands Meeting, Oct. 23, 2002;***

- ***Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;***

- ***CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;***

- ***Sprint PCS & CommWorks Executive Review, Nov. 14, 2002;***

- ***CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 14, 2002;***

- ***Project Concept document for K-PDSN (S0052).doc; and***

- ***Vpn-wireless-zip.ZIP.***

204.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***205.    Defendant Kelly was a Network Consultant for the Carrier Unit, where he had access to and specific knowledge of the Carrier Unit's projects in development, its successes and test results, its cost information, its client lists and potential client lists, its technical specification information and other information.***

205.    Defendant admits that Mr. Kelly was a network consultant for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

***206. Defendant Kelly met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with the Carrier Unit's Confidential and Proprietary Trade Secret Information concerning Carrier Unit customers and/or potential customers including but not limited to Byte Mobile, KDDI, China Unicom, Samsung, Sprint, Verizon Wireless.***

206. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***207. On November 11, 2002, Mr. Kelly resigned from the Carrier Unit. Mr. Kelly – after giving his resignation to the Carrier Unit – downloaded to Starent more than 3,000 Carrier Unit files containing the Carrier Unit's Confidential and Proprietary Trade Secret Information that he had wrongfully transferred to his Carrier Unit computers. These downloads were so massive that they had to be executed multiple times before the complete downloading was successful. It was only after the Carrier Unit files were successfully downloaded to Starent and Mr. Kelly had attempted to erase the files and evidence of the downloading that Mr. Kelly turned in his Carrier Unit computers.***

207. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***208. Mr. Kelly specifically utilized the Confidential and Proprietary trade secret information he misappropriated – including the project information, test results and cost information, and the above specifically-named documents – to assist in the development process of the ST16 and to solicit the Carrier Unit's customers on behalf of Starent and/or as***

*a co- conspirator of Starent, including but not limited to Byte Mobile, China Unicom,*

*Samsung, Sprint, and others.*

208.    Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in this Paragraph and, therefore, denies them.

*209.     Defendant Zarich, upon information and belief, was employed as a salesman*

*for the Carrier Unit, and had detailed knowledge of the Carrier Unit's customers and*

*potential customers, development and implementation of product features, product pricing*

*structures, capabilities, performances and weaknesses.  Prior to leaving the Carrier Unit on*

*November 25, 2002, Mr. Zarich printed approximately 847 pages of files from the computer*

*issued to him by the Carrier Unit.  Upon information and belief, these files included, but are*

*not limited to:*

- *CommWorks Wireless Business Unit:  All Hands Meeting, Oct. 23, 2002;*

- *Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;*

- *CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 1, 2002;*

- *Sprint PCS & CommWorks Executive Review, Nov. 14, 2002; and*

- *CommWorks Pipeline Opportunity Report Wireless Americas, Nov. 14, 2002.*

209.    Defendant admits that he worked in sales for 3Com, and that he left 3Com on or

around November 25, 2002.  Defendant is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies

them.

***210.    Upon information and belief, Mr. Zarich also routinely met with Carrier Unit customers and potential customers, including Sprint.  Upon joining Starent, Mr. Zarich, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to Sprint to purchase the Starent Products.  Upon information and belief, Mr. Zarich specifically utilized the Confidential and Proprietary trade secret information he had access to – including the project information, test results and cost information – to "pitch" Sprint on behalf of Starent and/or as a co-conspirator of Starent.***

210.    Defendant admits that he met with Sprint, while employed at 3Com and Starent. Defendant denies he used any 3Com confidential and proprietary trade secret information at Starent.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

***211.    Defendant Schoener began working for the Carrier Unit on December 15, 1997, where he was the Director of Software Development, where he had access to and did misappropriate the Carrier Unit's at least five (5) years of wireless product development work (e.g., including product development information, technical information, and testing information), and other technical confidential and proprietary trade secret information in order to acquire the five (5) years' worth of product development, marketing and sales information for the purpose of its use to 3Com and develop Starent's ST16 carrier business product and business.***

211.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***212.   Defendant Capener was a marketing manager for the Carrier Unit, where he had access to the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information.  Upon information and belief, Mr. Capener utilized the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent to directly market of Starent's ST16 products to the Carrier Unit's customers and potential customers.***

212.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***213.   Defendant Charath was a product manager and engineer for the Carrier Unit, where he had access to the Carrier Unit's technical specifications, design information, confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information.  He also had contact with Carrier Unit customers and potential customers.  Upon information and belief, Mr. Charath utilized the Carrier Unit's technical specifications, design information, confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.***

213.   Defendant admits that Mr. Charath was a product manager for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

***214.   Defendant Eliason was a product manager for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information.  He also had contact with Carrier Unit customers and potential customers.  Upon information and belief, Mr. Eliason utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.***

214.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***215.   Defendant Espy was the North American Director of Sales for Wireless Products for the Carrier Unit, he had access to detailed product development information and documents, the Carrier Unit's customers and potential customers, product pricing structures, product capabilities, performances, weaknesses and other Carrier Unit Confidential and Proprietary Trade Secret Information.  Upon information and belief, Mr. Espy began providing the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent representatives prior to his resignation from the Carrier Unit, as well as to at least one representative from at least one wireless company other than Starent, who was the Director of Wireless Planning for this company.  Upon information and belief, Mr. Espy utilized the Carrier Unit's product pricing structures, product capabilities, performances, weaknesses and other Carrier Unit Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent to market Starent's ST16 product to the Carrier Unit's customers and potential customers, including but not limited to China Unicom.***

215.    Defendant admits Mr. Espy was the North American Director of Sales for Wireless Products for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**216.    Defendant Gabel was a network consultant for the Carrier Unit, where he had access to the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information.  Upon information and belief, Mr. Gabel provided the Carrier Unit's Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development, creation, and direct marketing of Starent's ST16 product to the Carrier Unit's customers and potential customers, including but not limited to Sprint.**

216.    Defendant admits that Mr. Gabel was a network consultant for 3Com.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

**217.    Defendant Harper was a senior consulting engineer for the Carrier Unit, an inventor and architect for the hardware and software platforms for the Carrier Unit.  He had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information belonging to the Carrier Unit.  Upon information and belief, Mr. Harper provided the Carrier Unit's technical product and sales information, product development plans and information,**

*pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.*

217.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**218.   Defendant Lopez was a senior product manager for the Carrier Unit.  As a product manager, he had access to the Carrier Unit's confidential project information, cost information, and other confidential information, including client contact information and presentations.  He also routinely met with Carrier Unit customers and potential customers. Upon information and belief, Mr. Lopez utilized this information to solicit the Carrier Unit's customers and existing customers, including but not limited to US Cellular, on behalf of Starent and/or as a co-conspirator of Starent.**

218.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**219.   Defendant Puthiyandyil was a principal engineer for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information belonging to the Carrier Unit.  Upon information and belief, Mr. Puthiyandyil provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to**

*assist and/or conspire with Starent in the development and creation of Starent's ST16 product.*

219.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***220.   Defendant Radhakrishnan was a principal engineer for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information belonging to the Carrier Unit.  Upon information and belief, Mr. Radhakrishnan provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.***

220.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

***221.   Defendant Ramankutty was a lead/software engineer for the Carrier Unit, where he had access to the Carrier Unit's confidential project information, confidential design and engineering information, confidential cost information, confidential data provided to customers, and other Confidential and Proprietary Trade Secret Information belonging to the Carrier Unit.  Upon information and belief, Mr. Ramankutty provided the Carrier Unit's technical product and sales information, product development plans and information, pricing information, as well as the Carrier Unit's Confidential and Proprietary***

*Trade Secret Information to Starent immediately upon being hired by Starent, in order to assist and/or conspire with Starent in the development and creation of Starent's ST16 product.*

221.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them. xxx

*222.   Defendant Rygula was a technical writer and a product manager for the Carrier Unit, where he had access to the Carrier Unit's technical specifications, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information.  He also had contact with Carrier Unit customers and, upon information and belief, with potential customers.  Upon information and belief, Mr. Rygula utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product.*

222.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*223.   Defendant Shieh was a principal architect and product manager for the Carrier Unit, where he had access to the Carrier Unit's technical specifications, development, design and engineering information, engineering and functional compliance information, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information.  He also had contact with Carrier Unit customers and with potential customers in order to present information concerning the*

*Carrier Unit's core data products. Upon information and belief, Mr. Shieh utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product to the Carrier Unit's customers and potential clients, including but not limited to China Unicom and KDDI.*

223. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*224. Defendant Sirota was director of product management for the Carrier Unit, where he had access to the Carrier Unit's technical specifications, development, design and engineering information, engineering and functional compliance information, confidential project information, technical and testing information, cost information, sales and marketing information, confidential client information, and other Confidential and Proprietary Trade Secret Information. He also had contact with Carrier Unit customers and with potential customers in order to present information concerning the Carrier Unit's core data products. Upon information and belief, Mr. Sirota utilized the Carrier Unit's confidential project information, cost information, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent in the development and post-sale marketing of its ST16 product to the Carrier Unit's customers and potential clients.*

224. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

*225. Defendant Tiwari was the Director of Product Management for the Carrier Unit. As a product manager, he had access to the Carrier Unit's confidential project*

*information, cost information, and other confidential information.  He also routinely met with Carrier Unit customers and potential customers, including Sprint.  Upon joining Starent, Defendant Tiwari, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to Sprint to purchase the Starent Products.  Upon information and belief, Mr. Tiwari specifically utilized the Confidential and Proprietary trade secret information he had access to – including the project information, test results and cost information – to assist in the development process of the ST16 and to "pitch" the Carrier Unit's customers on behalf of Starent and/or as a co-conspirator of Starent.*

225.    Defendant admits that Mr. Tiwari was a Director of Product Management for 3Com. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*226.    Defendant Wininger began working for the Carrier Unit on about August 5, 1996, where he was the head of proposals for the Carrier Unit.  where he had access to the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information.  Upon information and belief, Mr. Wininger utilized the Carrier Unit's confidential cost information, confidential internal data and testing information, product service information and details, product features and performance data, and other Confidential and Proprietary Trade Secret Information to assist and/or conspire with Starent to directly market of Starent's ST16 products to the Carrier Unit's customers and potential customers.*

226. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**227. Defendants have used and/or are likely to use trade secret information that belongs to UTStarcom. Defendants' actions constitute a misappropriation of trade secrets under the Act. Defendants' actions, as alleged herein, also constitute a continuing threat of misappropriation.**

227. Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**228. Section 3 of the Act authorizes the issuance of an injunction in the event of an actual or threatened misappropriation.**

228. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this Paragraph and, therefore, denies them.

**229. Defendants' actions with respect to UTStarcom's trade secrets have been and will continue to be willful.**

229. Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**230. Defendants' continued breaches of the Act have caused and will continue to cause UTStarcom to lose business and the goodwill, reputation, and confidence of the 3G wireless industry, for which UTStarcom cannot be compensated by money damages, thereby causing UTStarcom to sustain irreparable harm.**

230.    Defendant denies the allegations set forth in this Paragraph as they apply to him, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the other Defendants and, therefore, denies them.

**COUNT II**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,684,256**
**(Against Starent)**

*231.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 230 of this Complaint.*

*232.    The Carrier Unit owns the '256 patent.*

*233.    The '256 patent is entitled to a presumption of validity.*

*234.    Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271 (a), (b) and/or (c) one or more claims of the '256 patent by making, using, operating, offering for sale and/or selling within the United States the ST products which infringe one or more claims of the '256 patent.*

*235.    Upon information and belief, Starent has infringed and is still infringing in violation of 35 U.S.C. §§ 271(a) one or more claims of the '256 patent by using within the United States the ST Products within a number of testing facilities including, but not limited to, a testing facility operated by Sprint.*

*236.    Upon information and belief, despite Starent's actual or constructive knowledge of the '256 patent, Starent actively and intentionally induced infringement of one or more claims of the '256 patent by various customers including, but not limited to, Sprint, and is still actively inducing infringement of one or more claims of the '256 patent by those customers in violation of 35 U.S.C. §§ 271(b), by actively and knowingly aiding and abetting*

*direct infringement of one or more claims of the '256 patent by those customers through Starent's active encouragement of those customers to purchase its ST Products where the ST Products being made, used, operated, offered for sale and/or sold by those customers are neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '256 patent.*

*237.    Upon information and belief, Starent has contributorily infringed and is still contributorily infringing in violation of 35 U.S.C. §§ 271(c) one or more claims of the '256 patent by providing its ST Products to various customers including, but not limited to, Sprint as the ST Products comprise one or more material elements of an infringing product, method or system made, used, operated, offered for sale and/or sold within the United States by those customers where the ST Products being made, used, operated, offered for sale and/or sold by those customers are neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '256 patent.*

*238.    Upon information and belief, Starent's infringement of the '256 patent has been and continues to be willful and deliberate and with the full knowledge of the '256 patent.*

*239.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

*240.    As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

231-240.        Defendant need not respond as these allegations are directed to Starent.

**COUNT III**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,765,900**
**(Against Starent)**

*241. UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 230 of this Complaint.*

*242. The Carrier Unit owns the '900 patent.*

*243. The '900 patent is entitled to a presumption of validity.*

*244. Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271(a), (b) and/or (c) one or more claims of the '900 patent by making, using, operating, offering for sale and/or selling within the United States the ST products which infringe one or more claims of the '900 patent.*

*245. Upon information and belief, Starent has infringed and is still infringing in violation of 35 U.S.C. §§ 271(a) one or more claims of the '900 patent by using within the United States the ST Products within a number of testing facilities including, but not limited to, a testing facility operated by Sprint.*

*246. Upon information and belief, despite Starent's actual or constructive knowledge of the '900 patent, Starent actively and intentionally induced infringement of one or more claims of the '900 patent by various customers including, but not limited to, Sprint, and is still actively inducing infringement of one or more claims of the '900 patent by those customers in violation of 35 U.S.C. §§ 271(b), by actively and knowingly aiding and abetting direct infringement of one or more claims of the '900 patent by those customers through Starent's active encouragement of those customers to purchase its ST Products where the ST Products being made, used, operated, offered for sale and/or sold by those customers are*

*neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '900 patent.*

*247.    Upon information and belief, Starent has contributorily infringed and is still contributorily infringing in violation of 35 U.S.C. §§ 27l(c) one or more claims of the '900 patent by providing its ST Products to various customers including, but not limited to, Sprint as the ST Products comprise one or more material elements of an infringing product, method or system made, used, operated, offered for sale and/or sold within the United States by those customers where the ST Products being made, used, operated, offered for sale and/or sold by those customers are neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '900 patent.*

*248.    Upon information and belief, Starent's infringement of the '900 patent has been and continues to be willful and deliberate and with the full knowledge of the '900 patent.*

*249.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

*250.    As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

241-250.    Defendant need not respond as these allegations are directed solely to Starent.

**COUNT IV**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 6,963,582**
**(Against Starent)**

251.    *UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 230 of this Complaint.*

252.    *The Carrier Unit owns the '582 patent.*

253.    *The '582 patent is entitled to a presumption of validity.*

254.    *Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271 (a), (b) and/or (c) one or more claims of the '582 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '582 patent.*

255.    *Upon information and belief, Starent has infringed and is still infringing in violation of 35 U.S.C. §§ 271(a) one or more claims of the '582 patent by using within the United States the ST Products within a number of testing facilities including, but not limited to, a testing facility operated by Sprint.*

256.    *Upon information and belief, despite Starent's actual or constructive knowledge of the '582 patent, Starent actively and intentionally induced infringement of one or more claims of the '582 patent by various customers including, but not limited to, Sprint, and is still actively inducing infringement of one or more claims of the '582 patent by those customers in violation of 35 U.S.C. §§ 271(b), by actively and knowingly aiding and abetting direct infringement of one or more claims of the '582 patent by those customers through Starent's active encouragement of those customers to purchase its ST Products where the ST Products being made, used, operated, offered for sale and/or sold by those customers are*

*neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '582 patent.*

*257. Upon information and belief, Starent has contributorily infringed and is still contributorily infringing in violation of 35 U.S.C. §§ 271(c) one or more claims of the '582 patent by providing its ST Products to various customers including, but not limited to, Sprint as the ST Products comprise one or more material elements of an infringing product, method or system made, used, operated, offered for sale and/or sold within the United States by those customers where the ST Products being made, used, operated, offered for sale and/or sold by those customers are neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '582 patent.*

*258. Upon information and belief, Starent's infringement of the '582 patent has been and continues to be willful and deliberate and with the full knowledge of the '582 patent.*

*259. Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

*260. As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

251-260. Defendant need not respond as these allegations are directed solely to Starent.

**COUNT V**
**PATENT INFRINGEMENT**
**U.S. PATENT NO. 7,173,905**
**(Against Starent)**

261. *UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 230 of this Complaint.*

262. *The Carrier Unit owns the '905 patent.*

263. *The '905 patent is entitled to a presumption of validity.*

264. *Upon information and belief, Starent has infringed and is still infringing, and/or is actively inducing or contributing to the infringement by Starent's customers in violation of 35 U.S.C. §§ 271 (a), (b) and/or (c) one or more claims of the '905 patent by making, using, operating, offering for sale and/or selling within the United States the ST Products which infringe one or more claims of the '905 patent.*

265. *Upon information and belief, Starent has infringed and is still infringing in violation of 35 U.S.C. §§ 271(a) one or more claims of the '905 patent by using within the United States the ST Products within a number of testing facilities including, but not limited to, a testing facility operated by Sprint.*

266. *Upon information and belief, despite Starent's actual or constructive knowledge of the '905 patent, Starent actively and intentionally induced infringement of one or more claims of the '905 patent by various customers including, but not limited to, Sprint, and is still actively inducing infringement of one or more claims of the '905 patent by those customers in violation of 35 U.S.C. §§ 271(b), by actively and knowingly aiding and abetting direct infringement of one or more claims of the '905 patent by those customers through Starent's active encouragement of those customers to purchase its ST Products where the ST Products being made, used, operated, offered for sale and/or sold by those customers are*

*neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '905 patent.*

*267.    Upon information and belief, Starent has contributorily infringed and is still contributorily infringing in violation of 35 U.S.C. §§ 271(c) one or more claims of the '905 patent by providing its ST Products to various customers including, but not limited to, Sprint as the ST Products comprise one or more material elements of an infringing product, method or system made, used, operated, offered for sale and/or sold within the United States by those customers where the ST Products being made, used, operated, offered for sale and/or sold by those customers are neither staple articles nor commodities of commerce suitable for substantial noninfringing use with Starent's knowledge that such ST Products were made for a use that will infringe one or more claims of the '905 patent.*

*268.    Upon information and belief, Starent's infringement of the '905 patent has been and continues to be willful and deliberate and with the full knowledge of the '905 patent.*

*269.    Upon information and belief, Starent will continue its infringing activities unless enjoined by the Court.*

*270.    As a result of Starent's infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

261-270.    Defendant need not respond as these allegations are directed solely to Starent.

**COUNT VI**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS AND**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against Starent, Espy, Kelly, Lopez, Tiwari and Zarich)**

**NOW PARTIALLY DISMISSED**

*271.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 270 of this Complaint.*

271.     Defendant repeats and incorporates by this reference all of the answers in Paragraphs 1 through 270 of this Answer.

*272.     Based upon UTStarcom's long-standing and well-established relationships with its customers and its prior dealings with those customers, UTStarcom had a reasonable expectation that its existing business relationships would continue, and that UTStarcom would enter into additional valid agreements and business arrangements with its existing customers.*

272.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*273.     Defendants knew of UTStarcom's long-standing business relationships with its customers, and knew or should have known of UTStarcom's expectancy of entering into future agreements and business arrangements with them.  Defendants intended to and did in fact interfere with UTStarcom's long-standing business relationships with its customers.*

273.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on

misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301). Defendant further denies the remaining allegations set forth in this Paragraph as they apply to him, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations as they relate to the other Defendants and, therefore, denies them.

***274. Defendant Starent, upon information and belief, sought and did acquire confidential information concerning the Carrier Unit's confidential customer and/or potential information customers including, but not limited to, Alltel, Bell South International, Byte Mobile, KDDI, China Unicom, Samsung, Sprint, Verizon Wireless, and US Cellular, and solicited these Carrier Unit clients to purchase the ST16 from Starent.***

274. The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301). Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

***275. Defendant Espy, upon information and belief, met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with information concerning Carrier Unit customers and/or potential customers including but not limited to Alltel, Bell South International, Sprint, Verizon Wireless, and US Cellular, and subsequently upon being hired by Starent, upon information and belief, solicited these Carrier Unit clients on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers.***

275.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*276.     Defendant Kelly, upon information and belief, met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with information concerning Carrier Unit customers and/or potential customers including but not limited to Byte Mobile, KDDI, China Unicom, Samsung, Sprint, Verizon Wireless, and subsequently upon being hired by Starent, upon information and belief, solicited these Carrier Unit clients on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

276.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*277.     Defendant Lopez, upon information and belief, upon being hired by Starent, immediately began to solicit the Carrier Unit's customers and/or potential customers including but not limited to Sprint, that he had worked with while employed by the Carrier*

*Unit on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

277.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*278.     Defendant Tiwari, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to China Unicom that he had worked with while employed by the Carrier Unit on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

278.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph and, therefore, denies them.

*279.     Defendant Zarich, upon information and belief, immediately began to solicit the Carrier Unit's customers and/or potential customers including but not limited to Sprint that he had worked with while employed by the Carrier Unit on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

279.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant denies the remaining allegations set forth in this Paragraph.

**280.     By engaging in the actions alleged, Defendants intended to and did in fact prevent, without justification, UTStarcom's legitimate expectation that it would enter into additional agreements and/or business arrangements with at least one of its existing customers.**

280.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant further denies the remaining allegations set forth in this Paragraph as they apply to him, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations as they relate to the other Defendants and, therefore, denies them.

**281.     Defendants' conduct was willful, wanton and reckless and undertaken with callous disregard and indifference to UTStarcom's relationships with its existing customers. Defendants calculated to harm UTStarcom's business and conceal their activities in order to increase the likelihood of damages to UTStarcom.**

281.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant denies the remaining allegations set forth in this Paragraph as they

apply to him, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations as they relate to the other Defendants and, therefore, denies them.

**282.     UTStarcom has been damaged by Defendants' intentional interference with its existing business relationships and its prospective economic advantage.**

282.     The part of the subject matter of this Paragraph relating to any claim of intentional interference with business relations and prospective economic advantage based on misappropriation of trade secrets is moot according to Judge Lindberg's Order dated March 24, 2009 (D.I. 301).  Defendant further denies the remaining allegations set forth in this Paragraph as they apply to him, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this Paragraph as they relate to the other Defendants and, therefore, denies them.

<u>**COUNT VII DECLARATIONS OF OWNERSHIP**</u>
**(Against Starent)**

<u>**NOW DISMISSED**</u>

**283.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 282 of this Complaint.**

**284.     The invention disclosed in Starent's 2004/0250159 application was invented by Defendant Harper and other Carrier Unit employees (or Mr. Harper and other Carrier Unit employees were aware of the invention) while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of software replication in the '217 patent.**

**285.     To the extent that Starent's 2004/0250159 application contains any patentable inventions, such inventions were conceived (or Defendant Harper became aware of such inventions) while Mr. Harper was an employee of the Carrier Unit.**

286. *Accordingly, all rights in Starent's 2004/0250159 application should be assigned to UTStarcom.*

287. *The invention disclosed in Starent's 2005/0025132 application was invented by current and/or former employees of the Carrier Unit employees while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of handoffs, previously patented by UTStarcom in the '868 patent.*

288. *Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2005/0025132 application.*

289. *Continued prosecution of Starent's 2005/0025132 application is likely to cause further disclosure of UTStarcom's trade secrets.*

290. *Accordingly, Starent should be enjoined from further prosecution of Starent's 2005/0025132 application and all rights therein should be assigned to UTStarcom.*

291. *The invention disclosed in Starent's 2005/0204043 application was co-invented by Defendants Harper and Puthiyandyil and another former employee of the Carrier Unit while these individuals were employees of the Carrier Unit, and was implemented by UTStarcom in its Core Data Products more than one year prior to Starent's filing of this patent application.*

292. *Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2005/0204043 application.*

293. *Continued prosecution of Starent's 2005/0204043 application is likely to cause further disclosure of UTStarcom's trade secrets.*

294. *Accordingly, Starent should be enjoined from further prosecution of Starent's 2205/0204043 application and all rights therein should be assigned to UTStarcom.*

295.    The invention disclosed in Starent's 2006/0276170 application was invented by Defendant Radhakrishnan and another former employee of the Carrier Unit (or Mr. Radhakrishnan and other former employees of the Carrier Unit were aware of the invention) while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of prepaid subscriber services, which was previously patented by UTStarcom in the '473 patent and related patent applications.

296.    To the extent that Starent's 2006/0276170 application contains any patentable inventions, such inventions were conceived (or Defendant Radhakrishnan became aware of such inventions) while Mr. Radhakrishnan was an employee of the Carrier Unit.

297.    Accordingly, all rights in Starent's 2006/0276170 application should be assigned to UTStarcom.

298.    The invention disclosed in Starent's 2007/0036078 application was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of quality of service, which was previously patented in the '836 patent.

299.    To the extent that Starent's 2007/0036078 application contains any patentable inventions, such inventions were conceived by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit.

300.    Accordingly, all rights in Starent's 2007/0036078 application should be assigned to UTStarcom.

301.    The invention disclosed in Starent's 2007/0094712 application was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by Confidential and Proprietary Trade Secret Information

111

*contained in UTStarcom internal document(s) that, upon information and belief, were improperly acquired by the Individual Defendants.*

*302.    Starent intentionally disclosed UTStarcom's valuable trade secrets by filing Starent's 2007/0094712 application.*

*303.    Continued prosecution of Starent's 2007/0094712 application is likely to cause further disclosure of UTStarcom's trade secrets.*

*304.    Accordingly, Starent should be enjoined from further prosecution of Starent's 2007/0094712 application and all rights therein should be assigned to UTStarcom.*

*305.    The invention disclosed in Starent's 2007/0189219 application was invented by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of facilitating use of multiple communication protocols, for which UTStarcom has filed the UTStarcom 2006/0168110 application.*

*306.    To the extent that Starent's 2007/0189219 application contains any patentable inventions, such inventions were conceived by current and/or former employee(s) of the Carrier Unit while they were employees of the Carrier Unit.*

*307.    Accordingly, all rights in Starent's 2007/0189219 application should be assigned to UTStarcom.*

*308.    The inventions disclosed in Starent's '464 patent were invented by Defendant Harper and another former employee of the Carrier Unit (or Defendants Harper and another employee of the Carrier Unit were aware of the inventions) while they were employees of the Carrier Unit, and is taught by UTStarcom's implementation of managing foreign agent selections that was previously patented by UTStarcom in the '985 patent.*

*309. To the extent that there are any patentable improvements in Starent's '464 patent, such patentable improvements were conceived and/or known to Defendant Harper while he was employed by the Carrier Unit.*

*310. Accordingly, all rights in Starent's '464 patent should be assigned to UTStarcom.*

283-310. The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## COUNT VIII COPYRIGHT INFRINGEMENT
### (Against Starent)

*311. UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 310 of this Complaint.*

*312. Starent has infringed and will continue to infringe UTStarcom's copyrights in the Technical Documents identified in Paragraph nos. 1 through 310, above, by copying them or allowing them to be copied for use by Starent and/or other third parties, and/or to make derivative works for Starent and/or other third parties.*

*313. Starent has infringed and will continue to infringe UTStarcom's copyrights in the Proprietary Computer Codes identified in Paragraph nos. 1 through 310, above, by copying them or allowing them to be copied for use by Starent and/or other third parties, and/or to make derivative works for Starent and/or other third parties.*

*314. As a direct and proximate result of Starent's violations of UTStarcom's above- described copyrights, UTStarcom has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation and goodwill.*

*315. Pursuant to 17 U.S.C. § 502, UTStarcom is entitled to an injunction restraining Starent, its' officers, agents, and employees, and all persons acting in concert*

*with them, from infringing UTStarcom's copyrights, which actions are causing and will continue to cause injuries for which UTStarcom has no adequate remedy at law.*

*316.    UTStarcom is further entitled to recover from Starent the damages it has sustained and will sustain, and any gains, profits or advantages obtained by Starent as a result of its' acts of infringement alleged above.  At present, the amount of such damages, gains, profits and advantages cannot be ascertained fully by UTStarcom.  Alternatively, pursuant to 17 U.S.C. § 504, UTStarcom is entitled to recover statutory damages for Starent's willful acts of infringement alleged above.*

*317.    UTStarcom is also entitled to recover from Starent its attorneys' fees and costs of maintaining this action pursuant to 17 U.S.C. § 505.*

311-317.        Defendant need not respond as these allegations are directed solely to Starent.

## COUNT IX
### BREACH OF RESTRICTIVE COVENANTS PROHIBITING DISCLOSURE OF CONFIDENTIAL AND PROPRIETARY TRADE SECRET INFORMATION
**(Against Defendants Kelly, Zarich, Capener, Charath, Eliason, Espy, Gabel, Harper, Lopez, Puthiyandyil, Radhakrishnan, Ramankutty, Rygula, Schoener, Shieh, Sirota, Tiwari and Wininger)**

### NOW DISMISSED

*318.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 317 of this Complaint.*

*319.    All of the Individual Defendants were required to sign and did sign a non-disclosure agreement as a __condition__ of their employment with the Carrier Unit.  Each Individual Defendant voluntarily executed valid and enforceable agreements prohibiting each of them, respectively, from, among other things, sharing or disclosing the Carrier*

*Unit's Confidential and Proprietary Trade Secret Information and trade secrets to actual or potential competitors (each of which have been provided in discovery).*

*320.    Defendant Kelly, on August 7, 1995, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit.  Mr. Kelly further agreed not to accept any employment which would inherently involve the use or disclosure of the Carrier Unit's proprietary information.  Upon information and belief, Mr. Kelly then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph nos.  205-208 above.*

*321.    Defendant Zarich, on September 18, 2000, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit.  On November 25, 2002, Mr. Zarich further signed another agreement certifying that he did not possess the Carrier Unit's Confidential and Proprietary Trade Secret Information.   Upon information and belief, Mr. Zarich then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph nos. 209-210 above.*

*322.    Defendant Schoener began working for the Carrier Unit on December 15, 1997, and signed a confidential disclosure and non-solicitation agreement with the Carrier Unit which him from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit.  Upon information and belief, Mr. Schoener then misappropriated the Carrier Unit's*

*Confidential and Proprietary trade secret information in the manner described in Paragraph no. 211 above.*

323. *Defendant Capener, on July 6, 1993, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit. Upon information and belief, Mr. Capener then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 212 above.*

324. *Upon information and belief, Defendant Charath signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment, any confidential or proprietary information belonging to the Carrier Unit. Upon information and belief, Mr. Charath then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 213 above.*

325. *Upon information and belief, Defendant Eliason signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit. Upon information and belief, Mr. Eliason then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 214 above.*

326. *Defendant Espy, on October 19, 1998, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the*

*Carrier Unit. Upon information and belief, Mr. Espy then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 215 above.*

*327. Defendant Gabel, on May 11, 1998, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit. On November 25, 2002, Mr. Gabel further signed another agreement certifying that he did not possess the Carrier Unit's Confidential and Proprietary Trade Secret Information. Upon information and belief, Mr. Gabel then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 216 above.*

*328. Upon information and belief, Defendant Harper, on or about April 17, 1995, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit. Upon information and belief, Mr. Harper then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 217 above.*

*329. Upon information and belief, Defendant Lopez, at least as early as December 31, 1997, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit. Mr. Lopez further agreed not to accept any employment which would inherently involve the use or disclosure of the Carrier Unit's proprietary information. Upon information and belief, Mr. Lopez then misappropriated the Carrier*

*Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 218 above.*

*330.    Upon information and belief, Defendant Puthiyandyil, on October 7, 1996, signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from divulging or using any of the proprietary technical and business information of the Carrier Unit for his or another's benefit.  Mr. Puthiyandyil further agreed not to accept any employment which would inherently involve the use or disclosure of the Carrier Unit's proprietary information.  Upon information and belief, Mr. Puthiyandyil then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no.  219 above.*

*331.    Upon information and belief, Defendant Radhakrishnan signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.  Upon information and belief, Mr. Radhakrishnan then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 220 above.*

*332.    Upon information and belief, Defendant Ramankutty signed an agreement with the Carrier Unit which,* inter alia*, prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit.  Upon information and belief, Mr. Ramankutty then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 221 above.*

333. *Defendant Rygula, on December 18, 1995, signed an agreement with the Carrier Unit which,* inter alia, *prohibited him from disclosing or using any of the Carrier Unit's confidential information for his or another's benefit. Mr. Rygula further agreed not to accept any employment which would inherently involve his use or disclosure of the Carrier Unit's proprietary information. Upon information and belief, Mr. Rygula then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 222 above.*

334. *Upon information and belief, Defendant Shieh signed an agreement with the Carrier Unit which,* inter alia, *prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit. Upon information and belief, Mr. Shieh then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 223 above.*

335. *Defendant Sirota, on October 21, 1999, signed an agreement with the Carrier Unit which,* inter alia, *prohibited him from disclosing, using, after the term of his employment with the Carrier Unit, any proprietary or confidential information or know-how belonging to the Carrier Unit. Upon information and belief, Mr. Shieh then misappropriated the Carrier Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 224 above.*

336. *Upon information and belief, Defendant Tiwari signed an agreement with the Carrier Unit which,* inter alia, *prohibited him from disclosing or using, after the term of his employment any confidential or proprietary information or know how belonging to the Carrier Unit. Upon information and belief, Mr. Tiwari then misappropriated the Carrier*

*Unit's Confidential and Proprietary trade secret information in the manner described in Paragraph no. 225 above.*

*337.    The Individual Defendants had substantial knowledge concerning the development and operation of commercially valuable technologies, information concerning the*

*338.    Carrier Unit's key employees, information concerning the Carrier Unit's strategies, and plans.*

*339.    Without permission of the Carrier Unit, and for reasons contrary to the Carrier Unit's interest and well-being, the Individual Defendants shared and disclosed such Confidential and Proprietary Trade Secret Information and trade secrets to Starent.*

*340.    The actions by the Individual Defendants breached the Employment Agreements.*

*341.    As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

318-341.    The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

<u>COUNT X</u>
<u>BREACH OF RESTRICTIVE COVENANTS</u>
<u>PROHIBITING NON-SOLICITATION OF CARRIER UNIT EMPLOYEES</u>
(Against Defendants Eliason, Kelly, Lopez, Sirota, Schoener, Tiwari and Wininger)

<u>NOW DISMISSED</u>

*342.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 341 of this Complaint.*

*343.    The Individual Defendants voluntarily executed valid and enforceable Agreements prohibiting each of them, respectively, from, among other things, encouraging*

*the solicitation and/or soliciting their co-workers at the Carrier Unit from leaving the Carrier Unit and/or joining a competitor.*

*344. Both immediately preceding and following their departure from the Carrier Unit, the Individual Defendants provided information and assistance encouraging the solicitation of the Carrier Unit's key employees, including their identification, and the means by which to most successfully engage in the solicitations. Further, in some, if not all cases, the Individual Defendants made direct solicitations of the Carrier Unit's key employees.*

*345. Defendant Eliason, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least one Carrier Unit employee that Mr. Eliason solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Eliason received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of him.*

*346. Defendant Kelly, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least one Carrier Unit employee that Mr. Kelly solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Kelly received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of him.*

*347. Defendant Lopez, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least one Carrier Unit employee that Mr. Lopez solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Lopez received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of this individual.*

*348.      Defendant Schoener, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least three (3) Carrier Unit employees that Mr. Sirota solicited to work for Starent was hired by Starent.  Upon information and belief, Mr. Sirota received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

*349.      Defendant Sirota, upon information and belief, solicited the Carrier Unit' employees upon joining Starent, to join him at Starent.  Upon information and belief, at least five (5) Carrier Unit employees that Mr. Sirota solicited to work for Starent was hired by Starent.   Upon information and belief, Mr. Sirota received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

*350.      Defendant Tiwari, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least one Carrier Unit employee that Mr. Tiwari solicited to work for Starent was hired by Starent.  Upon information and belief, Mr. Tiwari received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of this individual.*

*351.      Defendant Wininger, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least two (2) Carrier Unit employees that Mr. Wininger solicited to work for Starent was hired by Starent.   Upon information and belief, Mr. Wininger received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

*352.      By their actions described above, including but not limited to encouraging the key employees to leave Starent, identifying the key employees to solicit and informing*

*Starent of the best means of conducting such solicitation, and by Defendants directly soliciting key employees of the Carrier Unit, the Individual Defendants breached the Employment Agreements.*

*353.   As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

342-353.   The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

<u>COUNT XI</u>
<u>BREACH OF RESTRICTIVE COVENANTS</u>
<u>PROHIBITING NON-SOLICITATION OF BUSINESS UNIT CLIENTS</u>
(Against Espy, Kelly, Lopez, Tiwari and Zarich)

<u>NOW DISMISSED</u>

*354.   UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 353 of this Complaint.*

*355.   The Individual Defendants who executed the Employee Agreement and/or the Confidential Agreement, voluntarily executed valid and enforceable contracts prohibiting each of them, respectively, from, among other things, encouraging the solicitation and/or soliciting the Carrier Unit's customers.*

*356.   Notwithstanding their contractual obligations, the Individual Defendants acquired and improperly disclosed the Carrier Unit's Confidential and Proprietary Trade Secret Information to allow Starent to identify and develop competitive products, and acquire key salespersons with relationships with customers.*

*357.   Defendant Espy, upon information and belief, met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with*

*information concerning Carrier Unit customers and/or potential customers including but not limited to Alltel, Bell South International, Sprint, Verizon Wireless, and US Cellular, and subsequently upon being hired by Starent, upon information and belief, solicited these Carrier Unit clients on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers.*

*358.      Defendant Kelly, upon information and belief, met with representatives of Starent on several occasions throughout at least August, September and October of 2002, while he was still employed with the Carrier Unit, and provided employees of Starent with information concerning Carrier Unit customers and/or potential customers including but not limited to Byte Mobile, KDDI, China Unicom, Samsung, Sprint, Verizon Wireless.*

*359.      Defendant Kelly, subsequently upon being hired by Starent, upon information and belief, solicited these Carrier Unit clients on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

*360.      Defendant Lopez, upon information and belief, upon being hired by Starent, immediately began to solicit the Carrier Unit's customers and/or potential customers including but not limited to Sprint, that he had worked with while employed by the Carrier Unit on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

*361.      Defendant Tiwari, upon information and belief, solicited the Carrier Unit's customers and/or potential customers including but not limited to China Unicom that he had worked with while employed by the Carrier Unit on behalf of Starent and/or conspired with*

*Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

*362. Defendant Zarich, upon information and belief, immediately began to solicit the Carrier Unit's customers and/or potential customers including but not limited to Sprint that he had worked with while employed by the Carrier Unit on behalf of Starent and/or conspired with Starent to solicit these Carrier Unit customers and/or potential customers upon beginning his employment with Starent.*

*363. Once Starent was empowered with the know how and means to solicit customers of the Carrier Unit, customers of the Carrier Unit, including Spring and Verizon, substantially curtailed and/or ceased their relationships with the Carrier Unit and commenced business relationships with Starent, who was now providing the same products or services previously provided by the Carrier Unit.*

*364. The Individual Defendants' actions encouraged or were actual solicitations of the Carrier Unit's customers, including but not limited to Sprint and Verizon.*

*365. By their actions described above, the Individual Defendants breached the Employee Agreement and/or the Confidential Agreement.*

*366. As a result of the breach of the Employee Agreement and/or the Confidential Agreement, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

354-366.    The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

**COUNT XII**
**BREACH OF THE RESTRICTIVE COVENANTS**
**CONCERNING THE ASSIGNMENT OF INVENTIONS**
**(Against Defendants Harper, Puthiyandyil, Radhakrishnan and Ramankutty)**

**NOW DISMISSED**

*367.    UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 366 of this Complaint.*

*368.    Defendants Harper, Puthiyandyil, Radhakrishnan, and Ramankutty voluntarily executed valid and enforceable Agreements in which, among other things, each of them assigned, agreed to disclose, and further protect the Carrier Unit's property rights and interests in any and all inventions developed by, on behalf of, for the benefit of, and in the scope of their employment with the Carrier Unit.*

*369.    Starent's patents, set forth herein, are the result or product of inventions created by the Individual Defendants in whole or in part in the course and scope of the former employees' duties with/for the Carrier Unit.*

*370.    Contrary to the Employment Agreements, Defendants Harper, Puthiyandyil, Radhakrishnan, and Ramankutty usurped inventions created in whole or in part at and for the Carrier Unit, for the benefit of their new employer, Starent.  Such actions breached their Employment Agreements.*

*371.    As a result of the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

367-371.    The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## COUNT XIII
## BREACH OF THE DUTY OF LOYALTY
**(Against Defendants Eliason, Kelly, Lopez, Sirota, Lopez, Schoener, Tiwari and Wininger)**

### NOW DISMISSED

*372.     UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 371 of this Complaint.*

*373.     While employed by the Carrier Unit, the Individual Defendants assisted Starent in raiding the Carrier Unit's key employees by, among other things, identifying key employees, assisting in their recruitment and solicitation, and failing to report and participating in and condoning the raiding of the Carrier Unit's key personnel, as follows:*

*374.     Defendant Eliason, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least one Carrier Unit employee that Mr. Eliason solicited to work for Starent was hired by Starent.  Upon information and belief, Mr. Eliason received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of him.*

*375.     Defendant Kelly, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least one Carrier Unit employee that Mr. Kelly solicited to work for Starent was hired by Starent.  Upon information and belief, Mr. Kelly received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of him.*

*376.     Defendant Lopez, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent.  Upon information and belief, at least one Carrier Unit employee that Mr. Lopez solicited to work for Starent was hired by Starent.  Upon information and belief, Mr. Lopez received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of this individual.*

377. *Defendant Schoener, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least three (3) Carrier Unit employees that Mr. Sirota solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Sirota received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

378. *Defendant Sirota, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least five (5) Carrier Unit employees that Mr. Sirota solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Sirota received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

379. *Defendant Tiwari, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least one Carrier Unit employee that Mr. Tiwari solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Tiwari received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of this individual.*

380. *Defendant Wininger, upon information and belief, solicited the Carrier Unit's employees upon joining Starent, to join him at Starent. Upon information and belief, at least two (2) Carrier Unit employees that Mr. Wininger solicited to work for Starent was hired by Starent. Upon information and belief, Mr. Wininger received compensation from Starent for his solicitation of this Carrier Unit employee and Starent's hiring of these individuals.*

381. *Further, on at least one occasion, a former Carrier Unit employee who was recruited to join Starent by one of the Individual Defendants while she still employed by the*

*Carrier Unit, usurped a corporate opportunity for the Carrier Unit, misdirecting it to a Starent employee, and never advising the Carrier Unit of the opportunity, thus depriving UTStarcom of the opportunity to compete for the business and giving Starent an opportunity it otherwise would not have received.*

*382.  The Individual Defendants, as agents of and employees of the Carrier Unit, owed the Carrier Unit a duty of fidelity and loyalty.*

*383.  By their actions described herein, the Individual Defendants breached their duty of loyalty.*

*384.  As a result of the Individual Defendants' breach of their duty of loyalty to the Carrier Unit, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

372-384.  The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## COUNT XIV
## INDUCEMENT OF THE BREACH OF THE DUTY OF LOYALTY
### (Against Starent)

### NOW DISMISSED

*385.  UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 384 of this Complaint.*

*386.  At all times, Starent knew when the Individual Defendants were employed by the Carrier Unit, and that these Individual Defendants had and/or continued to have fiduciary duties and responsibilities to the Carrier Unit.*

*387.  In the course of hiring at least twenty-five (25) key employees of the Carrier Unit, and directing the actions of the Individual Defendants, and aware of the timing, sequence, and nature of the competitive activities going on while the Individual Defendants*

*remained employed with the Carrier Unit, Starent knew or should have known that such collusive activities were in violation of the former employees' duty of loyalty.*

*388.   Notwithstanding such knowledge, the Starent continued to induce, aid, abet, and encourage the Individual Defendants' actions, and continued to benefit from the Individual Defendants' actions.*

*389.   By encouraging, assisting and receiving the benefits of the Individual Defendants' breach of their duty of loyalty, Starent induced, aided and abetted and induced the breach of the duty of loyalty.*

*390.   As a result of Starent's inducement, aiding and abetting and encouragement of the Individual Defendants' breach of their duty of loyalty to the Carrier Unit, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

385-390.   The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## COUNT XV
## INDUCING THE BREACH OF THE EMPLOYMENT AGREEMENTS
### (Against Starent)

## NOW DISMISSED

*391.   UTStarcom repeats and incorporates by this reference all of the allegations in Paragraphs 1 through 390 of this Complaint.*

*392.   Upon information and belief in the course of hiring at least twenty-five (25) key employees of the Carrier Unit, Starent had actual or constructive knowledge of the restrictive covenants contained in each of the Employment Agreements signed by all of the Individual Defendants (each Individual Defendant was required to sign an Employment Agreement as a condition of their employment with the Carrier Unit; these Employment agreements have been produced during discovery).*

*393. Notwithstanding such knowledge, Starent continued to induce, encourage, assist, incentivize and condone the breach of the Employment Agreements by the Individual Defendants.*

*394. As such, Starent aided and abetted the breach of the Employment Agreements.*

*395. As a result of the Starent's aiding and abetting the breach of the Employment Agreements, UTStarcom has and continues to be damaged in an amount to be proven at trial.*

391-395. The subject matter of these Paragraphs is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## COUNT XVI
## ACTIVE INDUCEMENT OF INFRINGEMENT OF
## U.S. PATENT NO. 6,685,256
**(Against Defendants Harper, Puthiyandyil, Ramankutty, and Radhakrishnan)**

*396. UTStarcom hereby incorporates by this reference all of the allegations in Paragraphs 1 through 395.*

*397. The '256 patent is entitled to a presumption of validity.*

*398. Upon information and belief, Defendants knew of the '256 patent.*

*399. Upon information and belief, Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement of '256 patent in direct violation of 35 U.S.C. §271(b).*

*400. Upon information and belief, the Defendants will continue to actively, intentionally, and knowingly induce, aid and abet Starent's direct infringement of the '256 patent unless enjoined by the Court.*

***401.    As a result of the Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.***

396-401.    Defendant need not respond as these allegations are not directed to Defendant Zarich.

**COUNT XVII**
**ACTIVE INDUCEMENT OF INFRINGEMENT OF**
**U.S. PATENT NO. 6,765,900**
**(Against Defendants Harper, Puthiyandyil, Ramankutty, and Radhakrishnan)**

***402.    UTStarcom hereby incorporates by this reference all of the allegations in Paragraphs 1 through 401.***

***403.    The '900 patent is entitled to a presumption of validity.***

***404.    Upon information and belief, Defendants knew of the '900 patent.***

***405.    Upon information and belief, Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement of '900 patent in direct violation of 35 U.S.C. §271(b).***

***406.    Upon information and belief, the Defendants will continue to actively, intentionally, and knowingly induce, aid and abet Starent's direct infringement of the '900 patent unless enjoined by the Court.***

***407.    As a result of the Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.***

402-407.    Defendant need not respond as these allegations are not directed to Defendant Zarich.

## COUNT XVIII
## ACTIVE INDUCEMENT OF INFRINGEMENT OF
## U.S. PATENT NO. 6,963,582
**(Against Defendants Harper, Puthiyandyil, Ramankutty, and Radhakrishnan)**

*408.     UTStarcom hereby incorporates by this reference all of the allegations in Paragraphs 1 through 407.*

*409.     The '582 patent is entitled to a presumption of validity.*

*410.     Upon information and belief, Defendants knew of the '582 patent.*

*411.     Upon information and belief, Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement of '582 patent in direct violation of 35 U.S.C. §271(b).*

*412.     Upon information and belief, the Defendants will continue to actively, intentionally, and knowingly induce, aid and abet Starent's direct infringement of the '582 patent unless enjoined by the Court.*

*413.     As a result of the Defendants actively and knowingly aiding and abetting Starent's direct infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

408-413.     Defendant need not respond as these allegations are not directed to Defendant Zarich.

## COUNT XIX
## ACTIVE INDUCEMENT OF INFRINGEMENT OF
## U.S. PATENT NO. 7,173,905
**(Against Defendants Harper, Puthiyandyil, Ramankutty, and Radhakrishnan)**

*414.     UTStarcom hereby incorporates by this reference all of the allegations in Paragraphs 1 through 413.*

*415.     The '905 patent is entitled to a presumption of validity.*

*416.     Upon information and belief, Defendants knew of the '905 patent.*

133

*417.    Upon information and belief, Defendants actively, intentionally, and knowingly induced, aided and abetted Starent's direct infringement of '905 patent in direct violation of 35 U.S.C. §271(b).*

*418.    Upon information and belief, the Defendants will continue to actively, intentionally, and knowingly induce, aid and abet Starent's direct infringement of the '905 patent unless enjoined by the Court.*

*419.    As a result of the Defendants actively and knowingly aiding and abetting Starent's direct infringement, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.*

414-419.    Defendant need not respond as these allegations are not directed to Defendant Zarich.

**COUNT XX**
**CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS**
**(Against Defendants Starent, Kelly, Zarich, Capener, Charath, Eliason, Espy, Gabel, Harper, Lopez, Puthiyandyil, Radhakrishnan, Ramankutty, Rygula, Schoener, Shieh, Sirota, Tiwari and Wininger)**

**NOW DISMISSED**

*420.    UTStarcom hereby incorporates by this reference all of the allegations in Paragraphs 1 through 419.*

*421.    Upon information and belief, Defendants' willfully, combined, conspired, and agreed with one another and with others to violate Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq, ("the Act"), that is, to conduct and/or participate, directly or indirectly, in the conduct of Defendants' through a pattern of activities which are described above, and agreed with one another that someone would commit at least one tortious act in furtherance of the agreement.*

***422.    Upon information and belief, the object of this conspiracy was to violate the Act described in Count I above, by participating in a pattern of activities to misappropriate Plaintiff's trade secrets.***

***423.    As a result of the Defendants' intentional, wanton and malicious conduct, UTStarcom has suffered and continues to suffer damages in an amount to be proven at trial.***

420-423.    The subject matter of these Paragraph is moot because it relates solely to Counts that were dismissed by Judge Lindberg's Order dated March 24, 2009 (D.I. 301).

## Affirmative Defenses

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to Defendant's right to plead additional defenses as discovery into the facts of the matter warrant, Defendant hereby asserts the following affirmative defenses:

### First Affirmative Defense
### Seventh Affirmative Defense
### (Estoppel And Laches)

424.    One or more of Plaintiff's claims are barred by estoppel and laches.

### Second Affirmative Defense
### (Trade Secret Claims Time -Barred (Statute of Limitations))

425.    One or more of Plaintiff's claims are time-barred by the statute of limitations of the Illinois Trade Secret Act (765 ILCS 1065).

426.    Any allegations in the Complaint that are not answered above are denied. Defendant reserves the right to supplement or amend this Answer, if necessary, as more information becomes known regarding UTStarcom's claims

## **DEMAND FOR JURY TRIAL**

Defendant hereby demands a trial by jury in this action on all claims and issues triable before a jury.

Dated: April 21, 2009                                Respectfully submitted,

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III (06225038)
-Email:  agollwitzer@michaelbest.com
MICHAEL BEST & FRIEDRICH L.L.P.
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 222-0800

*Of Counsel*:
Lawrence R. Robins (6183995)
-Email:  larry.robins@finnegan.com
Christopher S. Schultz (*pro hac vice*)
-Email:  christopher.schultz@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, Massachusetts 02142
Telephone:  (617) 452-1600
Facsimile:  (617) 452-1666

Scott A. Herbst (*pro hac vice*)
-Email:   scott.herbst@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:  (650) 849-6600
Facsimile:  (650) 849-6666

E. Robert Yoches (pro hac vice)
-Email:  bob.yoches@finnegan.com
James T. Wilson (*pro hac vice*)
-Email: james.wilson@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-440

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I, Arthur Gollwitzer, an attorney of record in this matter, certify that on April 21,

2009, I caused a copy of the following document:

**ANSWER OF MARK ZARICH TO**
**FOURTH AMENDED COMPLAINT**

to be filed by electronic filing (ECF), which provides service to all counsel of

record.

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III (06225038)